1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Sophia M. Rios (SBN 305801)
srios@bm.net
**BERGER MONTAGUE PC**
12544 High Bluff Drive, Suite 340
San Diego, CA 92130
Telephone: (619) 489-0300
Facsimile: (215) 875-4604

Attorneys for Plaintiff
and the Proposed Collective

*[Additional counsel listed on following page]*

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA
## SAN DIEGO DIVISION

| | |
|---|---|
| JEFFREY PIPICH, individually and on behalf of all others similarly situated,<br><br>        Plaintiff,<br><br>v.<br><br>O'REILLY AUTO ENTERPRISES, LLC, a Delaware corporation,<br><br>        Defendant. | Case No.: **'21 CV 1120 L    LL**<br><br>**COLLECTIVE ACTION COMPLAINT FOR VIOLATIONS OF:**<br>  (1) FAIR LABOR STANDARDS ACT (29 U.S.C. §§ 201, *et seq.*)<br><br>**DEMAND FOR JURY TRIAL** |

COLLECTIVE ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

Shanon J. Carson* (PA 85957)
scarson@bm.net
Camille Fundora Rodriguez*
(PA 312533, NJ 01764-2011)
crodriguez@bm.net
Daniel F. Thornton*
(PA 318431, NJ 10857-2014)
dthornton@bm.net
**BERGER MONTAGUE PC**
1818 Market Street, Suite 3600
Philadelphia, PA 19103
Telephone: (215) 875-3000
Facsimile: (215) 875-4604

* *pro hac vice* applications forthcoming

**COLLECTIVE ACTION COMPLAINT**

Plaintiff Jeffrey Pipich ("Plaintiff"), on behalf of himself and all others similarly situated, brings this lawsuit against O'Reilly Auto Enterprises, LLC, ("O'Reilly" or "Defendant"), seeking all available remedies under the Fair Labor Standards Act of 1938, 29 U.S.C. §§ 201, *et seq.* ("FLSA"). The allegations that follow are made on personal knowledge as to Plaintiff's own conduct and on information and belief as to the acts of others.

**INTRODUCTION**

1.      O'Reilly Auto Enterprises, LLC ("O'Reilly" or "Defendant"), owns and operates a line of automotive retailers that specializes in providing aftermarket parts and accessories to both consumers and businesses. O'Reilly relies on a robust network of distribution centers strategically located across the United Sates to ensure timely product availability and optimal inventory levels throughout their stores. O'Reilly employs thousands of individuals at distribution centers throughout the state of California and the United States, to support the flow of its automobile products into stores nationwide. The manual tasks these employees perform include, without limitation, storing inventory, reviewing and selecting orders, pulling specific parts according to retailers' needs, packing orders, and loading and delivering orders.

2.      This case is about O'Reilly's failure to provide proper payment of all wages, including regular and overtime wages. As described in further detail below, O'Reilly administered illegal policies requiring its non-exempt workers to undergo COVID-19 screenings and security inspections each day without pay. These pre-shift off-the-clock COVID-19 screenings and pre- and post- shift security checks constitute compensable time that was worked by Plaintiff and Collective Members. By failing to pay for this time worked, O'Reilly has violated the FLSA.

**JURISDICTION AND VENUE**

3.      The FLSA authorizes a private right of action to recover damages for

violation of its wage and hour provisions. 29 U.S.C. § 216(b). This Court has federal question jurisdiction over Plaintiff's FLSA claims under 28 U.S.C. § 1331.

4.     Venue is proper in the Southern District of California because O'Reilly is subject to personal jurisdiction in this District.

5.     O'Reilly is subject to personal jurisdiction before this Court because it has purposefully availed itself of the privileges of conducting activities throughout the State of California and established minimum contacts sufficient to confer jurisdiction. O'Reilly transacts business in California, advertises in California, and markets to California consumers. The violations of the law forming the basis of this lawsuit occurred in California. Further, O'Reilly employs California residents. Therefore, the assumption of jurisdiction over O'Reilly will not offend traditional notions of fair play and substantial justice and is consistent with the constitutional requirements of due process. O'Reilly also had and continues to have continuous and systematic contacts with the State of California sufficient to establish general jurisdiction over it.

## PARTIES AND PERSONAL JURISDICTION

6.     Plaintiff Jeffrey Pipich resides in Moreno Valley, California. Plaintiff worked for Defendant as a City Counter Route Driver from approximately July 2015 to February 2021. Plaintiff was a non-exempt employee and was compensated on an hourly basis. Pursuant to 29 U.S.C. § 216(b), Plaintiff has consented in writing to be a plaintiff in this action. *See* Exhibit A.

7.     The "FLSA Collective" are all current and former non-exempt employees of O'Reilly who underwent a COVID-19 screening or security inspection during at least one week in the three-year period before the filing of this Complaint to the present.

8.     Plaintiff reserves the right to redefine the FLSA Collective prior to notice or certification, and thereafter, as may be warranted or necessary.

9.     O'Reilly is a Delaware corporation registered to do business in

COLLECTIVE ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

California, and at all relevant times has been engaged in the business of selling automobile parts in the State of California and nationwide. O'Reilly owns 5,616 stores and relies on a network of 28 distribution centers nationwide to support its retail operations.

10.    O'Reilly's corporate headquarters is located at 233 South Patterson, Springfield, Missouri 65802.

11.    At all material times, O'Reilly has been governed by and subject to the FLSA, 29 U.S.C. § 207.

12.    O'Reilly employed Plaintiff and continues to employ similarly situated employees as defined by the FLSA, 29 U.S.C. § 203(d). See also 29 C.F.R. 791.2(a).

13.    At all material times, O'Reilly has been an enterprise within the meaning of section 3(r) of the FLSA. 29 U.S.C. § 203(r).

14.    During all times relevant hereto, Plaintiff was an employee of O'Reilly and was covered by the FLSA.

15.    The unlawful acts alleged in this Complaint were committed by O'Reilly or O'Reilly's officers, agents, employees, or representatives, while actively engaged in the management of O'Reilly's businesses or affairs and with the authorization of O'Reilly.

16.    At all material times, the unlawful conduct against Plaintiff and the FLSA Collective as described in this Complaint was actuated, in whole or in part, by a purpose to serve O'Reilly. At all relevant times, the unlawful conduct described in this Complaint was reasonably foreseeable by O'Reilly and committed under actual or apparent authority granted by O'Reilly such that all unlawful conduct is legally attributable to O'Reilly.

17.    O'Reilly employs individuals engaged in commerce or in the production of goods for commerce or handling, selling, or otherwise working on goods or materials that have been moved in or produced in commerce by any

COLLECTIVE ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

person, as described by 29 U.S.C. §§ 206-207.

18.   O'Reilly's annual gross sales exceed $500,000.

## FACTUAL ALLEGATIONS

19.   Plaintiff incorporates herein by reference the allegations set forth above.

20.   Defendant O'Reilly specializes in offering aftermarket automobile parts to professional and amateur consumers at their 5,594 stores nationwide. O'Reilly operationalizes its value proposition of offering excellent customer service to consumers in part through the support of a strategic network of 28 distribution centers that channel inventory into O'Reilly's stores. Indeed, O'Reilly's business model is designed so that timely product availability and optimal inventory levels are achieved via this network of distribution centers, which provide five-nights-a-week delivery to substantially all stores nationwide. *See* https://corporate.oreillyauto.com/onlineapplication/careerpage/dc (last visited June 4, 2021).

21.   Plaintiff Pipich worked for O'Reilly as an hourly, non-exempt employee at O'Reilly Distribution Center Number 25 in Moreno Valley, California, from July 2015 to February 2021. Plaintiff's job duties included loading and transporting automobile parts from the distribution center to stores throughout the southern California region.

22.   As an hourly, non-exempt employee, Plaintiff was required to clock-in and clock-out at one of O'Reilly's timekeeping stations located inside the distribution center. However, prior to clocking in each day, Plaintiff was subject to a health screening for Covid-19 and a security inspection. After clocking out each day, Plaintiff was subject to an additional security inspection.

23.   The Covid-19 screening was implemented in 2020 following the outbreak of the Coronavirus.

24.   O'Reilly responded to the public health crisis by systematically

implementing various safety measures as recommended by the Centers for Disease Control and Prevention, one of which included conducting mandatory health screenings for employees, to mitigate the impact of Covid-19 on its operations and safeguard its business interests. The Covid-19 screening was necessary to ensure that the virus did not infect O'Reilly employees and disrupt the work performed by Plaintiff and the FLSA Collective.

25.    The Covid-19 screening was imposed by O'Reilly as a requirement for work each shift. The examination was conducted on O'Reilly's premises, was required by O'Reilly, and was necessary for each employee to perform their work for O'Reilly.

26.    After parking, Plaintiff was subject to a Covid-19 screening at a designated area in the employee parking lot and, later, in the employee lounge area, both which anteceded access to the main distribution center area where employees conduct their work and where timekeeping stations were located.

27.    The screening process involved a security guard or another employee of O'Reilly asking a series of questions related to the employee's potential exposure to the virus and present health symptoms. The screening process also entailed taking the employee's temperature. If the employee passed the examination, they were allowed to continue to the next screening, namely the security inspection, before they could officially clock in and commence getting paid for their work.

28.    The amount of time that it took to undergo the Covid-19 screening ranged between two to five minutes on average. However, this time may have been prolonged in excess of five minutes depending on the number of employees waiting in line to undergo the screening.

29.    This Covid-19 daily screening should have been paid by O'Reilly because Plaintiff and the FLSA Collective were subject to the control of O'Reilly, had no option of opting out of the health screening, and were threatened with

COLLECTIVE ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

disciplinary action if they failed to comply with the screening. Plaintiff and the FLSA Collective, specifically, were compelled to remain on O'Reilly's premises during the duration of the screening and perform a series of tasks as instructed by O'Reilly, namely answering questions related to their health and submitting to their temperatures being taken. O'Reilly's control and restraint prevented Plaintiff and the FLSA Collective from using this time for their own purposes.

30.    Plaintiff and the FLSA Collective nonetheless completed this work while off the clock and without time added to their pay to compensate for the Covid-19 screening.

31.    The security inspection prior to each shift, like the Covid-19 screening, was imposed by O'Reilly as a requirement for work. The inspection was conducted on O'Reilly's premises, was required by O'Reilly, and entailed significant control over employees' time.

32.    Plaintiff underwent the security screening in tandem with and after undergoing the Covid-19 screening, but prior to clocking in for work, at the start of the workday. Indeed, the security screening took place inside the employee lounge, which was outside the main distribution center area where employees accessed timekeeping stations to clock-in.

33.    The security screening was overseen by a security guard. On a typical morning, Plaintiff would walk up to the security station, empty his pockets, remove any metals, open any bags, walk through the metal detector, collect all belongings, walk across the remaining twenty-five (25) feet of the security area, enter the main distribution center area, and only then would he clock in. The clock-in station was located about ten (10) to fifteen (15) feet from the door. .

34.    Moreover, Plaintiff was subject to the same security inspection upon clocking out for the day and before leaving O'Reilly's premises.

35.    The amount of time that it took to undergo the pre- shift security inspection ranged between three to five minutes on average. However, this time

may have been prolonged in excess of five minutes depending on the number of employees waiting in line to undergo the screening.

36.    The amount of time that it took to undergo the post-shift security inspection was slightly longer and ranged between three to ten minutes on average. However, this time often exceeded ten minutes depending on the number of employees waiting in line to undergo the screening. Plaintiff noticed that lengthier lines occurred most frequently post-shift when larger groups of employees ended their shift around the same time.

37.    The daily pre-shift and post-shift off-the-clock security inspections should have been paid by O'Reilly because Plaintiff and the FLSA Collective were subject to the control of O'Reilly, had no option of opting out of the security inspections, and were threatened with disciplinary action if they failed to comply with the security inspections. Plaintiff and the FLSA Collective, specifically, were compelled to remain on O'Reilly's premises during the duration of the inspection and perform a series of tasks as instructed by O'Reilly, namely opening bags, removing any metals, walking through the metal detector, and collecting all belongings. O'Reilly's control and restraint prevented Plaintiff and the FLSA Collective from using this time for their own purposes.  For instance, Plaintiff and the FLSA Collective could not use their cell phones or consume any food given that these items were prohibited from entering the distribution center.

38.    The primary job duties of Plaintiff and the FLSA Collective do not fall under any exemptions under the FLSA or California Wage Laws.

39.    Plaintiff was regularly scheduled to work, and indeed worked, five (5) days per week, typically between forty-five (45) and fifty (50) hours per week. Plaintiff observed that other the FLSA Collective were scheduled to work, and indeed worked, similar schedules.

40.    On workdays where Plaintiff and the FLSA Collective already worked over eight hours and in workweeks where Plaintiff and the FLSA Collective

already worked forty hours, the foregoing off-the-clock work resulted in time which Plaintiff and the FLSA Collective were not compensated at their overtime rate of pay.

41.   Plaintiff is representative of the members of the Collective and is acting on behalf of their interests, as well as Plaintiff's own interests, in bringing this action.

42.    Plaintiff will fairly and adequately represent and protect the interests of the members of the Collective. Plaintiff has retained counsel competent and experienced in employment and wage and hour class action and collective action litigation.

43.   The similarly situated members of the Collective are known to O'Reilly, are readily identifiable, and may be located through O'Reilly's records. These similarly situated employees may readily be notified of this action, and allowed to "opt-in" to this case pursuant to 29 U.S.C. § 216(b) for the purpose of collectively adjudicating their claims for unpaid wages, unpaid overtime compensation, liquidated damages (or, alternatively, interest), and attorneys' fees and costs under the FLSA.

## COLLECTIVE ACTION ALLEGATIONS

44.   Plaintiff brings the First Cause of Action (the FLSA claim) as an "opt-in" collective action pursuant to 29 U.S.C. § 216(b) on behalf of a proposed collection of similarly situated employees defined as:

>    All current and former non-exempt employees of O'Reilly who underwent a COVID-19 screening or security inspection during at least one week in the three-year period before the filing of this Complaint to the present. (the "FLSA Collective").

45.   Plaintiff, individually and on behalf of other similarly situated persons defined above, seeks relief on a collective basis challenging O'Reilly's policy and

practice of failing to accurately record all hours worked, and failing to properly pay Plaintiff for all hours worked, including overtime compensation, for time spent undergoing Covid-19 screenings or security inspections. The number and identity of other similarly situated persons yet to opt-in and consent to be party-plaintiffs may be determined from O'Reilly's records, and potential opt-ins may be easily and quickly notified of the pendency of this action.

46.   Plaintiff's claims for violations of the FLSA may be brought and maintained as an "opt-in" collective action pursuant to Section 216(b) of the FLSA, because Plaintiff's FLSA claims are similar to the claims of the members of the Collective.

47.   The members of the Collective are similarly situated, as they have substantially similar non-exempt job duties and are subject to a common policy, practice, or plan that requires them to perform work off-the-clock and without compensation in violation of the FLSA.

48.   Unless the Court promptly issues such notice, the numerous similarly situated workers nationwide will be unable to secure unpaid overtime pay, which has been unlawfully withheld by O'Reilly.

**FIRST CAUSE OF ACTION**
**Violation of the Fair Labor Standards Act**
**29 U.S.C. § 201, *et seq.***
**(On Behalf of Plaintiff and the FLSA Collective)**

49.   Plaintiff re-alleges and incorporates the foregoing paragraphs as though fully set forth herein.

50.   The FLSA requires that covered employees receive compensation for all hours worked and overtime compensation not less than one and one-half times the regular rate of pay for all hours worked in excess of forty hours in a workweek. 29 U.S.C. § 207(a) (1).

51.   At all times material herein, Plaintiff and the Collective are covered

9

employees entitled to the rights, protections, and benefits provided under the FLSA. See 29 U.S.C. § 203(e).

52.    Defendant O'Reilly Auto Enterprises, LLC, is a covered employer required to comply with the FLSA's mandates. See 29 U.S.C. § 203(d); 29 C.F.R. § 552.109(a).

53.    O'Reilly violated the FLSA with respect to Plaintiff and the Collective, by, among other things, failing to compensate Plaintiff and the Collective for all hours worked and, with respect to such hours, failing to pay the legally mandated minimum wage or overtime premium for such work. *See* 29 U.S.C. § 206; 29 C.F.R. § 531.35; 29 U.S.C. § 207 (a), (g). O'Reilly also violated the FLSA by failing to keep required, accurate records of all hours worked by Plaintiff and the Collective. 29 U.S.C. § 211(c).

54.    Plaintiff and the Collective are victims of a uniform and company-wide compensation policy. This uniform policy, in violation of the FLSA, has been applied to current and former non-exempt, hourly employees of O'Reilly, working in its locations throughout the United States.

55.    Plaintiff and the Collective are entitled to damages equal to the mandated pay, including minimum wage, straight time, and overtime premium pay within the three years preceding the filing of this Complaint, plus periods of equitable tolling, because O'Reilly has acted willfully and knew or showed reckless disregard for whether the alleged conduct was prohibited by the FLSA.

56.    O'Reilly has acted neither in good faith nor with reasonable grounds to believe that its actions and omission were not a violation of the FLSA, and as a result thereof, Plaintiff and the Collective are entitled to recover an award of liquidated damages in an amount equal to the amount of unpaid overtime pay or prejudgment interest at the applicable rate. 29 U.S.C. § 216(b).

57.    As a result of the aforesaid violations of the FLSA's provisions, pay, including straight time and overtime compensation, has been unlawfully withheld

COLLECTIVE ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

by O'Reilly from Plaintiff and the Collective. Accordingly, O'Reilly is liable for unpaid wages, together with an amount equal as liquidated damages, attorneys' fees, and costs of this action.

58.    Wherefore, Plaintiff and the Collective request relief as hereinafter provided.

## **PRAYER FOR RELIEF**

Plaintiff, on behalf of himself and the FLSA Collective, prays for relief as follows:

a.    That, at the earliest possible time, the Plaintiff be allowed to give notice of this collective action, or that the Court issue such notice, to the FLSA Collective Members as defined herein so that such persons shall be informed that this civil action has been filed, of the nature of the action, and of their right to join the FLSA collective suit if they believe they were denied unpaid wages;

b.    The Court certify that this action may proceed as a collective action under 29 U.S.C. §216(b);

c.    The Court find that O'Reilly's policies and practices described above violate the FLSA;

d.    The Court award damages, liquidated damages, restitution, and statutory penalties to be paid by O'Reilly for the causes of action alleged herein;

e.    The Court award interest, costs, and expenses, including reasonable attorneys' fees and expert fees, pursuant; and

f.    The Court order such other and further legal and equitable relief the Court deems just, necessary, and proper.

Dated:  June 16, 2021                    Respectfully submitted,

                                          BERGER MONTAGUE PC

                                          *s/ Sophia M. Rios*
                                          Sophia M. Rios
                                          Shanon J. Carson
                                          Camille Fundora Rodriguez
                                          Daniel F. Thornton

                                          Attorneys for Plaintiff and the Proposed
                                          Collective

COLLECTIVE ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

## <u>DEMAND FOR JURY DEMAND</u>

Plaintiff hereby demands a trial by jury on all claims and issues for which Plaintiff and the Collective are entitled to a jury.

Dated:  June 16, 2021                    Respectfully submitted,

BERGER MONTAGUE PC

*s/ Sophia M. Rios*
Sophia M. Rios
Shanon J. Carson
Camille Fundora Rodriguez
Daniel F. Thornton

Attorneys for Plaintiff and the Proposed Collective

---

13