1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Sophia M. Rios (SBN 305801)
srios@bm.net
**BERGER MONTAGUE PC**
401 B Street, Suite 2000
San Diego, CA 92101
Telephone: (619) 489-0300
Facsimile: (215) 875-4604

Attorneys for Plaintiff
and the Proposed Collective

*[Additional counsel listed on following page]*

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA
## SAN DIEGO DIVISION

| | |
|---|---|
| JEFFREY PIPICH, individually and on behalf of all others similarly situated,<br><br>    Plaintiff,<br><br>v.<br><br>O'REILLY AUTO ENTERPRISES, LLC, a Delaware corporation,<br><br>    Defendant. | Case No. 3:21-cv-01120-L-LL<br><br>**FIRST AMENDED COLLECTIVE ACTION COMPLAINT FOR VIOLATIONS OF:**<br>   (1) FAIR LABOR STANDARDS ACT (29 U.S.C. §§ 201, *et seq.*)<br>   (2) CALIFORNIA LABOR CODE §§ 1174, 1182.11, 1194, 1197<br>   (3) CALIFORNIA LABOR CODE §§ 510, 1194<br>   (4) CALIFORNIA LABOR CODE §§ 226, 1174, 1198<br>   (5) CALIFORNIA LABOR CODE §§ 201-203<br><br>**DEMAND FOR JURY TRIAL** |

Shanon J. Carson* (PA 85957)
scarson@bm.net
Camille Fundora Rodriguez*
(PA 312533, NJ 01764-2011)
crodriguez@bm.net
Daniel F. Thornton*
(PA 318431, NJ 10857-2014)
dthornton@bm.net
**BERGER MONTAGUE PC**
1818 Market Street, Suite 3600
Philadelphia, PA 19103
Telephone: (215) 875-3000
Facsimile: (215) 875-4604

* admitted *pro hac vice*

## FIRST AMENDED COLLECTIVE ACTION COMPLAINT

Plaintiff Jeffrey Pipich ("Plaintiff"), on behalf of himself and all others similarly situated, brings this lawsuit against O'Reilly Auto Enterprises, LLC, ("O'Reilly" or "Defendant"), seeking all available remedies under the Fair Labor Standards Act of 1938, 29 U.S.C. §§ 201, *et seq.* ("FLSA"), and the Private Attorneys General Act ("PAGA") of the California Labor Code. The allegations that follow are made on personal knowledge as to Plaintiff's own conduct and on information and belief as to the acts of others.

## INTRODUCTION

1.     O'Reilly Auto Enterprises, LLC ("O'Reilly" or "Defendant"), owns and operates a line of automotive retailers that specializes in providing aftermarket parts and accessories to both consumers and businesses. O'Reilly relies on a robust network of distribution centers strategically located across the United Sates to ensure timely product availability and optimal inventory levels throughout their stores. O'Reilly employs thousands of individuals at distribution centers throughout the state of California and the United States to support the flow of its automobile products into stores nationwide. The manual tasks that these employees perform include, without limitation, storing inventory, reviewing and selecting orders, pulling specific parts according to retailers' needs, packing orders, and loading and delivering orders.

2.     This case is about O'Reilly's failure to provide proper payment of all wages, including regular and overtime wages. As described in further detail below, O'Reilly administered illegal policies requiring its non-exempt workers to undergo COVID-19 screenings and security inspections each day without pay. These pre-shift off-the-clock COVID-19 screenings and pre- and post- shift security checks constitute compensable time that was worked by Plaintiff and Collective Members. By failing to pay for this time worked, O'Reilly has violated the FLSA and the California Labor Code.

3.      California Labor Code §§ 2698 *et seq.* grant California employees the right to bring a civil action for violation of any provision of the Labor Code on behalf of themselves and other current or former employees to recover civil penalties. In passing PAGA, the California Legislature "declared that adequate financing of labor law enforcement was necessary to achieve maximum compliance with state labor laws, that staffing levels for labor law enforcement agencies had declined and were unlikely to keep pace with future growth of the labor market, and that it was therefore in the public interest to allow aggrieved employees, acting as private attorneys general, to recover civil penalties for Labor Code violations." *Arias v. Super. Ct.*, 46 Cal. 4th 969, 980 (2009).

4.      PAGA permits aggrieved employees to collect the civil penalties authorized by law and normally collectible by the Labor and Workforce Development Agency ("LWDA") or any of its departments or divisions. *See* Cal. Lab. Code § 2699(a). However, because the action is brought on behalf of the state, 75% of the fees collected are distributed to the LWDA for the enforcement of labor laws and for the education of employers and employees. The remaining 25% is shared between the aggrieved employees. *See* Cal. Lab. Code § 2699(i).

5.      PAGA provides that any civil penalty assessed and collected by the LWDA for violations of applicable provisions of the California Labor Code may, as an alternative, be recovered through a civil action brought by an aggrieved employee on behalf of himself and other current or former employees pursuant to procedures outlined in California Labor Code § 2699.3.

6.      California Labor Code § 2699.3 governs PAGA actions for civil penalties arising from violations of California Labor Code §§ 201-203, 226, 510, 1174, 1182.11, 1194, 1197, and 1198, which provisions require employers to: pay employees for all hours worked; to pay employees no less than one-and-one-half times their regular rate of pay for all hours worked over eight in a work day or over forty in a work week; to provide employees with timely, accurate, itemized wage

statements; and to pay all outstanding wages immediately when an employee quits or is discharged.

7. Pursuant to Labor Code § 2699.3(a)(1)(A), before commencing a civil action, an aggrieved employee must first give notice by online filing with the LWDA and by certified mail to the employer of the alleged violations, including the facts and theories supporting the allegations. If the LWDA fails to investigate the alleged violations within sixty-five calendar days of the date of the notice, then the aggrieved employee may file a civil action to seek penalties.

8. On May 11, 2021, Plaintiff provided written notice of these alleged violations, including the facts and theories supporting his allegations, to the LWDA via online submission, with a certified copy mailed to Defendant. More than sixty-five calendar days have passed since the date notice was provided to the LWDA and Defendant. Accordingly, Plaintiff has satisfied the administrative prerequisites under California Labor Code § 2699.3(a) to recover civil penalties against Defendant for violations of California Labor Code §§ 201-203, 226, 510, 1174, 1182.11, 1194, 1197, 1198.

## JURISDICTION AND VENUE

9. The FLSA authorizes a private right of action to recover damages for violation of its wage and hour provisions. 29 U.S.C. § 216(b). California Labor Code §§ 2698 *et seq.* grant California employees the right to bring a civil action for violation of any provision of the Labor Code on behalf of themselves and other current or former employees to recover civil penalties. This Court has federal question jurisdiction over Plaintiff's FLSA claims under 28 U.S.C. § 1331 and supplemental jurisdiction over Plaintiff's state-law claims under 28 U.S.C. § 1367(a).

10. Venue is proper in the Southern District of California because O'Reilly is subject to personal jurisdiction in this District.

11. O'Reilly is subject to personal jurisdiction before this Court because it

has purposefully availed itself of the privileges of conducting activities throughout the State of California and established minimum contacts sufficient to confer jurisdiction. O'Reilly transacts business in California, advertises in California, and markets to California consumers. The violations of the law forming the basis of this lawsuit occurred in California. Further, O'Reilly employs California residents. Therefore, the assumption of jurisdiction over O'Reilly will not offend traditional notions of fair play and substantial justice and is consistent with the constitutional requirements of due process. O'Reilly also had and continues to have continuous and systematic contacts with the State of California sufficient to establish general jurisdiction over it.

## PARTIES AND PERSONAL JURISDICTION

12.    Plaintiff Jeffrey Pipich resides in Moreno Valley, California. Plaintiff worked for Defendant as a City Counter Route Driver from approximately July 2015 to February 2021. Plaintiff was a non-exempt employee and was compensated on an hourly basis. Pursuant to 29 U.S.C. § 216(b), Plaintiff has consented in writing to be a plaintiff in this action. *See* ECF No. 1-2.

13.    The "FLSA Collective" are all current and former non-exempt employees of O'Reilly who underwent a COVID-19 screening during at least one week in the three-year period before the filing of this Complaint to the present.

14.    The aggrieved employees are all current and former non-exempt employees of O'Reilly who underwent a COVID-19 screening or security inspection during at least one week in California between May 11, 2020 (one year prior to Plaintiff's PAGA notice), and the present.

15.    The FLSA Collective and the aggrieved employees are together referred to as the "Classes" and the members of the Classes as "Class Members."

16.    Plaintiff reserves the right to redefine the Classes prior to notice or certification, and thereafter, as may be warranted or necessary.

17.    O'Reilly is a Delaware corporation registered to do business in

California, and at all relevant times has been engaged in the business of selling automobile parts in the State of California and nationwide. O'Reilly owns 5,660 stores and relies on a network of 27 distribution centers nationwide to support its retail operations.

18.   O'Reilly's corporate headquarters is located at 233 South Patterson, Springfield, Missouri 65802.

19.   At all material times, O'Reilly has been governed by and subject to the FLSA, 29 U.S.C. § 207.

20.   O'Reilly employed Plaintiff and continues to employ similarly situated employees as defined by the FLSA, 29 U.S.C. § 203(d). See also 29 C.F.R. 791.2(a).

21.   At all material times, O'Reilly has been an enterprise within the meaning of section 3(r) of the FLSA. 29 U.S.C. § 203(r).

22.   During all times relevant hereto, Plaintiff was an employee of O'Reilly and was covered by the FLSA.

23.   The unlawful acts alleged in this Complaint were committed by O'Reilly or O'Reilly's officers, agents, employees, or representatives, while actively engaged in the management of O'Reilly's businesses or affairs and with the authorization of O'Reilly.

24.   At all material times, the unlawful conduct against Plaintiff and Class Members as described in this Complaint was actuated, in whole or in part, by a purpose to serve O'Reilly. At all relevant times, the unlawful conduct described in this Complaint was reasonably foreseeable by O'Reilly and committed under actual or apparent authority granted by O'Reilly such that all unlawful conduct is legally attributable to O'Reilly.

25.   O'Reilly employs individuals engaged in commerce or in the production of goods for commerce or handling, selling, or otherwise working on goods or materials that have been moved in or produced in commerce by any

1   person, as described by 29 U.S.C. §§ 206-207.

2       26.   O'Reilly's annual gross sales exceed $500,000.

3                    **FACTUAL ALLEGATIONS**

4       27.   Plaintiff incorporates herein by reference the allegations set forth

5   above.

6       28.   Defendant O'Reilly specializes in offering aftermarket automobile

7   parts to professional and amateur consumers at their 5,660 stores nationwide.

8   O'Reilly operationalizes its value proposition of offering excellent customer

9   service to consumers in part through the support of a strategic network of 27

10  distribution centers that channel inventory into O'Reilly's stores. Indeed,

11  O'Reilly's business model is designed so that timely product availability and

12  optimal inventory levels are achieved via this network of distribution centers,

13  which provide five-nights-a-week delivery to substantially all stores nationwide.

14  *See* https://corporate.oreillyauto.com/onlineapplication/careerpage/dc (last visited

15  July 22, 2021).

16      29.   Plaintiff Pipich worked for O'Reilly as an hourly, non-exempt

17  employee at O'Reilly Distribution Center Number 25 in Moreno Valley,

18  California, from July 2015 to February 2021. Plaintiff's job duties included loading

19  and transporting automobile parts from the distribution center to stores throughout

20  the southern California region.

21      30.   As an hourly, non-exempt employee, Plaintiff was required to clock-

22  in and clock-out at one of O'Reilly's timekeeping stations located inside the

23  distribution center. However, prior to clocking in each day, Plaintiff was subject to

24  a health screening for Covid-19 and a security inspection. After clocking out each

25  day, Plaintiff was subject to an additional security inspection.

26      31.   The Covid-19 screening was implemented in 2020 following the

27  outbreak of the Coronavirus.

28      32.   O'Reilly responded to the public health crisis by systematically

                                    6

implementing various safety measures as recommended by the Centers for Disease Control and Prevention, one of which included conducting mandatory health screenings for employees, to mitigate the impact of Covid-19 on its operations and safeguard its business interests. The Covid-19 screening was necessary to ensure that the virus did not infect O'Reilly employees and disrupt the work performed by Plaintiff and Class Members. Plaintiff and Class Members could not safely perform their duties without such screenings.

33.   The Covid-19 screening was imposed by O'Reilly as a requirement for work each shift. The examination was conducted on O'Reilly's premises, was required by O'Reilly, and was necessary for each employee to perform their work for O'Reilly.

34.   After parking, Plaintiff was subject to a Covid-19 screening at a designated area in the employee parking lot and, later, in the employee lounge area, both which anteceded access to the main distribution center area where employees conduct their work and where timekeeping stations were located.

35.   The screening process involved a security guard or another O'Reilly employee asking a series of questions related to the employee's potential exposure to the virus and present health symptoms. The screening process also entailed taking the employee's temperature. If the employee passed the examination, they were allowed to continue to the next screening, namely the security inspection, before they could officially clock in and commence getting paid for their work.

36.   The amount of time that it took to undergo the Covid-19 screening ranged between two to five minutes on average. However, the total time spent in the screening process often exceeded five minutes due to the number of employees waiting in line to undergo the screening.

37.   This Covid-19 daily screening should have been paid by O'Reilly because Plaintiff and Class Members were subject to the control of O'Reilly, had no option of opting out of the health screening, and were threatened with

disciplinary action if they failed to comply with the screening. Plaintiff and Class Members, specifically, were compelled to remain on O'Reilly's premises during the duration of the screening and perform a series of tasks as instructed by O'Reilly, namely answering questions related to their health and submitting to their temperatures being taken. O'Reilly's control and restraint prevented Plaintiff and Class Members from using this time for their own purposes.

38.  Plaintiff and Class Members nonetheless completed this work while off the clock and without time added to their pay to compensate for the Covid-19 screening.

39.  The security inspection prior to each shift, like the Covid-19 screening, was imposed by O'Reilly as a requirement for work. The inspection was conducted on O'Reilly's premises, was required by O'Reilly, and entailed significant control over employees' time.

40.  Plaintiff underwent the security screening in tandem with and after undergoing the Covid-19 screening, but prior to clocking in for work, at the start of the workday. Indeed, the security screening took place inside the employee lounge, which was outside the main distribution center area where employees accessed timekeeping stations to clock-in.

41.  The security screening was overseen by a security guard. On a typical morning, Plaintiff would walk up to the security station, empty his pockets, remove any metals, open any bags, walk through the metal detector, collect all belongings, walk across the remaining twenty-five feet of the security area, enter the main distribution center area, and only then would he clock in. The clock-in station was located about ten to fifteen feet from the door.

42.  Moreover, Plaintiff was subject to the same security inspection upon clocking out for the day and before leaving O'Reilly's premises.

43.  The amount of time that it took to undergo the pre-shift security inspection ranged between three to five minutes on average. However, this time

often exceeded five minutes depending on the number of employees waiting in line to undergo the screening.

44.   The amount of time that it took to undergo the post-shift security inspection was slightly longer and ranged between three to ten minutes on average. However, this time often exceeded ten minutes depending on the number of employees waiting in line to undergo the screening. Plaintiff noticed that lengthier lines occurred most frequently post-shift when larger groups of employees ended their shift around the same time.

45.   The daily pre-shift and post-shift off-the-clock security inspections should have been paid by O'Reilly because Plaintiff and Class Members were subject to the control of O'Reilly, could not opt out of the security inspections, and were threatened with disciplinary action if they failed to comply with the security inspections. Plaintiff and Class Members, specifically, were compelled to remain on O'Reilly's premises during the duration of the inspection and perform a series of tasks as instructed by O'Reilly, namely opening bags, removing any metals, walking through the metal detector, and collecting all belongings. O'Reilly's control and restraint prevented Plaintiff and Class Members from using this time for their own purposes. For instance, Plaintiff and Class Members could not use their cell phones or consume any food given that these items were prohibited from entering the distribution center.

46.   The primary job duties of Plaintiff and Class Members do not fall under any exemptions under the FLSA or the California Labor Code.

47.   Plaintiff was regularly scheduled to work, and indeed worked, five (5) days per week, typically between forty-five (45) and fifty (50) hours per week. Plaintiff observed that other Class Members were scheduled to work, and indeed worked, similar schedules.

48.   On workdays where Plaintiff and Class Members already worked over eight hours and in workweeks where Plaintiff and Class Members already worked

forty hours, the foregoing off-the-clock work resulted in time which Plaintiff and Class Members were not compensated at their overtime rate of pay.

49.   Plaintiff is representative of the members of the FLSA Collective and is acting on behalf of their interests, as well as Plaintiff's own interests, in bringing this action.

50.    Plaintiff will fairly and adequately represent and protect the interests of the members of the FLSA Collective. Plaintiff has retained counsel competent and experienced in employment and wage-and-hour class action and collective action litigation.

51.   The similarly situated members of the FLSA Collective are known to O'Reilly, are readily identifiable, and may be located through O'Reilly's records. These similarly situated employees may readily be notified of this action, and allowed to "opt-in" to this case pursuant to 29 U.S.C. § 216(b) for the purpose of collectively adjudicating their claims for unpaid wages, unpaid overtime compensation, liquidated damages (or, alternatively, interest), and attorneys' fees and costs under the FLSA.

## COLLECTIVE ACTION ALLEGATIONS

52.   Plaintiff brings the First Cause of Action (the FLSA claim) as an "opt-in" collective action pursuant to 29 U.S.C. § 216(b) on behalf of a proposed collection of similarly situated employees defined as:

> All current and former non-exempt employees of O'Reilly who underwent a COVID-19 screening during at least one week in the three-year period before the filing of this Complaint to the present. (the "FLSA Collective").

53.   Plaintiff, individually and on behalf of other similarly situated persons defined above, seeks relief on a collective basis challenging O'Reilly's policy and practice of failing to accurately record all hours worked, and failing to properly pay Plaintiff for all hours worked, including overtime compensation, for time spent

undergoing Covid-19 screenings. The number and identity of other similarly situated persons yet to opt-in and consent to be party-plaintiffs may be determined from O'Reilly's records, and potential opt-ins may be easily and quickly notified of the pendency of this action.

54.    Plaintiff's claims for violations of the FLSA may be brought and maintained as an "opt-in" collective action pursuant to Section 216(b) of the FLSA, because Plaintiff's FLSA claims are similar to the claims of the members of the FLSA Collective.

55.    The members of the FLSA Collective are similarly situated, as they have substantially similar non-exempt job duties and are subject to a common policy, practice, or plan that requires them to perform work off-the-clock and without compensation in violation of the FLSA.

56.    Unless the Court promptly issues such notice, the numerous similarly situated workers nationwide will be unable to secure unpaid overtime pay, which has been unlawfully withheld by O'Reilly.

**FIRST CAUSE OF ACTION**
**Violation of the Fair Labor Standards Act**
**29 U.S.C. § 201, *et seq.***
**(On Behalf of Plaintiff and the FLSA Collective)**

57.    Plaintiff re-alleges and incorporates the foregoing paragraphs as though fully set forth herein.

58.    The FLSA requires that covered employees receive compensation for all hours worked and overtime compensation not less than one and one-half times the regular rate of pay for all hours worked in excess of forty hours in a workweek. 29 U.S.C. § 207(a)(1).

59.    At all times material herein, Plaintiff and the FLSA Collective are covered employees entitled to the rights, protections, and benefits provided under the FLSA. See 29 U.S.C. § 203(e).

60.    Defendant O'Reilly Auto Enterprises, LLC, is a covered employer required to comply with the FLSA's mandates. See 29 U.S.C. § 203(d); 29 C.F.R. § 552.109(a).

61.    O'Reilly violated the FLSA with respect to Plaintiff and the FLSA Collective, by, among other things, failing to compensate Plaintiff and the FLSA Collective for all hours worked and, with respect to such hours, failing to pay the legally mandated minimum wage or overtime premium for such work. *See* 29 U.S.C. § 206; 29 C.F.R. § 531.35; 29 U.S.C. § 207 (a), (g). O'Reilly also violated the FLSA by failing to keep required, accurate records of all hours worked by Plaintiff and the FLSA Collective. 29 U.S.C. § 211(c).

62.    Plaintiff and the FLSA Collective are victims of a uniform and company-wide compensation policy. This uniform policy, in violation of the FLSA, has been applied to current and former non-exempt, hourly employees of O'Reilly, working in its locations throughout the United States.

63.    Plaintiff and the FLSA Collective are entitled to damages equal to the mandated pay, including minimum wage, straight time, and overtime premium pay within the three years preceding the filing of this Complaint, plus periods of equitable tolling, because O'Reilly has acted willfully and knew or showed reckless disregard for whether the alleged conduct was prohibited by the FLSA.

64.    O'Reilly has acted neither in good faith nor with reasonable grounds to believe that its actions and omission were not a violation of the FLSA, and as a result thereof, Plaintiff and the FLSA Collective are entitled to recover an award of liquidated damages in an amount equal to the amount of unpaid overtime pay or prejudgment interest at the applicable rate. 29 U.S.C. § 216(b).

65.    As a result of the aforesaid violations of the FLSA's provisions, pay, including straight time and overtime compensation, has been unlawfully withheld by O'Reilly from Plaintiff and the FLSA Collective. Accordingly, O'Reilly is liable for unpaid wages, together with an amount equal as liquidated damages,

attorneys' fees, and costs of this action.

66.   Wherefore, Plaintiff and the FLSA Collective request relief as hereinafter provided.

### SECOND CAUSE OF ACTION
**Violation of Cal. Lab. Code §§ 1174, 1182.11, 1194, 1197**
**(On Behalf of Plaintiff and the Aggrieved Employees)**

67.   Plaintiff re-alleges and incorporates the foregoing paragraphs as though fully set forth herein.

68.   At all relevant times, O'Reilly was required to compensate its hourly, non-exempt employees for all hours worked pursuant to California Labor Code sections 1174, 1182.11, 1194, and 1197 and the relevant Industrial Welfare Commission ("IWC") Wage Orders.

69.   California Labor Code § 200 defines wages as "all amounts for labor performed by employees of every description, whether the amount is fixed or ascertained by the standard of time, task, piece, commission basis or other method of calculation."

70.   IWC Wage Order 2-2001(2)(G) defines hours worked as "the time during which an employee is subject to the control of an employer and includes all the time the employee is suffered or permitted to work, whether or not required to do so."

71.   California Labor Code § 1194(a) provides as follows:

Notwithstanding any agreement to work for a lesser wage, any employee receiving less than the legal minimum wage or the legal overtime compensation applicable to the employee is entitled to recover in a civil action the unpaid balance of the full amount of this minimum wage or overtime compensation, including interest thereon, reasonable attorneys' fees, and costs of suit.

---

13

72.   O'Reilly requires Plaintiff and the aggrieved employees to work off-the-clock without compensation for their work performed in service of fulfilling O'Reilly's policies and procedures. O'Reilly requires Plaintiff and members of the aggrieved employees to submit to mandatory Covid-19 screenings and security inspections prior to clocking in for work each day, as well as security inspections after clocking out for work each day. In other words, Plaintiff and the aggrieved employees are forced to perform work for the benefit of O'Reilly without compensation.

73.   Therefore, O'Reilly committed, and continues to commit, the acts alleged herein knowingly and willfully and in conscious disregard of Plaintiff's and the aggrieved employees' rights.

74.   As a direct and proximate result of O'Reilly's unlawful acts or omissions, Plaintiff and Class Members have been deprived of minimum wages in an amount to be determined at trial, and are entitled to a recovery of such amount, plus liquidated damages, plus interest thereon, attorneys' fees, and costs of suit pursuant to Labor Code §§ 1194, 1197, and 2699(g).

### THIRD CAUSE OF ACTION
**Violation of Cal. Lab. Code §§ 510, 1194**
**(On Behalf of Plaintiff and the Aggrieved Employees)**

75.   Plaintiff re-alleges and incorporates the foregoing paragraphs as though fully set forth herein.

76.   California Labor Code § 510(a) provides, in relevant part, as follows:

Eight hours of labor constitutes a day's work. Any work in excess of eight hours in one workday and any work in excess of 40 hours in any one workweek and the first eight hours worked on the seventh day of work in any one workweek shall be compensated at the rate of no less than

one and one-half times the regular rate of pay for an employee.

77.    California Labor Code § 1194(a) provides as follows:

Notwithstanding any agreement to work for a lesser wage, any employee receiving less than the legal minimum wage or the legal overtime compensation applicable to the employee is entitled to recover in a civil action the unpaid balance of the full amount of this minimum wage or overtime compensation, including interest thereon, reasonable attorney's fees, and costs of suit.

78.    California Labor Code § 200 defines wages as "all amounts for labor performed by employees of every description, whether the amount is fixed or ascertained by the standard of time, task, piece, commission basis or other method of calculation." All such wages are subject to California's overtime requirements, including those set forth above.

79.    O'Reilly's policy and practice of requiring Plaintiff and Class Members to perform work off-the-clock is unlawful. Even absent this off-the-clock work, many of O'Reilly's hourly, non-exempt employees, including Plaintiff, work over eight hours in a day or over forty hours in a week. Accordingly, as a result of O'Reilly's unlawful policy alleged herein of requiring Plaintiff and Class Members to perform off-the-clock work, Plaintiff and the aggrieved employees work overtime hours for O'Reilly without being paid overtime premiums in violation of the California Labor Code, applicable IWC Wage Orders, and other applicable law.

80.    As alleged above, O'Reilly requires non-exempt, hourly employees to perform off-the-clock work, including unpaid overtime work, knowing full well that such work is being performed outside of their paid shifts. O'Reilly has, therefore, knowingly and willfully refused to perform its obligations to compensate

Plaintiff and the aggrieved employees for all premium wages for overtime work. As a proximate result of the aforementioned violations, O'Reilly damaged Plaintiff and the aggrieved employees in amounts to be determined according to proof at time of trial, but in an amount in excess of the jurisdictional requirements of this Court.

81.  O'Reilly is liable to Plaintiff and the aggrieved employees for the unpaid overtime and civil penalties, with interest thereon. Furthermore, they are entitled to an award of attorneys' fees and costs as set forth below.

82.  Wherefore, Plaintiff and the aggrieved employees request relief as hereinafter provided.

## FOURTH CAUSE OF ACTION
### Violation of Cal. Lab. Code §§ 226, 1174, 1198
### (On Behalf of Plaintiff and the Aggrieved Employees)

83.  Plaintiff re-alleges and incorporates the foregoing paragraphs as though fully set forth herein.

84.  California Labor Code § 226(a) provides as follows:

Every employer shall, semimonthly or at the time of each payment of wages, furnish each of his or her employees, either as a detachable part of the check, draft, or voucher paying the employee's wages, or separately when wages are paid by personal check or cash, an accurate itemized statement in writing showing (1) gross wages earned, (2) total hours worked by the employee, except for any employee whose compensation is solely based on a salary and who is exempt from payment of overtime under subdivision (a) of Section 515 or any applicable order of the Industrial Welfare Commission, (3) the number of piece-rate units earned and any applicable piece rate if the

employee is paid on a piece-rate basis, (4) all deductions, provided that all deductions made on written orders of the employee may be aggregated and shown as one item, (5) net wages earned, (6) the inclusive dates of the period for which the employee is paid, (7) the name of the employee and his or her social security number, (8) the name and address of the legal entity that is the employer, and (9) all applicable hourly rates in effect during the pay period and the corresponding number of hours worked at each hourly rate by the employee. The deductions made from payments of wages shall be recorded in ink or other indelible form, properly dated, showing the month, day, and year, and a copy of the statement or a record of the deductions shall be kept on file by the employer for at least four years at the place of employment or at a central location within the State of California.

85. O'Reilly fails to provide timely, accurate, itemized wage statements to Plaintiff and the aggrieved employees in accordance with Labor Code § 226(a) and the relevant IWC Wage Orders. In particular, the wage statements that O'Reilly provides to employees, including Plaintiff and the aggrieved employees, do not accurately reflect the actual hours worked, actual gross wages earned, or actual net wages earned. Part of the reason for this is that O'Reilly does not count as "hours worked" the off-the-clock time that hourly, non-exempt employees spend performing work activities outside of their scheduled paid shifts.

86. O'Reilly's failure to comply with Labor Code § 226(a) was and continues to be knowing and intentional. Although, as alleged herein, O'Reilly is aware that Plaintiff and the aggrieved employees perform off-the-clock work, O'Reilly systematically fails to include this time worked in Plaintiff's and the

1    aggrieved employees' wage statements.

2    87.    Plaintiff and the aggrieved employees suffered injury as a result of O'Reilly's knowing and intentional failure to provide timely, accurate, itemized wage statements to Plaintiff and the aggrieved employees in accordance with Labor Code § 226(a). In particular, the injury stemming from O'Reilly's violations is evidenced by this live and active dispute regarding unpaid wages, including overtime pay, between the Parties. As a result of O'Reilly's violations, Plaintiff and the aggrieved employees are required to undertake the difficult task of attempting to reconstruct O'Reilly's incomplete and inaccurate time and pay records to ensure that they are paid for all hours worked as required by California law.

88.    O'Reilly is liable to Plaintiff and the aggrieved employees alleged herein for the amounts described above in addition to the civil penalties set forth below, with interest thereon. Furthermore, Plaintiff and the aggrieved employees are entitled to an award of attorneys' fees and costs as set forth below.

89.    Wherefore, Plaintiff and the aggrieved employees request relief as hereinafter provided.

### FIFTH CAUSE OF ACTION
**Violation of Cal. Lab. Code §§ 201-203**
**(On Behalf of Plaintiff and the Aggrieved Employees)**

90.    Plaintiff re-alleges and incorporates the foregoing paragraphs as though fully set forth herein.

91.    California Labor Code § 201 provides as follows:

> If an employer discharges an employee, the wages earned and unpaid at the time of discharge are due and payable immediately.

92.    California Labor Code § 202 provides as follows:

> If an employee not having a written contract for a definite

period quits his or her employment, his or her wages shall become due and payable not later than 72 hours thereafter, unless the employee has given 72 hours previous notice of his or her intention to quit, in which case the employee is entitled to his or her wages at the time of quitting.

93. California Labor Code § 203 provides as follows:

If an employer willfully fails to pay, without abatement or reduction, in accordance with Sections 201, 201.5, 202, and 205.5, any wages of an employee who is discharged or who quits, the wages of the employee shall continue as a penalty from the due date thereof at the same rate until paid or until an action therefor is commenced; but the wages shall not continue for more than 30 days.

94. Plaintiff and some of the aggrieved employees have left their employment with O'Reilly during the statutory period, at which time O'Reilly owed them unpaid wages. These earned, but unpaid, wages derive from time spent performing off-the-clock work.

95. O'Reilly willfully refused, and continues to refuse, to provide Plaintiff and the aggrieved employees with payment for off-the-clock work performed, despite knowing full well that the work Plaintiff and the aggrieved employees performed was required.

96. Accordingly, O'Reilly willfully refused and continues to refuse to pay those members of the aggrieved employees that left their employment with O'Reilly all the wages that were due and owing them upon the end of their employment. As a result of O'Reilly's actions, Plaintiff and the aggrieved employees suffered and continue to suffer substantial losses, including lost earnings and interest.

97.    O'Reilly's willful failure to pay these former employees the wages due and owed to them violates Labor Code §§ 201-202. As a result, O'Reilly is liable to them for all penalties owing pursuant to Labor Code §§ 201-203.

98.    Wherefore, Plaintiff and the aggrieved employees request relief as hereinafter provided.

## **PRAYER FOR RELIEF**

Plaintiff, on behalf of himself and the proposed Classes, prays for relief as follows:

a.    That, at the earliest possible time, the Plaintiff be allowed to give notice of this collective action, or that the Court issue such notice, to the FLSA Collective Members as defined herein so that such persons shall be informed that this civil action has been filed, of the nature of the action, and of their right to join the FLSA collective suit if they believe they were denied lawful wages;

b.    That the Court certify that this action may proceed as a collective action under 29 U.S.C. § 216(b);

c.    That the Court find that O'Reilly's policies and practices described above violate the FLSA and California Labor Code §§ 201-203, 226, 510, 1174, 1182.11, 1194, 1197, and 1198;

d.    That the Court award damages, liquidated damages, restitution, and statutory penalties to be paid by O'Reilly for the causes of action alleged herein;

e.    That the Court award to Plaintiff and the aggrieved employees civil penalties as provided herein, including without limitation pursuant to California Labor Code §§ 6428-6430, 2699(a), and 2699(f);

f.    That the Court award interest, costs, and expenses, including reasonable attorneys' fees and expert fees, pursuant to the FLSA, California Labor Code § 2699(g)(1), or other applicable law;

g.    That the Court award any and all other applicable civil penalties, as provided by law; and

h.      That the Court order such other and further legal and equitable relief the Court deems just, necessary, and proper.

Dated: July 22, 2021                         Respectfully submitted,
                                                       BERGER MONTAGUE PC

                                                       *s/ Sophia M. Rios*
                                                       Sophia M. Rios
                                                       Shanon J. Carson
                                                       Camille Fundora Rodriguez
                                                       Daniel F. Thornton

                                                       Attorneys for Plaintiff and the Proposed
                                                       Collective

## <u>JURY DEMAND</u>

Plaintiff hereby demands a trial by jury on all claims and issues for which Plaintiff and the Collective are entitled to a jury.

Dated: July 22, 2021        Respectfully submitted,
BERGER MONTAGUE PC

<u>*s/ Sophia M. Rios*</u>
Sophia M. Rios
Shanon J. Carson
Camille Fundora Rodriguez
Daniel F. Thornton

Attorneys for Plaintiff and the Proposed Collective

---

22

FIRST AMENDED COLLECTIVE ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

Case No. 3:21-cv-01120-L-LL