UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JEFFREY PIPICH,<br><br>　　　　　　　　　　Plaintiff,<br><br>v.<br><br>O'REILLY AUTO ENTERPRISES, LLC,<br><br>　　　　　　　　　　Defendant. | Case No.:  21cv1120-L-LL<br><br>**ORDER GRANTING MOTION TO DISMISS** |

　　　Pending before the Court is Defendant O'Reilly Auto Enterprises' ("O'Reilly") motion to dismiss Plaintiff Jeffrey Pipich's ("Plaintiff") putative class action asserting violations of the Fair Labor Standards Act ("FLSA"), and violations of California Labor Code. The Court decides the matter on the papers submitted and without oral argument. See Civ. L. R. 7.1(d)(1). For the reasons stated below, the Court GRANTS O'Reilly's motion to dismiss.

　　I.　　BACKGROUND

　　O'Reilly Auto Enterprises, LLC owns and operates a line of automotive retailers that specializes in providing aftermarket parts and accessories to both consumers and businesses. O'Reilly relies on a network of distribution centers located across the United Sates to ensure product availability and inventory levels throughout their stores. O'Reilly employs thousands of individuals at distribution centers throughout the state of California

and the United States to support the flow of its automobile products into stores nationwide. The manual tasks that these employees perform include, without limitation, storing inventory, reviewing and selecting orders, pulling specific parts according to retailers' needs, packing orders, and loading and delivering orders.

Plaintiff Jeffrey Pipich resides in Moreno Valley, California. Plaintiff worked for Defendant as a City Counter Route Driver from approximately July 2015 to February 2021. Plaintiff was a non-exempt employee and was compensated on an hourly basis. Plaintiff's job duties included loading and transporting automobile parts from the distribution center to stores throughout the southern California region.

As an hourly, non-exempt employee, Plaintiff was required to clock-in and clock-out at one of O'Reilly's timekeeping stations located inside the distribution center. Prior to clocking in each day, Plaintiff was subject to a health screening for COVID-19 and a security inspection.

The screening requirement was implemented in 2020 following the outbreak of COVID-19. O'Reilly responded to the public health crisis by systematically implementing various safety measures as recommended by the Centers for Disease Control and Prevention, one of which included conducting mandatory health screenings for employees. The COVID-19 screening was imposed by O'Reilly as a requirement for work each shift and the examination was conducted on O'Reilly's premises.

After parking, Plaintiff was subject to a COVID-19 screening at a designated area in the employee parking lot and, later, in the employee lounge area, both which anteceded access to the main distribution center area where employees conduct their work and where timekeeping stations were located. The screening process involved a security guard or another O'Reilly employee asking a series of questions related to the employee's potential exposure to the virus and present health symptoms. The screening process also entailed taking the employee's temperature. The amount of time that it took to undergo the COVID-19 screening ranged between two to five minutes on average.

However, the total time spent in the screening process often exceeded five minutes due to the number of employees waiting in line to undergo the screening.

Plaintiff contends that the time spent participating in the COVID-19 daily screening should have been paid by O'Reilly because Plaintiff and putative class members were subject to the control of O'Reilly, had no option of opting out of the health screening, and were threatened with disciplinary action if they failed to comply with the screening.

On July 22, 2021, Plaintiff filed a First Amended Complaint. On August 5, 2021, Defendant O'Reilly filed the present motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). Plaintiff filed an opposition on August 30, 2021. On September 3, 2021, Defendant filed a response in reply. For the reasons stated below, the Court grants Defendant's motion.

## II. LEGAL STANDARD

The court must dismiss a cause of action for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). A motion to dismiss under Rule 12(b)(6) tests the complaint's sufficiency. *See N. Star Int'l v. Ariz. Corp. Comm'n*., 720 F.2d 578, 581 (9th Cir. 1983). The court must assume the truth of all factual allegations and "construe them in the light most favorable to [the nonmoving party]." *Gompper v. VISX, Inc.*, 298 F.3d 893, 895 (9th Cir. 2002); *see also Walleri v. Fed. Home Loan Bank of Seattle*, 83 F.3d 1575, 1580 (9th Cir. 1996).

As the Supreme Court explained, "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations and quotation marks omitted). Instead, the allegations in the complaint "must be enough to raise a right to relief above the speculative level." *Id*. at 555. A complaint may be dismissed as a matter of law either for lack of a cognizable legal theory or for insufficient facts under a cognizable theory. *Robertson v. Dean Witter Reynolds, Inc.,* 749 F.2d 530,

Case 3:21-cv-01120-L-JLB   Document 21   Filed 03/15/22   PageID.146   Page 4 of 8

534 (9th Cir. 1984).

III. FAIR LABOR STANDARDS ACT ("FLSA")

Defendant argues that Plaintiff's claim alleging violations of the FSLA for failure to compensate him and other distribution center employees for the time spent undergoing pre-shift COVID screenings is barred by the Portal-to-Portal Act and the Supreme Court's decision in *Integrity Staffing Solutions, Inc. v. Busk*, 574 U.S. 27 (2014) ("*Busk*"). (Mot. at 10-13). Defendant contends that the screenings do not constitute compensable "work" under the FLSA. (*Id*. at 21). Even if the Portal-to-Portal Act and *Busk* did not preclude Plaintiff's claim, Defendant contends that dismissal is appropriate because Plaintiff only alleges non-compensable *de minimis* time spent on those screenings. (*Id*. at 20).

Plaintiff counters that the pre-shift COVID screenings constitute compensable work under the FLSA. Further, Plaintiff contends that the screenings are integral and indispensable to Plaintiffs' duties, making them covered under the FLSA. (Oppo. at 2-6). Additionally, Plaintiff contends that although the screenings generally take between two and five minutes, they do not constitute a *de minimis* amount of time taken in the aggregate. (*Id*. at 15-16).

A. *Legal Standard*

The FLSA, as enacted in 1939, established a minimum wage, and overtime compensation for any hours worked "in excess of 40 hours in each workweek." *Busk*, 574 U.S. at 31. Courts were left to determine what constituted "work" and "workweek" because those terms were left undefined in the FLSA. The Supreme Court defined the terms broadly, finding that any "physical or mental exertion (whether burdensome or not) controlled or required by the employer and pursued necessarily and primarily for the benefit of the employer and his business" constituted "work." *Tennessee Coal, Iron & R. Co. v. Muscoda Local No. 123*, 321 U.S. 590 598 (1944). The definition of "workweek" was also drawn broadly to include "all time during which the employee is necessarily

4

21cv1120-L-LL

required to be on the employers' premises, on duty or at a prescribed workplace." *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 690–91, (1946).

Following the holding in *Anderson*, employees filed over 1,500 lawsuits within six months seeking almost $6 billion in back pay and liquidated damages for preliminary and postliminary activities. *Busk*, 574 U.S. at 516. In response to the flood of litigation which threatened to undermine many businesses, Congress passed the Portal-to-Portal Act. Under the Act, an employer was not responsible for compensating an employee for the following:

> (1) walking, riding, or traveling to and from the actual place of performance of the **principal activity or activities which such employee is employed to perform**, and
>
> (2) activities which are **preliminary to or postliminary** to said principal activity or activities,
>
>  which occur either prior to the time on any particular workday at which such employee commences, or subsequent to the time on any particular workday at which he ceases, such principal activity or activities.

29 U.S.C. § 254(a)(emphasis added).

However, an activity "performed either before or after the regular work shift," may be compensable "if those activities are an integral and indispensable part of the principal activities." *Steiner v. Mitchell*, 350 U.S. 247, (1956); see also *Mitchell v. King Packing Co.*, 350 U.S. 260, 261 (1956); 29 C.F.R. § 790.7(h) (1999) ("[A]n activity which is a 'preliminary' or 'postliminary' activity under one set of circumstances may be a principal activity under other conditions."). "[A]an activity is integral and indispensable to the principal activities that an employee is employed to perform—and thus compensable under the FLSA—if it is an intrinsic element of those activities and one with which the employee cannot dispense if he is to perform his principal activities." *Busk*, 574 U.S. at 37. The inquiry as to whether an activity is integral and indispensable is fact specific. *Alvarez v. IBP, Inc.,* 339 F.3d 894, 902-903 (9th Cir. 2003).

"As a general rule . . . employees cannot recover for otherwise compensable time if it is *de minimis*." *Lindow v. United States*, 738 F.2d 1057, 1061–62 (9th Cir.1984). "When the matter in issue concerns only a few seconds or minutes of work beyond the scheduled working hours . . . such trifles may be disregarded[, for] [s]plit-second absurdities are not justified by the actualities or working conditions or by the policy of the [FLSA]." *Anderson*. 328 U.S. at 692, (1946).

### B. *Discussion*

Generally, employer mandated activities performed before or after a work shift are not compensable under the Portal-to-Portal Act if the surrounding circumstances indicate the activity is not "integral and indispensable to the principal activities that an employee is employed to perform." *Busk*, 574 U.S. at 37. In *Busk*, the Supreme Court considered whether a post-shift security screening for Amazon warehouse workers was compensable as an integral and indispensable part of the employee's principal activities and held that the screenings were not. *Id*. at 30. The Court reasoned that "the screenings were not an intrinsic element of retrieving products from warehouse shelves" and could have been eliminated "altogether without impairing the employees' ability to complete their work." *Id*. at 35. The *Busk* court explained that there is "no distinction between the searches conducted for the safety of employees and those conducted for the purpose of preventing theft- neither [are] compensable under the Portal-to-Portal Act." *Busk*, 574

Plaintiff contends that the health screenings here are distinguishable from the security screenings at issue in *Busk* because "in the pandemic era, undergoing COVID screenings is integral to distribution center employees' work, since undergoing such screenings is an intrinsic element of working in a large environment with many other individuals." (Oppo. at 7). In addition, Plaintiff argues that the screenings are indispensable because they cannot be eliminated without jeopardizing employee safety and creating business risks. (*Id.*)

When determining if an activity is integral and indispensable to the principal activities for which an employee was hired, it is the nature of the work to be performed

that drives the analysis. *IBP*, 546 U.S. at 42; *Mitchell*, 350 U.S. at 262. A court must look to the specific tasks and surrounding circumstances in conducting the inquiry. For instance, the time spent by meatpackers sharpening their knives was held to be compensable because that activity was necessary to avoid dull blades that would "slow down production," affect the appearance of the meat," and "lead to accidents." *Mitchell*, supra at 262. In contrast, poultry-plant workers were not to be compensated for time spent waiting to put on protective gear because the waiting was "two steps removed from the productive activity on the assembly line." *IBP, Inc v. Alvarez*, 546 U.S. 21, 42 (2005).

Similarly, the Department of Labor's regulations note that "[t]he 'principal' activities referred to in the statute are activities which the employee is 'employed to perform.'" 29 CFR § 790.8(b)(2013). And "[a]mong the activities included as an integral part of a principal activity are those closely related activities which are indispensable to its performance." 29 CFR § 790.8(c). According to the DOL, pre-shift COVID temperature checks are likely compensable if the check is integral and indispensable to the job to be performed, such as for a hospital nurse whose principal job activities include "direct patient care services." COVID-19 and the Fair Labor Standards Act Questions and Answers, https://www.dol.gov/agencies/whd/flsa/pandemic, (last visited March 9, 2022) ("[f]or many employees, undergoing a temperature check before they begin work must be paid because it is necessary for their jobs.") The DOL guidance explains that a COVID temperature check is necessary for a hospital nurse to safely and effectively perform her job. *Id*.

In the present case, Plaintiff's job duties included "loading and transporting automobile parts from the distribution center to stores throughout the southern California region." (FAC at ¶ 29.) A pre-shift COVID screening is not the "principal activity or activities which [the] employee is employed to perform." 29 U.S.C. §254(a)(1). O'Reilly did not hire the employees to undergo health screenings, but instead to load and transport products to stores. *Busk*, 574 U.S. at 518. Unlike the nurse in the DOL example whose

principal job duty is to keep patients healthy and has direct patient contact, Plaintiff's principal activities consisted of manual labor and transportation of auto parts to stores.

Similarly, the pre-shift COVID screenings were not "integral and indispensable" to the employees' duties because the screening was not an intrinsic element of the loading and transporting of products to the stores. The screenings were not indispensable to the employees' duties because O'Reilly could eliminate them completely without hindering the employees' ability to perform their duties. *Id.* A pre-shift COVID temperature check and short questions regarding exposure do not share the required nexus with Plaintiff's duties of retrieving automotive parts and delivering them to auto part stores to make the screening a compensable activity that is integral and indispensable to those activities. In light of the above, the Court need not address the parties' arguments regarding whether the time spent in the screening was de minimis.

After construing Plaintiff's allegations as true and in his favor, the Court finds that Plaintiff fails to state a cognizable legal claim under the FLSA for pre-shift COVID screenings implemented by O'Reilly. *Robertson*, 749 F.2d at 534.

IV. CONCLUSION AND ORDER

For the foregoing reasons, the Courts **GRANTS** Defendant's Motion to Dismiss without prejudice.

**IT IS SO ORDERED.**

Dated: March 14, 2022

Hon. M. James Lorenz
United States District Judge