1  Alexandra K. Piazza (SBN 341678)
   apiazza@bm.net
2  Sophia M. Rios (SBN 305801)
   srios@bm.net
3  **BERGER MONTAGUE PC**
4  401 B Street, Suite 2000
   San Diego, CA 92101
5  Telephone: (619) 489-0300
   Facsimile: (215) 875-4604
6
7  *Attorneys for Plaintiff*
8
9  *[Additional counsel listed on following page]*

10          **IN THE UNITED STATES DISTRICT COURT**
11          **FOR THE SOUTHERN DISTRICT OF CALIFORNIA**
                         **SAN DIEGO DIVISION**
12

| | |
|---|---|
| 13  JEFFREY PIPICH, as an "aggrieved employee" on behalf of other similarly situated "aggrieved employees" under the Labor Code Private Attorney General Act of 2004, | Case No. 3:21-cv-01120-L-LL |
| 14 | |
| 15 | **SECOND AMENDED COMPLAINT FOR VIOLATIONS OF THE LABOR CODE AND CIVIL PENALTIES UNDER THE PRIVATE ATTORNEY GENERALS ACT OF 2004, LABOR CODE §§ 2698, *ET SEQ.*** |
| 16 | |
| 17          *Plaintiff*, | |
| 18  v. | |
| 19  O'REILLY AUTO ENTERPRISES, LLC, a Delaware limited liability company, and DOES 1-50, inclusive, | **DEMAND FOR JURY TRIAL** |
| 20 | |
| 21 | |
| 22          *Defendant(s).* | |

23
24
25
26
27
28

Shanon J. Carson* (PA 85957)
scarson@bm.net
Camille Fundora Rodriguez*
(PA 312533, NJ 01764-2011)
crodriguez@bm.net
**BERGER MONTAGUE PC**
1818 Market Street, Suite 3600
Philadelphia, PA 19103
Telephone: (215) 875-3000
Facsimile: (215) 875-4604

* admitted *pro hac vice*

DAVID G. SPIVAK (SBN 179684)
david@spivaklaw.com
CAROLINE TAHMASSIAN (SBN 285680)
caroline@spivaklaw.com
**THE SPIVAK LAW FIRM**
8605 Santa Monica Blvd., PMB 42554
West Hollywood, CA 90069
Telephone: (213) 725-9094
Facsimile: (213) 634-2485

WALTER L. HAINES (SBN 71075)
walter@uelglaw.com
**UNITED EMPLOYEES LAW GROUP**
4276 Katella Ave., Suite 301
Los Alamitos CA 90720
Telephone: (562) 256-1047
Facsimile: (562) 256-1006

## <u>SECOND AMENDED COMPLAINT</u>

Plaintiff Jeffrey Pipich ("Plaintiff"), on behalf of himself, the State of California, and other aggrieved employees, brings this lawsuit based on alleged violations of the California Labor Code and Industrial Welfare Commission Order No. 9-2001 (hereafter "the Wage Order") against O'Reilly Auto Enterprises, LLC, ("O'Reilly") and DOES 1-50, inclusive (collectively referred to as "Defendants") seeking all available remedies under the Private Attorneys General Act ("PAGA") of the California Labor Code. This Second Amended Complaint ("SAC" or "Complaint") is being filed with O'Reilly's consent pursuant to Fed. R. Civ. P. 15(a)(2), and it relates back to the date of the original pleading pursuant to Fed. R. Civ. P. 15(c). The allegations that follow are made on personal knowledge as to Plaintiff's own conduct and on information and belief as to the acts of others.

## <u>INTRODUCTION</u>

1.     Defendants own and operate a line of automotive retailers that specialize in providing aftermarket parts and accessories to both consumers and businesses. Defendants rely on a robust network of distribution centers strategically located across the United States to ensure timely product availability and optimal inventory levels throughout their stores. Defendants employ thousands of individuals at distribution centers throughout the state of California and the United States to support the flow of their automobile products into stores nationwide. The manual tasks that these employees perform include, without limitation, storing inventory, reviewing and selecting orders, pulling specific parts according to retailers' needs, packing orders, and loading and delivering orders.

2.     This case is about Defendants' failure to provide proper payment of all wages, including regular and overtime wages and to otherwise comply with state labor laws. As described in further detail below, Plaintiff alleges that Defendants are liable to him, the State of California, and other similarly situated and aggrieved current and former employees, for civil penalties and other related relief. These

claims are based on Defendants' failures to: (1) Provide all rest and meal periods; (2) Indemnify for necessary work-related expenditures; (3) Pay all wages earned for all hours worked at the correct rates of pay; (4) Issue accurate and complete itemized wage statements; (5) Timely pay wages during and upon termination of employment and; (6) Provide toilet and storage facilities, lockers, change rooms, and acceptable work temperatures, and (7) Maintain accurate employment records. Additionally, Plaintiff seeks civil penalties under the California Labor Code Private Attorneys General Act, Labor Code §§ 2698, *et seq.* ("PAGA"). Accordingly, Plaintiff now seeks to recover civil penalties and related relief through this class and representative action.

3.      California Labor Code §§ 2698 *et seq.* grant California employees the right to bring a civil action for violation of any provision of the Labor Code on behalf of themselves and other current or former employees to recover civil penalties. In passing PAGA, the California Legislature

> "declared that adequate financing of labor law enforcement was necessary to achieve maximum compliance with state labor laws, that staffing levels for labor law enforcement agencies had declined and were unlikely to keep pace with future growth of the labor market, and that it was therefore in the public interest to allow aggrieved employees, acting as private attorneys general, to recover civil penalties for Labor Code violations."

*Arias v. Super. Ct.*, 46 Cal. 4th 969, 980 (2009).

4.      PAGA permits aggrieved employees to collect the civil penalties authorized by law and normally collectible by the Labor and Workforce Development Agency ("LWDA") or any of its departments or divisions. *See* Cal. Lab. Code § 2699(a). However, because the action is brought on behalf of the state, 75% of the fees collected are distributed to the LWDA for the enforcement of labor laws and for the education of employers and employees. The remaining 25% is shared between the aggrieved employees. *See* Cal. Lab. Code § 2699(i).

5.      PAGA provides that any civil penalty assessed and collected by the

LWDA for violations of applicable provisions of the California Labor Code may, as an alternative, be recovered through a civil action brought by an aggrieved employee on behalf of himself and other current or former employees pursuant to procedures outlined in California Labor Code § 2699.3.

6.     California Labor Code § 2699.3 governs PAGA actions for civil penalties arising from violations of California Labor Code §§ 201, 202, 203, 204, 226, 226.7, 510, 512, 1174, 1194, 1197, 1198, 2350, and 2802, which provisions require employers to: provide all rest and meal periods; indemnify for necessary work-related expenditures; pay all wages earned for all hours worked at the correct rates of pay; issue accurate and complete itemized wage statements; timely pay wages during and upon termination of employment and; provide toilet and storage facilities, lockers, change rooms, and acceptable work temperatures, and maintain accurate employment records..

7.     Pursuant to Labor Code § 2699.3(a)(1)(A), before commencing a civil action, an aggrieved employee must first give notice by online filing with the LWDA and by certified mail to the employer of the alleged violations, including the facts and theories supporting the allegations. If the LWDA fails to investigate the alleged violations within sixty-five calendar days of the date of the notice, then the aggrieved employee may file a civil action to seek penalties.

8.     On May 11, 2021, Plaintiff provided written notice of these alleged violations, including the facts and theories supporting his allegations, to the LWDA via online submission, with a certified copy mailed to Defendants. More than sixty-five calendar days have passed since the date notice was provided to the LWDA and Defendants. Accordingly, Plaintiff has satisfied the administrative prerequisites under California Labor Code § 2699.3(a) to recover civil penalties against Defendants for violations of the Labor Code and the Wage Order.

9.     On January 4, 2022, Plaintiff provided supplemental written notice of further alleged violations, including the facts and theories supporting his

allegations, to the LWDA via amended online submission, with a certified copy mailed to Defendants. More than sixty-five calendar days have passed since the date the supplemental notice was provided to the LWDA and Defendants. Accordingly, Plaintiff has satisfied the administrative prerequisites under California Labor Code § 2699.3(a) to recover civil penalties against Defendants for violations of the Labor Code and the Wage Order.

## **THE PARTIES**

10.     Plaintiff Jeffrey Pipich resides in Moreno Valley, California. Plaintiff worked for Defendants as a City Counter Route Driver from approximately July 2015 to February 2021. Plaintiff was a non-exempt employee and was compensated on an hourly basis.

11.     The "Aggrieved Employees" are all individuals Defendants have currently and formerly employed directly or otherwise contracted with indirectly through staffing companies in California as hourly, non-exempt employees, including without limitation drivers and pickers, individuals performing work comparable to the aforementioned, and persons in comparable positions at any time between May 11, 2020 (one year prior to Plaintiff's initial PAGA notice), and the entry of final judgment (the "PAGA Period").

12.     At all relevant times, Defendants issued wages to Plaintiff and all of the other Aggrieved Employees on a bi-weekly basis and paid them by the hour.

13.     At all relevant times, Defendants classified Plaintiff and all of the other Aggrieved Employees as non-exempt employees entitled to the protections of the Labor Code and the Wage Order.

14.     O'Reilly is a Delaware limited liability company registered to do business in California, and at all relevant times has been engaged in the business of selling automobile parts in the State of California.

15.     The unlawful acts alleged in this Complaint were committed by Defendants or Defendants' officers, agents, employees, or representatives, while

1  actively engaged in the management of Defendants' businesses or affairs and with
2  the authorization of Defendants.

3      16.    At all material times, the unlawful conduct against Plaintiff and the
4  Aggrieved Employees as described in this Complaint was actuated, in whole or in
5  part, by a purpose to serve Defendants. At all relevant times, the unlawful conduct
6  described in this Complaint was reasonably foreseeable by Defendants and
7  committed under actual or apparent authority granted by Defendants such that all
8  unlawful conduct is legally attributable to Defendants.

9                        **FACTUAL ALLEGATIONS**

10     17.    Plaintiff incorporates herein by reference the allegations set forth
11  above.

12     18.    Defendants specialize in offering aftermarket automobile parts to
13  professional and amateur consumers at their stores. Defendants operationalize their
14  value proposition of offering excellent customer service to consumers in part
15  through the support of a strategic network of distribution centers that channel
16  inventory into Defendants' stores. Indeed, Defendants' business model is designed
17  so that timely product availability and optimal inventory levels are achieved via this
18  network of distribution centers, which provide five-nights-a-week delivery to
19  substantially all stores.

20     19.    Plaintiff worked for Defendants as an hourly, non-exempt employee at
21  Defendants' Distribution Center Number 25 in Moreno Valley, California, from
22  July 2015 to February 2021. Plaintiff's job duties included loading and transporting
23  automobile parts from the distribution center to stores throughout the southern
24  California region.

25     20.    As an hourly, non-exempt employee, Plaintiff was required to clock-
26  in and clock-out at one of Defendants' timekeeping stations located inside the
27  distribution center. However, prior to clocking in each day, Plaintiff was subject to
28  a health screening for Covid-19 and a security inspection. After clocking out each

day, Plaintiff was subject to an additional security inspection.

21.     The Covid-19 screening was implemented in 2020 following the outbreak of the Coronavirus.

22.     Defendants responded to the public health crisis by systematically implementing various safety measures as recommended by the Centers for Disease Control and Prevention, one of which included conducting mandatory health screenings for employees, to mitigate the impact of Covid-19 on their operations and safeguard their business interests. The Covid-19 screening was necessary to ensure that the virus did not infect Defendants employees and disrupt the work performed by Plaintiff and the Aggrieved Employees. Plaintiff and the Aggrieved Employees could not safely perform their duties without such screenings.

23.     The Covid-19 screening was imposed by Defendants as a requirement for work each shift. The examination was conducted on Defendants' premises, was required by Defendants, and was necessary for each employee to perform their work for Defendants.

24.     After parking, Plaintiff was subject to a Covid-19 screening at a designated area in the employee parking lot and, later, in the employee lounge area, both which anteceded access to the main distribution center area where employees conduct their work and where timekeeping stations were located.

25.     The screening process involved a security guard or another employee of Defendants asking a series of questions related to the employee's potential exposure to the virus and present health symptoms. The screening process also entailed taking the employee's temperature. If the employee passed the examination, they were allowed to continue to the next screening, namely the security inspection, before they could officially clock in and commence getting paid for their work.

26.     The amount of time that it took to undergo the Covid-19 screening ranged between two to five minutes on average. However, the total time spent in

the screening process often exceeded five minutes due to the number of employees waiting in line to undergo the screening.

27.     This Covid-19 daily screening should have been paid by Defendants because Plaintiff and the Aggrieved Employees were subject to the control of Defendants, had no option of opting out of the health screening, and were threatened with disciplinary action if they failed to comply with the screening. Plaintiff and the Aggrieved Employees, specifically, were compelled to remain on Defendants' premises during the duration of the screening and perform a series of tasks as instructed by Defendants, namely answering questions related to their health and submitting to their temperatures being taken. Defendants' control and restraint prevented Plaintiff and the Aggrieved Employees from using this time for their own purposes.

28.     Plaintiff and the Aggrieved Employees nonetheless completed this work while off the clock and without time added to their pay to compensate for the Covid-19 screening.

29.     The security inspection prior to each shift, like the Covid-19 screening, was imposed by Defendants as a requirement for work. The inspection was conducted on Defendants' premises, was required by Defendants, and entailed significant control over employees' time.

30.     Plaintiff underwent the security screening in tandem with and after undergoing the Covid-19 screening, but prior to clocking in for work, at the start of the workday. Indeed, the security screening took place inside the employee lounge, which was outside the main distribution center area where employees accessed timekeeping stations to clock-in.

31.     The security screening was overseen by a security guard. On a typical morning, Plaintiff would walk up to the security station, empty his pockets, remove any metals, open any bags, walk through the metal detector, collect all belongings, walk across the remaining twenty-five feet of the security area, enter the main

distribution center area, and only then would he clock in. The clock-in station was located about ten to fifteen feet from the door.

32.   Moreover, Plaintiff was subject to the same security inspection upon clocking out for the day and before leaving Defendants' premises.

33.   The amount of time that it took to undergo the pre-shift security inspection ranged between three to five minutes on average. However, this time often exceeded five minutes depending on the number of employees waiting in line to undergo the screening.

34.   The amount of time that it took to undergo the post-shift security inspection was slightly longer and ranged between three to ten minutes on average. However, this time often exceeded ten minutes depending on the number of employees waiting in line to undergo the screening. Plaintiff noticed that lengthier lines occurred most frequently post-shift when larger groups of employees ended their shift around the same time.

35.   The daily pre-shift and post-shift off-the-clock security inspections should have been paid by Defendants because Plaintiff and the Aggrieved Employees were subject to the control of Defendants, could not opt out of the security inspections, and were threatened with disciplinary action if they failed to comply with the security inspections. Plaintiff and the Aggrieved Employees, specifically, were compelled to remain on Defendants' premises during the duration of the inspection and perform a series of tasks as instructed by Defendants, namely opening bags, removing any metals, walking through the metal detector, and collecting all belongings. Defendants' control and restraint prevented Plaintiff and the Aggrieved Employees from using this time for their own purposes. For instance, Plaintiff and the Aggrieved Employees could not use their cell phones or consume any food given that these items were prohibited from entering the distribution center.

36.   The primary job duties of Plaintiff and the Aggrieved Employees do

not fall under any exemptions to the California Labor Code.

37.    Plaintiff was regularly scheduled to work, and indeed worked, five (5) days per week, typically between forty-five (45) and fifty (50) hours per week. Plaintiff observed that other Aggrieved Employees were scheduled to work, and indeed worked, similar schedules.

38.    On workdays where Plaintiff and the Aggrieved Employees already worked over eight hours and in workweeks where Plaintiff and the Aggrieved Employees already worked forty hours, the foregoing off-the-clock work resulted in time which Plaintiff and the Aggrieved Employees were not compensated at their overtime rate of pay.

39.    Defendants failed to compensate Plaintiff and the Aggrieved Employees for all hours worked at the applicable minimum or regular rates of pay.

40.    Defendants failed to compensate Plaintiff and the Aggrieved Employees at the correct rates of pay for all hours worked over eight (8) in a day, over forty (40) in a week, and for the first eight (8) hours of the seventh day of the workweek. The unpaid activities above extended the workdays of Plaintiff and the Aggrieved Employees in excess of eight hours in a day and in excess of forty (40) hours in a week. However, Defendants did not compensate Plaintiff and the Aggrieved Employees at overtime premium rates of pay for such work.

41.    Defendants failed to compensate Plaintiff and the Aggrieved Employees at the correct rates of pay for all hours worked over twelve (12) in a day, and all hours over the first eight (8) of the seventh day of the workweek. The unpaid activities above extended the workdays of Plaintiff and the Aggrieved Employees in excess of twelve (12) hours in a day. However, Defendants did not compensate Plaintiff and the Aggrieved Employees at double-time premium rates of pay for such work.

42.    At all relevant times, Defendants failed to provide the Aggrieved Employees with all timely 30-minute, off-duty meal periods. As explained above,

Defendants also required the Aggrieved Employees to spend time in security and Covid-19 procedures during their off-the-clock meal periods. To enjoy the use of personal items such as food brought from home, mobile phones, and other electronic devices, Defendants required the Aggrieved Employees to undergo the security procedures during their off-the-clock meal periods. Defendants did not pay the Aggrieved Employees for time spent in these mealtime activities nor paid for the entirety of the interrupted 30-minute meal period as time worked. Defendants also failed to pay premium wages for days on which they failed to provide the Aggrieved Employees with meal periods as required by law.

43.    At all relevant times, Defendants failed to authorize and permit the Aggrieved Employees to take ten-minute, off-duty, paid rest breaks every four hours worked or major portion thereof. As explained above, Defendants also required the Aggrieved Employees to spend time in security and Covid-19 procedures during their off-duty rest breaks. To enjoy the use of personal items such as food brought from home, mobile phones, and other electronic devices, Defendants required the Aggrieved Employees to undergo the security procedures during their off-duty rest breaks. Defendants failed to pay premium wages for days on which they failed to authorize and permit the Aggrieved Employees to take rest breaks as required by law.

44.    At all relevant times, Defendants required the Aggrieved Employees to incur certain business expenses in the course of performing their duties. Defendants required the Aggrieved Employees to supply their own gloves and other protective gear and PPE to perform their job duties. Defendants did not provide these items and did not reimburse the Aggrieved Employees for these items.

45.    At all relevant times, Defendants failed to issue to Plaintiff and the Aggrieved Employees complete and accurate wage statements that state all hours worked at the correct rates of pay, and all wages earned. Defendants knowingly and intentionally failed to state on the wage statements they issued to Plaintiff and the

Aggrieved Employees the unpaid wages discussed above. The wage statements fail to state all hours worked at the correct rates of pay, all minimum wages earned, all regular wages earned, all overtime wages earned, all double-time wages earned, all meal period premium wages earned, and all rest break premium wages earned.

46.    By failing to include all compensable time worked, Defendants also failed to timely pay Plaintiff and the Aggrieved Employees all earned wages as described above during and at the conclusion of employment.

47.    By failing to include all compensable time worked, Defendants failed to maintain accurate employee records of Plaintiff and the Aggrieved Employees.

48.    At all relevant times, Plaintiff and the Aggrieved Employees have been non-exempt employees entitled to the protections of both the Labor Code and the Wage Order.

**FIRST (AND ONLY) CAUSE OF ACTION**
**CIVIL PENALTIES**
**(Lab. Code §§ 2698, *et seq.*)**
**(By Plaintiff, on behalf of himself and the other Aggrieved Employees, against Defendants)**

49.    Plaintiff incorporates all paragraphs of this Complaint as if fully alleged herein.

50.    At all relevant times, Plaintiff and the Aggrieved Employees have been non-exempt employees entitled to the protections of both the Labor Code and the Wage Order.

**A.    FAILURE TO PROVIDE REST BREAKS AND MEAL PERIODS**

51.    In relevant part, California Labor Code § 1198 states:

The maximum hours of work and the standard conditions of labor fixed by the commission shall be the maximum hours of work and the standard conditions of labor for employees. The employment of any employee for longer hours than those fixed by the order or under conditions of labor prohibited by the order is unlawful.

52.    In relevant part, California Labor Code § 512 states:

An employer shall not employ an employee for a work period of more than five hours per day without providing the employee with a meal period of not less than 30 minutes, except that if the total work period per day of the employee is no more than six hours, the meal period may be waived by mutual consent of both the employer and employee.

An employer shall not employ an employee for a work period of more than 10 hours per day without providing the employee with a second meal period of not less than 30 minutes, except that if the total hours worked is no more than 12 hours, the second meal period may be waived by mutual consent of the employer and the employee only if the first meal period was not waived.

53.   In relevant part, Section 12 of the Wage Order states:

**Rest Periods**

(A)   "Every employer shall authorize and permit all employees to take rest periods, which insofar as practicable shall be in the middle of each work period. The authorized rest period time shall be based on the total hours worked daily at the rate of ten (10) minutes net rest time per four (4) hours or major fraction thereof. However, a rest period need not be authorized for employees whose total daily work time is less than three and one-half (3 1/2) hours. Authorized rest period time shall be counted as hours worked for which there shall be no deduction from wages."

(B)   If an employer fails to provide an employee a rest period in accordance with the applicable provisions of this Order, the employer shall pay the employee one (1) hour of pay at the employee's regular rate of compensation for each work day that the rest period is not provided."

54.   In relevant part, Section 11 of the Wage Order states:

## Meal Periods

(A)  "No employer shall employ any person for a work period of more than five (5) hours without a meal period of not less than 30 minutes, except that when a work period of not more than six (6) hours will complete the day's work the meal period may be waived by mutual consent of the employee and the employee. Unless the employee is relieved of all duty during a 30 minute meal period, the meal period shall be considered an 'on duty' meal period and counted as time worked. An 'on duty' meal period shall be permitted only when the nature of the work prevents an employee from being relieved of all duty and when by written agreement between the parties an on-the-job paid meal period is agreed to. The written agreement shall state that the employee may, in writing, revoke the agreement at any time."

(B)  If an employer fails to provide an employee a meal period in accordance with the applicable provisions of this Order, the employer shall pay the employee one (1) hour of pay at the employee's regular rate of compensation for each work day that the meal period is not provided."

55.  In relevant part, California Labor Code § 226.7 states:

(b)  An employer shall not require an employee to work during a meal or rest period mandated pursuant to an applicable statute, or applicable regulation, standard, or order of the Industrial Welfare Commission, the Occupational Safety and Health Standards Board, or the Division of Occupational Safety and Health.

(c)  If an employer fails to provide an employee a meal period or rest period in accordance with a state law, including, but not limited to, an applicable statute or applicable regulation, standard, or order of the Industrial Welfare Commission, the Occupational Safety and Health Standards Board, or the Division of Occupational Safety and Health, the employer shall pay the employee one additional hour of pay at the employee's regular rate of compensation for each work day that the meal or rest period is not provided.

56.     Pursuant to California Labor Code § 512 and the Wage Order, the Aggrieved Employees are entitled to uninterrupted meal periods of at least 30 minutes for each day they worked five or more hours. Pursuant to California Labor Code § 512, they are also entitled to a second 30-minute meal period when they worked more than 10 hours in a workday.

57.     Pursuant to the Wage Order, the Aggrieved Employees are entitled to be provided with net rest breaks of at least ten minutes for each four-hour period of work, or major fraction thereof.

58.     Defendants intentionally failed to provide the Aggrieved Employees with all required 30-minute duty free meal periods and 10-minute rest periods free from any work duties in accordance with the Wage Order.

59.     At all relevant times, Defendants failed to provide the Aggrieved Employees with all timely meal periods. Defendants denied the Aggrieved Employees their 30-minute off-duty meal period within the first five hours of work. As explained above, Defendants also required the Aggrieved Employees to spend time in security and Covid-19 procedures during their off-the-clock meal periods. To enjoy the use of personal items such as food brought from home, mobile phones, and other electronic devices, Defendants required the Aggrieved Employees to undergo the security procedures during their off-the-clock meal periods. Defendants did not pay the Aggrieved Employees for time spent in these meal time activities nor pay for the entirety of the interrupted 30-minute meal period as time worked. Furthermore, Defendants failed to pay premium wages for days on which they failed to provide the Aggrieved Employees with timely meal periods.

60.     At all relevant times, Defendants failed to authorize and permit the Aggrieved Employees to take ten-minute, paid, duty-free rest breaks every four hours worked or major fraction thereof. Defendants did not seek an exemption from the rest period protections of the Wage Order from the California Division of Labor Standards Enforcement. As explained above, Defendants also required Plaintiff and

the Aggrieved Employees to spend time in security and Covid-19 procedures during their off-duty rest breaks. To enjoy the use of personal items such as food brought from home, mobile phones, and other electronic devices, Defendants required Plaintiff and the Aggrieved Employees to undergo the security procedures during their off-duty rest breaks. Moreover, Defendants failed to pay the Aggrieved Employees premium wages on workdays Defendants failed to provide the Aggrieved Employees with 10-minute rest periods every four hours worked or major fraction thereof.

61.    Plaintiff is informed and believes and thereon alleges that, at all relevant times within the applicable limitations period, Defendants had a policy, practice, or a lack of a policy which resulted in Defendants not providing the Plaintiff and the Aggrieved Employees with all off-duty meal periods and rest breaks required by California law.

**B.    FAILURE TO PAY ALL WAGES EARNED FOR ALL HOURS WORKED AT THE CORRECT RATES OF PAY**

62.    Section 2 of the Wage Order defines "hours worked" as "the time during which an employee is subject to the control of an employer, and includes all the time the employee is suffered or permitted to work, whether or not required to do so."

63.    Section 3 of the Wage Order states:

(A) Daily Overtime - General Provisions

(1) The following overtime provisions are applicable to employees 18 years of age or over and to employees 16 or 17 years of age who are not required by law to attend school and are not otherwise prohibited by law from engaging in the subject work. Such employees shall not be employed more than eight (8) hours in any workday or more than 40 hours in any workweek unless the employee receives one and one-half (1 ½) times such employee's regular rate of pay for all hours worked over 40 hours in the workweek. Eight (8) hours of labor constitutes a day's

work. Employment beyond eight (8) hours in any workday or more than six (6) days in any workweek is permissible provided the employee is compensated for such overtime at not less than:

(a) One and one-half (1 ½) times the employee's regular rate of pay for all hours worked in excess of eight (8) hours up to and including 12 hours in any workday, and for the first eight (8) hours worked on the seventh (7th) consecutive day of work in a workweek.

(b) Double the employee's regular rate of pay for all hours worked in excess of 12 hours in any workday and for all hours worked in excess of eight (8) hours on the seventh (7th) consecutive day of work in a workweek.

(c) The overtime rate of compensation required to be paid to a nonexempt full-time salaried employee shall be computed by using the employee's regular hourly salary as one-fortieth (1/40) of the employee's weekly salary.

64.     Section 4 of the Wage Order requires an employer to pay non-exempt employees at least the minimum wage set forth therein for all hours worked, which consists of all hours that an employer has actual or constructive knowledge that employees are working.

65.     Labor Code section 510 states:

Eight hours of labor constitutes a day's work. Any work in excess of eight hours in one workday and any work in excess of 40 hours in any one workweek and the first eight hours worked on the seventh day of work in any one workweek shall be compensated at the rate of no less than one and one-half times the regular rate of pay for an employee. Any work in excess of 12 hours in one day shall be compensated at the rate of no less than twice the regular rate of pay for an employee. In addition, any work in excess of eight hours on any seventh day of a workweek shall be compensated at the rate of no less than twice the regular rate of pay of an employee. Nothing in this section requires an employer to combine more than one rate of overtime compensation in order to calculate

the amount to be paid to an employee for any hour of overtime work.

66.    Labor Code section 1194 invalidates any agreement between an employer and an employee to work for less than the minimum wage required under the applicable Wage Order.

67.    Labor Code section 1197 makes it unlawful for an employer to pay an employee less than the minimum wage required under the applicable Wage Order for all hours worked during a payroll period.

68.    Labor Code section 1198 makes it unlawful for an employer to employ an employee under conditions that violate the Wage Order.

69.    In conjunction, these provisions of the Labor Code require employers to pay non-exempt employees no less than their agreed-upon or statutorily mandated wage rates for all hours worked, including unrecorded hours when the employer knew or reasonably should have known that employees were working during those hours. (*see Morillion v. Royal Packing Co.* (2000) 22 Cal.4th 575, 585.)

70.    At all relevant times during the applicable limitations period, Defendants required Plaintiff and the Aggrieved Employees to spend time in security and Covid-19 procedures before entering their work areas and clocking in for purposes of payroll. Defendants did not pay Plaintiff and the Aggrieved Employees for these activities. Defendants also required Plaintiff and the Aggrieved Employees to spend time in security and Covid-19 procedures during their off-the-clock meal periods. Defendants did not pay the Aggrieved Employees for time spent in these meal time activities nor pay for the entirety of the interrupted 30-minute meal period as time worked. The unpaid activities above extended the workdays of Plaintiff and the Aggrieved Employees in excess of eight hours in a day and in excess of 40 hours in a week. However, Defendants did not compensate Plaintiff and the Aggrieved Employees at overtime premium rates of pay for such worktime. The unpaid activities above extended the workdays of the Aggrieved Employees in

excess of 12 hours in a day. However, Defendants did not compensate the Aggrieved Employees at double-time premium rates of pay for such worktime.

71.    Plaintiff is informed and believes and thereon alleges that, at all relevant times, Defendants maintained a policy and/or practice, or lack thereof, which resulted in Defendants' failure to compensate Plaintiff and the other Aggrieved Employees for all hours worked as required by California law.

**C.    <u>FAILURE TO INDEMNIFY</u>**

72.    In pertinent part, California Labor Code § 2802(a) states:

> "An employer shall indemnify his or her employee[s] for all necessary expenditures incurred by the employee in direct consequence of the discharge of his or her duties."

73.    California Labor Code § 1198 prohibits employers from employing their employees under conditions prohibited by the Wage Order.

74.    At all relevant times, Defendants required Plaintiff and the Aggrieved Employees to incur certain business expenses in the course of performing their duties. During the applicable limitations period, Defendants required the Aggrieved Employees to supply gloves, other protective gear, and PPE to perform their job duties. However, Defendants did not provide these items and did not reimburse the Aggrieved Employees for these items.

75.    Plaintiff is informed and believes and thereon alleges that, at all relevant times, Defendants maintained a policy and/or practice, or lack thereof, which resulted in Defendants' failure to indemnify Plaintiff and the Aggrieved Employees for the reasonable expenses they incurred during the course of performing their duties.

**D.    <u>FAILURE TO PROVIDE ACCURATE AND COMPLETE WRITTEN WAGE STATEMENTS</u>**

76.    Pursuant to California Labor Code § 226(a), Plaintiff and the Aggrieved Employees were entitled to receive, bi-weekly or at the time of each

18

payment of wages, an accurate itemized statement showing: a) gross wages earned; b) net wages earned; c) all applicable hourly rates in effect during the pay period; and d) the corresponding number of hours worked at each hourly rate by the employee.

77.     Pursuant to California Labor Code § 226, an employee is deemed to suffer injury if the employer fails to provide a wage statement. Also, an employee is deemed to suffer injury if the employer fails to provide accurate and complete information as required by California Labor Code § 226(a) and the employee cannot "promptly and easily determine" from the wage statement alone one or more of the following:

A.     The amount of the gross wages or net wages paid to the employee during the pay period or any of the other information required to be provided on the itemized wage statement pursuant to California Labor Code § 226(a);

B.     Which deductions the employer made from gross wages to determine the net wages paid to the employee during the pay period;

C.     The name and address of the employer and, if the employer is a farm labor contractor, as defined in subdivision (b) of Section 1682 of the California Labor Code, the name and address of the legal entity that secured the services of the employer during the pay period;

D.     The name of the employee and only the last four digits of his or her social security number or an employee identification number other than a social security number; and

E.     The number of piece-rate units earned and the piece rate.

78.     "Promptly and easily determine," as stated in California Labor Code § 226(e), means a reasonable person would be able to readily ascertain the information without reference to other documents or information.

79.     As alleged herein, at all relevant times during the applicable limitations

period, Defendants violated California Labor Code section 226 because they did not properly and accurately itemize each employee's gross wages earned, net wages earned, the total hours worked, the corresponding number of hours worked at each rate by the employee and other requirements of California Labor Code section 226. Defendants failed to state in the wage statements they issued to Plaintiff and the other Aggrieved Employees all their hours worked and wages earned, including, but not limited to, regular and overtime wages for work they performed off-the-clock. The wage statements do not state all hours worked at the correct rates of pay, all minimum wages earned, all regular wages earned, all overtime wages earned, all doubletime wages earned, all meal period premium wages earned, and all rest break premium wages earned.

80.     Defendants' failure to provide Plaintiff and the other Aggrieved Employees with accurate wage statements was knowing and intentional. Defendants had the ability to provide Plaintiff and the other Aggrieved Employees with accurate wage statements but intentionally provided wage statements that Defendants knew were not accurate.

81.     As a result of being provided with inaccurate wage statements by Defendants, Plaintiff and the other Aggrieved Employees have suffered injury. Their legal rights to receive accurate wage statements were violated and they were misled about the amount of wages they had actually earned and were owed. In addition, the absence of accurate information on their wage statements prevented immediate challenges to Defendants' unlawful pay practices, has required discovery and mathematical computations to determine the amounts of wages owed, has caused difficulty and expense in attempting to reconstruct time and pay records and/or has led to the submission of inaccurate information about wages to state and federal government agencies. Further, Plaintiff and the other Aggrieved Employees were not able to ascertain from the wage statements whether Defendants complied with their obligations under California Labor Code section 226(a).

SECOND AMENDED COLLECTIVE ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

**E.**   __UNTIMELY WAGES DURING EMPLOYMENT__

82.   Labor Code § 204 states

(a)   All wages, other than those mentioned in Section 201, 201.3, 202, 204.1, or 204.2, earned by any person in any employment are due and payable twice during each calendar month, on days designated in advance by the employer as the regular paydays. Labor performed between the 1st and 15th days, inclusive, of any calendar month shall be paid for between the 16th and the 26th day of the month during which the labor was performed, and labor performed between the 16th and the last day, inclusive, of any calendar month, shall be paid for between the 1st and 10th day of the following month. …

(b)   (1)   Notwithstanding any other provision of this section, all wages earned for labor in excess of the normal work period shall be paid no later than the payday for the next regular payroll period.

(2)   An employer is in compliance with the requirements of subdivision (a) of Section 226 relating to total hours worked by the employee, if hours worked in excess of the normal work period during the current pay period are itemized as corrections on the paystub for the next regular pay period. Any corrections set out in a subsequently issued paystub shall state the inclusive dates of the pay period for which the employer is correcting its initial report of hours worked.

(c)   However, when employees are covered by a collective bargaining agreement that provides different pay arrangements, those arrangements shall apply to the covered employees.

(d)   The requirements of this section shall be deemed satisfied by the payment of wages for weekly, biweekly, or semimonthly payroll if the wages are paid not more than seven calendar days following the close of the payroll period.

83.   Defendants failed to compensate Plaintiff and the Aggrieved

Employees for wages earned, including minimum wages, regular wages, overtime wages, doubletime wages, unprovided meal period premium wages, unprovided rest break premium wages, at the intervals stated above. As a result, Defendants failed to timely pay all earned wages due during employment within the time periods set by Labor Code section 204.

84. Defendants paid wages to employees on regular intervals. Defendants failed to pay Plaintiff on such intervals for all wages earned and all hours worked. On information and belief, Plaintiff alleges that Defendants also failed to pay the Aggrieved Employees on such intervals for all wages earned and all hours worked.

## F.   **UNTIMELY FINAL WAGES**

85. Labor Code § 201 provides that all earned and unpaid wages of an employee who is discharged are due and payable immediately at the time of discharge.

86. Labor Code § 202 provides that all earned and unpaid wages of an employee who quits after providing at least 72-hours notice before quitting are due and payable at the time of quitting and that all earned and unpaid wages of an employee who quits without providing at least 72-hours notice before quitting are due and payable within 72 hours.

87. By failing to pay earned minimum, overtime, and premium wages to Plaintiff and the Aggrieved Employees, Defendants failed to timely pay them all earned and unpaid wages in violation of Labor Code § 201 or § 202.

88. Under Labor Code § 203, if an employer willfully fails to pay without abatement or reduction, in accordance with §§ 201 and 202, the wages of an employee who is discharged or who quits, the wages of the employee shall continue as a penalty from the due date thereof at the same rate until paid or until an action therefor is commenced; but the wages shall not continue for more than 30 days.

89. Plaintiff is informed and believes that Defendants' failures to timely

pay Plaintiff and the Aggrieved Employees all of their earned and unpaid wages (described above) have been willful in that, at all relevant times, Defendants have deliberately maintained policies and practices that violate the requirements of the Labor Code and the Wage Order, even though at all relevant times, they have had the ability to comply with those legal requirements.

**G.** **FAILURE TO PROVIDE TOILET AND STORAGE FACILITIES, LOCKERS, CHANGE ROOMS, AND ACCEPTABLE WORK TEMPERATURES**

90.   California Labor Code § 2350 states:

"Every factory, workshop, mercantile or other establishment in which one or more persons are employed, shall be kept clean and free from the effluvia arising from any drain or other nuisance, and shall be provided, within reasonable access, with a sufficient number of toilet facilities for the use of the employees. When there are five or more employees who are not all of the same gender, a sufficient number of separate toilet facilities shall be provided for the use of each sex, which shall be plainly so designated.."

91.   In relevant part, § 13 of the Wage Order states:

(A) Employers shall provide suitable lockers, closets, or equivalent for the safekeeping of employees' outer clothing during working hours, and when required, for their work clothing during non-working hours. When the occupation requires a change of clothing, change rooms or equivalent space shall be provided in order that employees may change their clothing in reasonable privacy and comfort. These rooms or spaces may be adjacent to but shall be separate from toilet rooms and shall be kept clean.

NOTE: This section shall not apply to change rooms and storage facilities regulated by the Occupational Safety and Health Standards Board.

SECOND AMENDED COLLECTIVE ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

(B) Suitable resting facilities shall be provided in an area separate from the toilet rooms and shall be available to employees during work hours.

92.     In relevant part, § 15 of the Wage Order states:

(C) A temperature of not less than 68° shall be maintained in the toilet rooms, resting rooms, and change rooms during hours of use.

93.     California Labor Code § 1198 prohibits employers from employing their employees under conditions prohibited by the Wage Order.

94.     At all relevant times during the applicable limitations period, Defendants failed to provide any toilet facilities for use by the Aggrieved Employees within reasonable access. Defendants also failed to provide lockers, closets, storage facilities, and changing rooms for use by the Aggrieved Employees. Moreover, Defendants failed to provide acceptable temperatures for the work areas they expected the Aggrieved Employees to perform their job duties in.

95.     Plaintiff is informed and believes and thereon alleges that, at all relevant times, Defendants maintained a policy and/or practice, or lack thereof, which resulted in Defendants' failure to provide the Aggrieved Employees with toilet and storage facilities, lockers, change rooms, and acceptable work temperatures.

## H.     FAILURE TO MAINTAIN ACCURATE EMPLOYMENT RECORDS

96.     Labor Code § 1174 states:

Every person employing labor in this state shall:
…
(c)     Keep a record showing the names and addresses of all employees employed and the ages of all minors.
(d)     Keep, at a central location in the state or at the plants or establishments at which employees are employed, payroll records showing the hours worked daily by and the wages paid to, and the number of piece-rate units earned by and any applicable piece rate paid to,

employees employed at the respective plants or establishments. These records shall be kept in accordance with rules established for this purpose by the commission, but in any case shall be kept on file for not less than three years. An employer shall not prohibit an employee from maintaining a personal record of hours worked, or, if paid on a piece-rate basis, piece-rate units earned.

97.     Labor Code § 1174.5 states:

Any person employing labor who willfully fails to maintain the records required by subdivision (c) of Section 1174, or to allow any member of the commission or employees of the division to inspect records pursuant to subdivision (b) of Section 1174, shall be subject to a civil penalty of five hundred dollars ($500).

98.     Section 7 of the Wage Order states,

(a)     Every employer shall keep accurate information with respect to each employee including the following:
1.     Full name, home address, occupation, and social security number.
2.     Birth date, if under 18 years, and designation as a minor.
3.     Time records showing when the employee begins and ends each work period. Meal periods, split shift intervals and total daily hours worked shall also be recorded. Meal periods during which operations cease and authorized rest periods need not be recorded.
4.     Total wages paid each payroll period, including value of board, lodging, or other compensation actually furnished to the employee.
5.     Total hours worked in the payroll period and applicable rates of pay. This information shall be made readily available to the employee upon reasonable request.
6.     When a piece rate or incentive plan is in operation, piece rates or an explanation of the incentive plan formula shall be provided to employees. An accurate production record shall be maintained by the employer.

99.     Labor Code § 1198 prohibits employers from employing their employees under conditions prohibited by the Wage Order.

100. On information and belief, Defendants have willfully failed to maintain the records required by § 1174 and Wage Order, including, but not limited to, the total premium wages earned for missed meal and rest periods, and records pertaining to all unpaid hours worked by Plaintiff and the Aggrieved Employees.

# I.     <u>CIVIL PENALTIES SOUGHT</u>

101. During the applicable time period, Defendants violated California Labor Code §§ 201, 201.3, 202, 203, 204, 226, 226.7, 510, 512, 1174, 1194, 1197, 1198, 2350, and 2802.

102. California Labor Code §§ 2699(a) and (g) authorize an aggrieved employee, on behalf of themselves and other current or former employees, to bring a civil action to recover civil penalties pursuant to the procedures specified in California Labor Code § 2699.3.

103. Pursuant to California Labor Code §§ 2699(a) and (f), Plaintiff and the Aggrieved Employees are entitled to recover civil penalties for each of the Defendants' violations of California Labor Code §§ 201, 201.3, 202, 203, 204, 226, 226.7, 510, 512, 1174, 1194, 1197, 1198, 2350, and 2802 during the applicable limitations period in the following amounts:

A. For violations of California Labor Code §§ 201.3 and 204, one hundred dollars ($100.00) for each aggrieved employee for each initial violation and two hundred dollars ($200.00) for each aggrieved employee for each subsequent, willful or intentional violation (penalty amounts established by California Labor Code § 210).

B. For violations of California Labor Code § 226(a), two hundred fifty dollars ($250.00) per employee for initial violation and one thousand dollars ($1,000.00) per employee for each subsequent violation (penalty amounts established by California Labor Code § 226.3).

C. For violations of California Labor Code §§ 510 and 512, fifty dollars ($50.00) for each aggrieved employee for each initial violation for pay period for

which the employee was underpaid and one hundred dollars ($100.00) for each underpaid employee for each pay period for which the employee was underpaid (penalty amounts established by California Labor Code § 558).

D.      For violations of California Labor Code § 1174, five hundred dollars ($500.00) for each Aggrieved Employee for each initial violation (penalty amounts established by Labor Code § 1174.5).

E.      For violations of California Labor Code § 1197, one hundred dollars ($100.00) for each Aggrieved Employee for each initial and intentional violation and two hundred fifty dollars ($250.00) for each Aggrieved Employee for each subsequent violation, per pay period (regardless of whether the initial violations were intentionally committed) (penalty amounts established by California Labor Code § 1197.1).

F.      For violations of California Labor Code §§ 201, 202, 203, 226.7, 1194, 1198, 2350, and 2802, one hundred dollars ($100.00) for each aggrieved employee per pay period for each initial violation and two hundred dollars ($200.00) for each aggrieved employee per pay period for each subsequent violation (penalty amounts established by California Labor Code § 2699(f)(2)).

## **PRAYER FOR RELIEF**

104.   Plaintiff, on behalf of himself and the Aggrieved Employees, prays for relief as follows:

A.      Civil penalties;

B.      Costs of suit;

C.      Reasonable attorneys' fees; and

D.      Such other relief as the Court deems just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiff, on behalf of himself and all other Aggrieved Employees, hereby demands a jury trial on all issues so triable.

1

Dated: April 7, 2022                    Respectfully submitted,

2

                                        *s/ Camille Fundora Rodriguez*
3                                       Shanon J. Carson* (PA 85957)
                                        scarson@bm.net
4                                       Camille Fundora Rodriguez*
                                        (PA 312533, NJ 01764-2011)
5                                       crodriguez@bm.net
                                        **BERGER MONTAGUE PC**
6                                       1818 Market Street, Suite 3600
7                                       Philadelphia, PA 19103
                                        Telephone: (215) 875-3000
8                                       Facsimile: (215) 875-4604
9                                       * admitted *pro hac vice*
10

11

12                                      Alexandra K. Piazza (SBN 341678)
                                        apiazza@bm.net
13                                      Sophia M. Rios (SBN 305801)
                                        srios@bm.net
14                                      **BERGER MONTAGUE PC**
15                                      401 B Street, Suite 2000
                                        San Diego, CA 92101
16                                      Telephone: (619) 489-0300
17                                      Facsimile: (215) 875-4604
18

19                                      David G. Spivak (SBN 179684)
                                        david@spivaklaw.com
20                                      Caroline Tahmassian (SBN 285680)
21                                      caroline@spivaklaw.com
                                        **THE SPIVAK LAW FIRM**
22                                      8605 Santa Monica Blvd., PMB 42554
23                                      West Hollywood, CA 90069
                                        Telephone: (213) 725-9094
24                                      Facsimile: (213) 634-2485
25

26                                      Walter L. Haines (SBN 71075)
27                                      walter@uelglaw.com
                                        **UNITED EMPLOYEES LAW GROUP**
28                                      4276 Katella Ave., Suite 301

28

SECOND AMENDED COLLECTIVE ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

Los Alamitos CA 90720
Telephone: (562) 256-1047
Facsimile: (562) 256-1006

Attorneys for Plaintiff

SECOND AMENDED COLLECTIVE ACTION COMPLAINT AND DEMAND FOR JURY TRIAL