UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JEFFREY PIPICH, as an "aggrieved employee" on behalf of all other similarly situated "aggrieved employees" under the Labor Code Private Attorney General Act of 2004,<br><br>Plaintiff,<br><br>v.<br><br>O'REILLY AUTO ENTERPRISES, LLC, a Delaware limited liability company; EXPRESS SERVICES, INC., a Colorado corporation d/b/a Express Employment Professionals; and DOES 2-50, inclusive,<br><br>Defendants. | Case No.:  3:21-cv-01120-AHG<br><br>**ORDER GRANTING MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>**[ECF No. 89]** |

Before the Court is Plaintiffs' Motion for Preliminary Approval of Class Action Settlement. ECF No. 89. Defendants O'Reilly Auto Enterprises, LLC ("O'Reilly") and Express Services, Inc. ("Express") each filed a Notice of Non-Opposition to the Motion on May 28 and May 31, 2024, respectively. ECF Nos. 91, 93. For the reasons set forth below, the Court **GRANTS** the unopposed Motion for Preliminary Approval of Class Action Settlement.

## I.   BACKGROUND

On June 16, 2021, Plaintiff filed his initial complaint against Defendant O'Reilly in this Court, styling his claims as a collective action under the Fair Labor Standards Act ("FLSA"), and alleging that O'Reilly had failed to provide proper payment of all wages to Plaintiff and other employees who were putative collective members by requiring them to undergo COVID-19 screenings and security inspections each day without pay, including during meal breaks, rest breaks, and off-the-clock pre-shift and post-shift time. ECF No. 1. After the Court found that Plaintiff failed to state a cognizable legal claim under the FLSA and dismissed the action without prejudice (ECF No. 15), Plaintiff filed a Second Amended Complaint against O'Reilly on April 7, 2022, bringing claims under the Private Attorneys General Act ("PAGA") of the California Labor Code based on the same underlying allegations. ECF No. 23. After discovery was underway, in September 2022, the parties requested and were granted a stay of the case for approximately six months pending private mediation in February 2023, which ultimately proved unsuccessful. ECF Nos. 32, 33, 38. The stay was lifted on March 7, 2023. ECF No. 39. On April 14, 2023, upon the order of the Court, Plaintiff amended the complaint once more to properly allege subject-matter jurisdiction. ECF No. 45.

On February 21, 2024, the parties settled the case during a Mandatory Settlement Conference conducted by Magistrate Judge Jill L. Burkhardt. ECF No. 70. The settlement was a global settlement including this matter and three related matters involving Defendant O'Reilly: (1) *Eve Storm v. O'Reilly Auto Enterprises, et al.*, Riverside Superior Court, Case No. CVRI2104730; (2) *Eve Storm v. O'Reilly Auto Enterprises, et al.*, Case No. 5:23-cv-

2

00597-FLA-MAR (C.D. Cal.); and (3) *Gary Cull, et al. v. O'Reilly Auto Enterprises, LLC*, Case No. 5:23-cv-01623-FLA-MAR (C.D. Cal.). *See* ECF No. 82 at 4. The parties agreed to settle these cases on a class-wide basis, and the federal matters in the United States District Court for the Central District of California have since been dismissed without prejudice. ECF No. 89-1 at 21.[1] Pursuant to the terms of the settlement and with leave of Court, Plaintiff filed the operative Fourth Amended Complaint ("4AC") on May 21, 2024. ECF No. 86. The 4AC added Plaintiffs Eve Storm, Gary Cull, Melissa Kolakowski, and Daniel Lopez to the case as class representatives, added Express (a named defendant in the *Storm* cases) as a Defendant, and added certain class allegations and causes of action. *See* ECF No. 82 at 5; ECF No. 86. Specifically, in the 4AC, Plaintiffs bring class-wide claims in the 4AC for (1) failure to provide meal periods under California Labor Code §§ 226.7, 512, and 1198; (2) failure to authorize and permit rest breaks under California Labor Code §§ 226.7 and 1198; (3) failure to pay all wages earned at the correct rates of pay under California Labor Code §§ 223, 510, 1194, 1197, 1198; (4) failure to indemnify under California Labor Code §§ 1198 and 2802; (5) failure to issue accurate and complete wage statements under California Labor Code § 226; (6) willful failure to timely pay final wages under California Labor Code §§ 201-203; and (7) unfair competition under California Business and Professional Code §§ 17200, *et seq. Id.* ¶¶ 65-137. In addition, Plaintiffs bring an eighth cause of action seeking civil penalties under PAGA on behalf of the "Aggrieved Employees," defined as all members of the Class employed by Defendants during the period beginning May 11, 2020 and ending on the date that final judgment is entered in this action. *Id.* ¶¶ 138-164.

The parties have consented to the undersigned Magistrate Judge to preside over the case and review the proposed class action settlement for court approval. ECF No. 77.

---

[1] Plaintiff Eve Storm's PAGA action in the Riverside County Superior Court remains pending, but as part of the settlement agreement, Plaintiffs agree to dismiss that case without prejudice within 14 days after final approval of the settlement. ECF No. 89-2 at 72.

Therefore, the Court will review the settlement agreement to determine the propriety of certifying a settlement class and whether the proposed settlement is fair and reasonable.

## II.   TERMS OF THE SETTLEMENT AGREEMENT

The parties have submitted their proposed Class Action and PAGA Settlement Agreement and Class Notice ("Settlement Agreement") for the Court's review. ECF No. 89-2. The Settlement Agreement contains the following key terms:

- The Settlement Class is defined as all individuals employed by one or both Defendants as non-exempt, hourly employees, either directly or indirectly through staffing agencies, and who worked at one of Defendant O'Reilly Auto Enterprises, LLC's distribution centers in California at any time during the Class Period of July 5, 2018 to May 22, 2024. The "Aggrieved Employees" are all class members who were employed by one or both Defendants in California and classified as non-exempt, hourly employees, either directly or indirectly through staffing agencies, at one of Defendant O'Reilly Auto Enterprises, LLC's distribution centers in California at any time during the PAGA Period of May 11, 2020 to May 22, 2024. The Settlement Class thus includes all Aggrieved Employees.

- Defendant O'Reilly will pay $4,100,000.00 (the "Gross Settlement Amount"), in addition to any and all employer payroll taxes owed on the Wage Portions[2] of the Individual Class Payments, to settle the claims of the Settlement Class. The Administrator will disburse the entire Gross Settlement Amount without asking or requiring Participating Class Members or Aggrieved Employees to submit any claim as a condition of payment. None of the Gross Settlement Amount will revert to Defendants.

- The Administrator will make and deduct the following payments from the Gross Settlement Amount:

  o Class Representative Service Payments to the Class Representatives totaling

---

[2] This term is defined below.

not more than $55,000 (in addition to any Individual Class Payment and any Individual PAGA Payment each Class Representative is entitled to received as a Participating Class Member), divided among the Class Representatives as follows:

- ▪ $22,500 to Jeffrey Pipich;
- ▪ $10,000 to Eve Storm;
- ▪ $7,500 to Gary Cull;
- ▪ $7,500 to Melissa Kolakowski; and
- ▪ $7,500 to Daniel Lopez.
- ▪ If the Court approves Class Representative Service Payments for less than the amount requested, the Administrator will retain the remainder in the Net Settlement Amount. Plaintiffs and the Class Representatives shall not have the right to revoke or cancel the Settlement Agreement if the Court does not approve any or all of the requested Class Representative Service Payments.

o Attorney fee payments to Class Counsel of not more than one-third of the Gross Settlement Amount, which is estimated to be $1,366,666.67, and a Class Counsel Litigation Expenses Payment of not more than $120,000. If the Court approves a Class Counsel fees payment and/or a litigation expenses payment for less than the amounts requested, the Administrator will retain the remainder in the Net Settlement Amount. The Settlement Agreement is not contingent upon the Court's decision to award Class Counsel any particular amount, or any amount, for fees or litigation expenses.

o An Administration Expenses Payment to the Administrator not to exceed $40,000, except for a showing of good cause and as approved by the Court. If the Administration Expenses are less than $40,000 or the Court approves payment for less than $40,000, the Administrator will retain the remainder in the Net Settlement Amount.

- An Individual Class Payment to each Participating Class Member, which will be calculated by (a) dividing the Net Settlement Amount by the total number of workweeks worked by all Participating Class Members during the Class Period; and (b) multiplying the result by each Participating Class Member's workweeks.

  - Ten percent of each Participating Class Member's Individual Class Payment will be allocated to settlement of wage claims ("Wage Portion"), while the remaining ninety percent of each participating Class Member's Individual Class Payment will be allocated to settlement of claims for interest and penalties ("Non-Wage Portion").

  - Non-Participating Class Members will not receive any Individual Class Payments. The Administrator will retain amounts equal to the Individual Class Payments in the Net Settlement Amount for a pro rata distribution to Participating Class Members.

- PAGA Penalties in the amount of $410,000 to be paid from the Gross Settlement Amount, with 75% allocated to the LWDA PAGA Payment and 25% allocated to the Individual PAGA Payments.

  - An Individual PAGA Payment is each Aggrieved Employee's pro rata share of 25% of the PAGA Penalties, calculated according to the number of PAGA workweeks worked during the PAGA Period. The Administrator will calculate each Individual PAGA Payment by (a) dividing the amount of the Aggrieved Employees' 25% share of PAGA Penalties ($102,500) by the total number of PAGA workweeks worked by all Aggrieved Employees during the PAGA Period and (b) multiplying the result by each Aggrieved Employee's PAGA workweeks.

- Defendant O'Reilly shall fully fund the Gross Settlement Amount, as well as the amounts necessary to fully pay Defendants' share of payroll taxes, by transmitting

the funds to the Administrator no later than fourteen days after the Effective Date of settlement, which is defined as the date when the Court's Judgment on its Order Granting Final Approval of the Settlement becomes final. Within fourteen days after Defendant O'Reilly funds the Gross Settlement Amount, the Administrator will mail checks for all seven categories of payments outlined above.

- Effective on the date when Defendant O'Reilly fully funds the Gross Settlement Amount and funds all employer payroll taxes owed on the Wage Portion of the Individual Class Payments, Plaintiffs, Class Members, and Class Counsel will release all claims against the Released Parties, as defined in the Settlement Agreement. *See* Settlement Agreement ¶ 6.

## III. LEGAL STANDARD

Under Rule 23 of the Federal Rules of Civil Procedure, parties may not settle claims on a class-wide basis without court approval. Fed. R. Civ. P. 23(e). Rule 23(e) sets forth the procedures that courts must apply to a proposed settlement of class claims. These procedures include: (1) notice to the class; (2) if the settlement proposal would bind class members, approval by the Court only after a hearing and only on finding that it is fair, reasonable, and adequate based on certain specific considerations; (3) identification of any agreement made by the parties in connection with the settlement proposal; (4) if the class action was previously certified under 23(b)(3), a new opportunity for class members to request exclusion; and (5) the opportunity for class members to object to the proposed settlement.

Where, as here, the parties reach a settlement agreement prior to class certification, "courts must peruse the proposed compromise to ratify both the propriety of the certification and the fairness of the settlement." *Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003). In evaluating the propriety of certification for purposes of class-wide settlement, the Court must first assess whether a class exists. *Id.* Second, the Court must "carefully consider whether the proposed settlement is fundamentally fair, adequate, and reasonable, recognizing that it is the settlement taken as a whole, rather than the individual

7

component parts, that must be examined for overall fairness[.]" *Id.* (internal quotations and citation omitted).

As set forth in Rule 23(e), the Court's assessment of whether the proposed settlement is fair, adequate, and reasonable requires the Court to consider whether: (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account (i) the costs, risks, and delay of trial and appeal, (ii) the effectiveness of any proposed method of distributing relief to the class, (iii) the terms of any proposed award of attorney fees, and (iv) the terms of the settlement agreement; and (D) the proposed settlement treats class members equitably relative to each other. Fed. R. Civ. P. 23(e)(2)(A)-(D). *See also In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007) ("As noted in the Manual for Complex Litigation[,] 'if the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval, then the court should direct that the notice be given to the class members of a formal fairness hearing.'") (citation omitted). Importantly, for the Court to reach a determination that preliminary approval is appropriate, "the settlement need only be *potentially* fair, as the Court will make a final determination of its adequacy at the hearing on Final Approval, after such time as any party has had a chance to object and/or opt out." *Acosta v. Trans Union, LLC*, 243 F.R.D. 377, 386 (C.D. Cal. 2007).

If the Court preliminarily certifies the class and finds the proposed settlement fair, adequate, and reasonable, it then appoints a class representative or representatives and class counsel.

## IV.  CONDITIONAL CLASS CERTIFICATION UNDER RULE 23

As discussed above, the first step in the Court's analysis is to evaluate the propriety of class certification for purposes of class-wide settlement. Plaintiffs seek provisional certification of the Settlement Class under Rule 23(b)(3), with the following Class

Definition:

> [A]ll individuals employed by one or both Defendants as hourly, non-exempt employees, either directly or indirectly through staffing agencies, and who worked at one of Defendant O'Reilly Auto Enterprises, LLC's distribution centers in California at any time during the Class Period.

Settlement Agreement ¶ 1.5. The Settlement Agreement further defines the Class Period as the period from July 5, 2018 to May 22, 2024. *Id.* ¶ 1.12.

To obtain class certification, Plaintiffs must provide facts in support of the four requirements of Rule 23(a): numerosity, commonality, typicality, and adequacy of representation. Fed. R. Civ. P. 23(a). As the party seeking class certification, Plaintiffs bear the burden of demonstrating that their proposed class meets each of these four requirements in addition to at least one of the requirements of Rule 23(b). *Zinser v. Accufix Rsch. Inst., Inc.*, 253 F.3d 1180, 1186 (9th Cir. 2001). Rule 23(b) is satisfied if: (1) prosecuting separate actions by individual class members would create a risk of either inconsistent adjudications with respect to individual class members, or a risk of adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of other non-party class members or would substantially impair or impede their ability to protect their interests; (2) the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive or declaratory relief is appropriate for the class as a whole; or (3) questions of law or fact common to class members predominate over any questions affecting only individual members, and a class action is superior to other available methods of adjudication. Fed. R. Civ. P. 23(b)(1)-(3). *See also Vinole v. Countrywide Home Loans, Inc.*, 571 F.3d 935, 944 (9th Cir. 2009).

The Court will address each of these requirements in turn.

### a. Numerosity

To determine whether the numerosity requirement is met, the Court should look to the size of the proposed class. Many courts have held that numerosity is presumed to be met if a proposed class has forty or more members. *See, e.g.*, *Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995) ("[N]umerosity is presumed at a level of 40

9

members"); *Ikonen v. Hartz Mountain Corp.*, 122 F.R.D. 258, 262 (S.D. Cal. 1988) ("As a general rule, classes of 20 are too small, classes of 20–40 may or may not be big enough depending on the circumstances of each case, and classes of 40 or more are numerous enough.") (citation omitted). That said, the numerosity requirement "requires examination of the specific facts of each case and imposes no absolute limitations." *Gen. Tel. Co. of the Nw., Inc. v. EEOC*, 446 U.S. 318, 330 (1980). "Although the absolute number of class members is not the sole determining factor, where a class is large in numbers, joinder will usually be impracticable." *Jordan v. Los Angeles Cnty.*, 669 F.2d 1311, 1319 (1982), *vacated on other grounds*, 459 U.S. 810 (1982). *Accord A. B. v. Hawaii State Dep't of Educ.*, 30 F.4th 828, 835 (9th Cir. 2022). The term "impracticable" does not mean "impossible," and only refers to "the difficulty or inconvenience of joining all members of the class." *Harris v. Palm Springs Alpine Ests., Inc.*, 329 F.2d 909, 914 (9th Cir. 1964) (quoting *Advertising Specialty Nat'l Ass'n v. FTC*, 238 F.2d 108, 119 (1st Cir. 1956)).

Here, the proposed settlement class includes an estimated 5,750 members. ECF No. 89-1 at 39. Plaintiffs also maintain that the size of the settlement class is ascertainable because its members may be identified by reference to Defendants' records, and Defendants have agreed to share the relevant information from their records to facilitate the settlement process. *Id.*

The Court agrees that the estimated size of the proposed settlement class would make joinder impracticable in this case. Therefore, the proposed settlement class meets the numerosity requirement.

### b. Commonality

The commonality requirement of Rule 23(a)(2) requires that questions of law or fact be common to the class. "Commonality is construed permissively and is 'less rigorous than the companion requirements of Rule 23(b)(3).'" *Fine v. Kansas City Life Ins. Co.*, No. 2:22-cv-2071, 2023 WL 7393027, at *3 (C.D. Cal. Nov. 6, 2023) (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998), *overruled on other grounds by Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011)). There is no requirement that all questions

10

of law and fact be common to satisfy the rule; the existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class. *Hanlon*, 150 F.3d at 1019.

Here, the parties agree that for purposes of the settlement, the claims of the putative class members all stem from the same sources. ECF No. 89-1 at 40. All members of the proposed settlement class were subject to the same or similar operations and employment policies, practices, and procedures. *Id.* Plaintiffs assert that common questions include: (1) whether Defendants failed to pay all wages earned to class members for all hours worked at the correct rates of pay; (2) whether Defendants failed to provide class members with all meal and rest periods required under California law; (3) whether Defendants failed to pay class members one additional hour of pay on workdays when they failed to provide one or more meal or rest periods as required by law; (4) whether Defendants failed to indemnify the class for all necessary business expenditures incurred during the discharge of their duties; (5) whether Defendants knowingly and intentionally failed to provide class members with accurate wage statements; (6) whether Defendants willfully failed to provide the class with timely final wages; and (7) whether Defendants engaged in unfair competition in violation of Cal. Bus. and Prof. Code § 17200 with respect to members of the class. *Id.* at 40-41.

The Ninth Circuit has held that the commonality requirement is satisfied when the lawsuit challenges a system-wide practice or policy that affects all of the putative class members, even where there are factual differences among the individual litigants. *See Armstrong v. Davis*, 275 F.3d 849, 868 (9th Cir. 2001), *abrogated on other grounds by Johnson v. California*, 543 U.S. 499 (2005)) (finding the commonality requirement met where all members of a putative class of disabled prisoner plaintiffs challenged the same parole-related policies and practices implemented by the Board of Prison Terms under the ADA, despite having different disabilities); *LaDuke v. Nelson*, 762 F.2d 1318, 1332 (9th Cir. 1985) (finding a "question of law or fact common to the class" on the basis that all putative class members challenged the constitutionality of the same INS practice).

Similarly, here, all putative members of the settlement class are employees of Defendants who were subject to the same or similar employment policies, practices, and procedures being challenged in the operative complaint. Therefore, the Court agrees that the commonality requirement is met despite the fact that class members may have been employed in different positions and at different O'Reilly distribution center locations in California.

### c.  Typicality

The purpose of the typicality requirement is "to assure that the interest of the named representative aligns with the interests of the class." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992). Although the commonality and typicality requirements often merge into one another, there is some distinction between the two. As opposed to commonality, which requires common questions of law or fact to be shared among the claims of the putative class members, typicality is satisfied where the claims of the class representatives are typical of those of the class, and "when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Armstrong v. Davis*, 275 F.3d 849, 868 (9th Cir. 2001) (quoting *Marisol v. Giuliani*, 126 F.3d 372, 376 (2nd Cir. 1997)). In other words, the claims of the putative class representatives and the claims of the putative class must arise from the same events or course of conduct and must be based on the same legal theory. *In re United Energy Corp. Solar Power Modules Tax Shelter Invs. Sec. Litig.*, 122 F.R.D. 251, 256 (C.D. Cal. 1988). Class certification is inappropriate "where a putative class representative is subject to unique defenses which threaten to become the focus of the litigation." *Hanon*, 976 F.2d at 508 (quoting *Gary Plastic Packaging Corp. v. Merrill Lynch*, 903 F.2d 176, 180 (2d. Cir. 1990)). "The crux of both [the commonality and typicality] requirements is to ensure that maintenance of a class action is economical and that the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Armstrong*, 275 F.3d at 868 (quoting *Marisol*, 126 F.3d at 376) (internal quotations and alteration

1    omitted).

2           Here, all named Plaintiffs assert that they were subject to the same relevant policies

3    and procedures governing their compensation, hours of work, and meal and rest periods as

4    were absent members of the putative settlement class. ECF No. 89-1 at 41. Their claims

5    arise from the same underlying facts and rest on the same legal theories as the claims of

6    absent class members. Moreover, nothing in the operative complaint suggests that any

7    claims of the named Plaintiffs would be subject to unique defenses that would not apply to

8    the claims of absent class members. Therefore, the Court agrees that the typicality

9    requirement is met.

10                       **d.  Adequate Representation**

11          Rule 23(a)(4) requires that class representatives "fairly and adequately protect the

12   interests of the class." To determine whether this requirement is satisfied, the Court must

13   resolve two questions: "(1): do the named plaintiffs and their counsel have any conflicts of

14   interest with other class members and (2) will the named plaintiffs and their counsel

15   prosecute the action vigorously on behalf of the class?" *Anders v. Cal. State Univ., Fresno*,

16   No. 23-15265, 2024 WL 177332, at *1 (9th Cir. Jan. 17, 2024) (quoting *Hanlon*, 150 F.3d

17   at 1020). This inquiry is also relevant to the Court's inquiry into whether a proposed class

18   settlement is fair under Rule 23(e). *Kim v. Allison*, 87 F.4th 994, 1000 (9th Cir. 2023); *see*

19   *also* Fed. R. Civ. P. 23(e)(2)(A). With respect to the first question, "[o]nly conflicts that

20   are fundamental to the suit and that go to the heart of the litigation prevent a plaintiff from

21   meeting the Rule 23(a)(4) adequacy requirement." *In re Online DVD-Rental Antitrust*

22   *Litig.*, 779 F.3d 934, 942 (9th Cir. 2015) (quoting 1 William B. Rubenstein et al., *Newberg*

23   *on Class Actions* § 3.58 (5th ed. 2011)). A conflict is fundamental when it goes to the

24   specific issues in controversy. *Id.* As to the second question, "the relevant inquiry is

25   whether the plaintiffs maintain a sufficient interest in, and nexus with, the class so as to

26   ensure vigorous representation." *Id.* (quoting *Roper v. Consurve, Inc.*, 578 F.2d 1106, 1112

27   (5th Cir. 1978)).

28          In support of the Motion for Preliminary Approval, Plaintiffs assert that they and the

putative members of the settlement class "have strong and co-extensive interests in this litigation because they all worked for Defendants during the relevant time period, allegedly suffered the same alleged injuries from the same alleged court of conduct, and there is no evidence of any conflict of interest between Plaintiffs and the class members." ECF No. 89-1 at 42. Although the Court finds that some of these points go toward questions of commonality and typicality rather than adequacy, the Court agrees that there is no evidence of any conflict of interest between Plaintiffs and the class members, at least not on the record before it so far. Although the named Plaintiffs will receive service awards under the proposed Settlement Agreement, service payments to class representatives "are fairly typical in class action cases" and "do not, by themselves, create an impermissible conflict between class members and their representatives." *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d at 942. Moreover, as in the *DVD-Rental* case, the proposed Settlement Agreement "provide[s] no guarantee that the class representatives would receive incentive payments, leaving that decision to later discretion of the district court[,]" and even goes further to expressly provide that the class representatives shall not have the right to revoke or cancel the Settlement Agreement if the Court does not approve any or all of the requested service payments. *See id.*; *see also* Settlement Agreement ¶ 3.2.1.

There is also, at present, no evidence of any conflicts of interest between class counsel and the absent class members, and Plaintiffs' counsel expressly disclaim knowledge of any such conflicts, both in declarations submitted to the Court and in the Settlement Agreement itself. *See* Settlement Agreement ¶ 27; ECF No. 89-2, Spivak Decl. ¶ 42; ECF No. 89-3, Haines Decl. ¶ 3; ECF No. 89-4, Piazza Decl. ¶ 3.

With respect to the second question regarding whether the named Plaintiffs and their counsel will prosecute the action vigorously on behalf of the class, "[a]lthough there are no fixed standards by which 'vigor' can be assayed, considerations include competency of counsel and, in the context of a settlement-only class, an assessment of the rationale for not pursuing further litigation." *Hanlon*, 150 F.3d at 1021. Here, Plaintiffs' counsel David Spivak, Walter Haines, and Alexandra Piazza have provided declarations to the Court to

show that they have significant experience in employment litigation generally, and wage and hour and employment-related class action litigation specifically. *See* Spivak Decl. ¶¶ 43-50; Haines Decl. ¶¶ 2, 4; Piazza Decl. ¶¶ 4-9. They also affirmatively state that they will vigorously represent the interests of the class. *See* Spivak Decl. ¶ 42; Haines Decl. ¶ 3; Piazza Decl. ¶ 3. The record reflects that the parties have engaged in settlement negotiations numerous times over the three years that the case has been pending, including both court-facilitated and private mediation. *See* ECF Nos. 29, 38, 66, 70. These numerous attempts at settlement over several years show that Plaintiffs and their counsel did not prioritize obtaining a quick settlement for themselves over the interests of the class as a whole.

Further, Plaintiffs have explained in thorough detail their rationale for settling the case rather than pursuing further litigation. Specifically, as outlined in the Motion for Preliminary Approval, Plaintiffs were concerned about the possibility that Defendant would launch a "pick off" settlement campaign to pursue individual release agreements from class members, thereby narrowing the size of the Settlement Class until it is no longer numerous enough for class certification and reducing the claim value in settlement negotiations. ECF No. 89-1 at 58. Plaintiffs' counsel also outlines specific risks of continued litigation, including but not limited to risks associated with (1) arbitration agreements between Defendant Express and the temp worker class members; (2) the effect of Defendants' written policies prohibiting off-the-clock work on Plaintiffs' unpaid wages claim, as well as the difficulty of proving that claim; (3) evidence tending to weaken Plaintiffs' meal period and rest break claims, including that employees often chose to spend their meal periods and rest breaks in break rooms at the distribution centers and thus did not need to pass through security screening at the beginning and end of meal periods or breaks, as well as written policies that are consistent with the relevant Industrial Welfare Commission Wage Order; (4) the effect of the fact that the wage statements issued by Defendants comply with the requirements of Labor Code § 226 on the wage statement penalty claims, although Plaintiffs dispute whether the statements are accurate; (5) the

effect of the fact that Plaintiffs' pay stubs show sick leave use and accrual on the sick leave claims; (6) whether Plaintiffs would be able to prove willful behavior to support the waiting time penalties claims; (7) defenses to the Labor Code claims underlying Plaintiffs' PAGA allegations and the difficulty of proving that Defendants acted intentionally, knowingly, and willfully in violating the rights of class members under the Labor Code; (8) the uncertainty that a Court would "stack" civil penalties under all 20 relevant sections of the Labor Code for the same violation for the same employee for the same pay period, and the unlikelihood that Plaintiffs would recover any significant PAGA penalty award in a contested proceeding; (9) other evidence tending to weaken Plaintiffs' PAGA claims under Labor Code §§ 2102 and 2103 and their claims that certain areas within Defendants' facilities were inadequate and temperatures either too hot or too cold. *See id.* at 50-58. Thus, Plaintiffs agreed to a settlement amount reflecting counsel's estimate of the total amount of damages, monetary penalties, or other relief that the class could reasonably expect to be awarded at trial, taking into account the likelihood of prevailing and these other attendant risks. *Id.* at 58.

Based on these considerations, the Court finds that Plaintiffs have met their burden to establish that all four requirements of Rule 23(a) are satisfied.

### e. Predominance

As noted above, Plaintiffs must not only show that the requirements of Rule 23(a) are met to obtain class certification, but they must also show that at least one subsection of Rule 23(b) is satisfied. Here, the parties agree that certification is appropriate under Rule 23(b)(3)—that is, that questions of law or fact common to class members predominate over any questions affecting only individual members, and a class action is superior to other available methods for fairly and efficient adjudicating the controversy. Fed. R. Civ. P. 23(b)(3); ECF No. 89-1 at 38. The Rule 23(b)(3) predominance inquiry "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997). The matters pertinent to the Court's analysis of whether the predominance requirement of Rule 23(b)(3) is satisfied

16

include: (A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in this particular forum; and (D) the likely difficulties in managing a class action. Fed. R. Civ. P. 23(b)(3)(A)-(D).

As noted in the Court's discussion of the commonality requirement, the legal and factual issues underlying this action are common to all members of the proposed settlement class, in that all members were subject to the same employment policies, practices, and procedures of Defendants. However, the predominance criterion "is far more demanding" than the commonality requirement. *Amchem*, 521 U.S. at 624. The Court must also consider whether there are any factual or legal questions that differ among class members that might undermine class cohesion, and "caution" is warranted "when individual stakes are high and disparities among class members great." *Id.* at 624-25.

Here, the record does not give rise to any concern that there are disparities among the putative members of the settlement class to such an extent that common questions of law and fact among class members no longer predominate over questions affecting only individual members, or that pursuing litigation on an individual basis would be superior to a class action. Given that the putative settlement class has approximately 5,750 members, a class action is a superior method of adjudication to thousands of individual lawsuits, particularly where the claims of most of the class members would be too small to justify the cost and risk of litigation. *See* Spivak Decl. ¶ 89. The average class member's hourly wage is $19.07, and the average estimated individual class payment to class members is equivalent to approximately 19.18 hours of unpaid wages, or $365.80. *Id.* ¶ 96. For those class members who are also Aggrieved Employees under PAGA, the average individual PAGA payment will be only $23.77, and the highest possible individual PAGA payment will be $136.72. *Id.* ¶ 98. Therefore, it would not be practical or economically feasible for the average class member to pursue his or her claims on an individual basis. These barriers to individual litigation far outweigh any difficulties in managing a class action, particularly

where, as here, the members of the settlement class are readily ascertainable from Defendants' records, the parties have already reached a tentative settlement on a class-wide basis, and Plaintiffs have a clear plan in place to provide appropriate notice of the settlement and an opportunity to object and/or to opt out of the settlement to all class members.

Moreover, the proposed settlement is structured in such a way that each class member will receive a *pro rata* distribution of the settlement proceeds proportionate to the number of workweeks he or she worked for Defendants during the class period, compared to the total estimated number of 289,537 workweeks worked by all class members during the class period. As explained by Plaintiffs' counsel, "this method compensates Class Members based on the extent of their potential injuries, in that Class Members who worked for Defendants longer would have been subject to more alleged violations." Spivak Decl. ¶ 97. Thus, although differing numbers of workweeks among class members is a relevant disparity, the same disparity would affect the potential recoveries of individual class members if they were to bring separate individual actions against Defendants instead.

Other potential disparities the Court has considered are that members of the settlement class worked at different O'Reilly distribution centers in California and held different positions. However, under the class definition, all class members worked hourly positions, and there is nothing in the record to indicate that any of these positions earned much higher pay than the other positions. Additionally, the named Plaintiffs each held different positions to one another—Pipich worked as a driver and warehouse worker, Storm worked as a picker, Cull worked as a materials handler, Kolakowski worked as a materials handler and custodian, Lopez worked as a materials handler and maintenance specialist. *Id.* ¶¶ 30-34. Therefore, Plaintiffs collectively represent a wide range of workers who fit within the class definition. Plaintiffs also allege that the same or similar relevant employment policies related to their claims of wage and labor violations were in place at all of the distribution centers covered by the class definition. *See* 4AC ¶¶ 15-18, 20-21, 24, 28, 36-64. Therefore, the Court finds these disparities do not defeat a finding of

predominance.

Finally, the Court has considered "the extent and nature of any litigation concerning the controversy already begun by or against class members" under 23(b)(3)(B). Plaintiffs' counsel's inquiries into whether any similar actions against Defendants exist have uncovered only two similar cases bringing class and PAGA claims for unpaid minimum wages, overtime wages, meal and rest period violations, and off-the-clock COVID-19 and security screenings against Defendant O'Reilly. Spivak Decl. ¶ 36. Both of these matters have already settled on an individual basis. *Id.* Given that these cases have already settled, the Court finds they do not weigh against a finding of predominance.

For these reasons, the Court finds that questions of law or fact common to class members predominate over any questions affecting only individual members, and a class action is superior to other available methods for fairly and efficient adjudicating the controversy. Accordingly, Rule 23(b)(3) is met.

## V.   PRELIMINARY FAIRNESS DETERMINATION UNDER RULE 23(e)

Next, the Court must make a preliminary determination regarding whether the proposed settlement is "fair, reasonable, and adequate" pursuant to Fed. R. Civ. P. 23(e)(2). Preliminary approval of the settlement is appropriate if the settlement (1) appears to be the product of serious, informed, non-collusive negotiations; (2) has no obvious deficiencies; (3) does not improperly grant preferential treatment to class representatives or segments of the class; and (4) falls within the range of possible approval. *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d at 1079; *Sciortino v. PepsiCo, Inc.*, Case No. 14-cv-00478, 2016 WL 3519179, at *4 (N.D. Cal. June 28, 2016).

In assessing the Settlement Agreement, "[i]t is the settlement taken as a whole, rather than the individual component parts, that must be examined for overall fairness." *Hanlon*, 150 F.3d at 1026. The Court must balance the following factors in making this assessment:

> [T]he strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the

class members to the proposed settlement. *Id.*

"At the preliminary approval stage, a full fairness analysis is unnecessary. Closer scrutiny is reserved for the final approval hearing." *Hawkins v. Kroger Co.*, Case No. 15-cv-2320, 2021 WL 2780647, at *3 (S.D. Cal. July 2, 2021) (internal quotations and citations omitted). *See also Alberto v. GMRI, Inc.*, 252 F.R.D. 652, 665 (E.D. Cal. 2008) ("Given that some of these factors cannot be fully assessed until the court conducts its fairness hearing, a full fairness analysis is unnecessary at this stage[.] The court, therefore, will simply conduct a cursory review of the terms of the parties' settlement for the purpose of resolving any glaring deficiencies before ordering the parties to send the proposal to class members.") (internal quotations and citation omitted).

Upon initial review, the Court finds preliminary approval of the Settlement Agreement is appropriate. First, the Settlement Agreement appears to be the product of serious, informed, non-collusive negotiations. As discussed, the parties reached the agreement following multiple mediations, including two separate settlement conferences facilitated by Judge Burkhardt in February 2024. The parties ultimately settled during the second settlement conference before Judge Burkhardt on February 21, 2024. ECF No. 70. Prior to mediation, the parties exchanged significant informal discovery, including Defendants' written policies applicable to the claims at hand, the personnel files of dozens of employees including Plaintiffs, information regarding similar claims against Defendants, data regarding the class size, the aggrieved employees under PAGA, the number of paychecks and workweeks at issue, and a random sampling of the time and payroll records of 169 employees that Plaintiffs' retained data analyst determined was statistically reliable to inform the parties' settlement negotiations. ECF No. 89-1 at 21-24. The use of a mediator on three separate occasions to negotiate settlement and the exchange of discovery beforehand both support a conclusion that Plaintiffs were appropriately informed in negotiating a settlement, and that the settlement was not the result of collusion or bad faith by the parties or counsel. *See Bellinghausen v. Tractor Supply Co.*, 303 F.R.D. 611, 619-20 (N.D. Cal. 2014). Although, as discussed in more detail below, the Court has

some concerns about a fee-driven agreement or preferential treatment being granted to Plaintiff Pipich, the Court does not at this juncture have reason to find the settlement negotiations were collusive or that the parties did not approach their negotiations seriously and with the interests of the absent putative class members in mind.

Second, the Court finds the Settlement Agreement has no obvious deficiencies and falls within the range of possible approval. With respect to the factors concerning the strength of Plaintiffs' case and the risk of continued litigation, as detailed in the Court's discussion of the adequacy requirement, Plaintiffs have provided a thorough accounting of the risks attendant in continued litigation and the potential weaknesses of their case. ECF No. 89-1 at 50-59. Taking these risks into account, the Court finds that the proposed gross settlement amount of $4.1 million—which represents 28.39% of counsel's estimate of the likely awards at trial should Plaintiffs prevail on all claims—appears fair, adequate, and reasonable. *See* Spivak Decl. ¶ 78. The parties have completed significant discovery since the initial Case Management Conference in June 2022 and, prior to reaching a settlement, were slated to proceed to a Final Pretrial Conference on December 9, 2024. ECF No. 62. The Court agrees that given the age and complexity of the case, and the risks and expenses involved in pursuing continued litigation, the $4.1 million settlement amount represents a fair, reasonable, and adequate recovery for Plaintiffs and the absent class members.

Turning to the experience and views of counsel, class counsel all have significant class action experience. Mr. Spivak has prosecuted wage and hour class actions since 2007 and provided a list to the Court of over 20 cases in which he was appointed class counsel in California. Spivak Decl. ¶ 50. Mr. Haines has been practicing law for over 40 years and has represented over 1,500 clients in wage and hour disputes, of which more than 300 cases were class actions with settlements totaling over $400 million. Haines Decl. ¶ 2. Ms. Piazza, submitting a declaration on behalf of proposed class counsel Berger Montague, has been appointed class counsel in dozens of actions nationwide, and is a shareholder in Berger Montague's Employment & Unpaid Wage Group, which has been appointed class counsel in numerous wage and hour class actions in California and across the country.

Piazza Decl. ¶¶ 2, 4-8. Plaintiffs' counsel are all in agreement that the proposed Settlement Agreement represents a fair and reasonable settlement for the class members in light of the complexities of the case and uncertainties of class certification and litigation. Mr. Spivak describes the settlement as an "outstanding result" and Ms. Piazza calls it an "excellent settlement." *See* Spivak Decl. ¶ 94; Haines Decl. ¶ 4; Piazza Decl. ¶ 10. "Because the parties' counsel are the ones most familiar with the facts of the litigation, courts give 'great weight' to their recommendations. Therefore, plaintiffs' counsel's recommendations 'should be given a presumption of reasonableness.'" *Shannon v. Sherwood Mgmt. Co.*, No. 19-CV-01101-BAS-JLB, 2020 WL 2394932, at *10 (S.D. Cal. May 12, 2020) (citations omitted). The Court finds it appropriate to afford a presumption of reasonableness to counsel's views that the proposed Gross Settlement Amount represents a fair and reasonable result for the class members.

The Court is not yet in a position to gauge the reactions of class members to the proposed settlement, and there is no governmental participant in the case. Accordingly, based on the factors that are currently applicable to the Court's review, the Court preliminarily finds the proposed settlement fair, reasonable, and adequate under Rule 23(e)(2).

Despite finding the Settlement Agreement to be fair upon preliminary review, the Court notes that "[s]ettlement adequacy should be scrutinized when there is evidence of fee-driven settlements, exorbitant service payments, or collusion between the parties." *Alberto*, 252 F.R.D. at 663 (citing *Hanlon*, 150 F.3d at 1022). Here, Plaintiffs request an attorney fee award of one-third of the Gross Settlement Amount. ECF No. 89-1 at 26-27. This amount exceeds the Ninth Circuit's benchmark attorney fee award of 25% of the common fund in class action cases. *See, e.g.*, *Hanlon*, 150 F.3d at 1029; *Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 272 (9th Cir. 1989). Indeed, even in cases where the fee award requested does not exceed the 25% benchmark rate, the Ninth Circuit has cautioned that this rate, "although a starting point for analysis, may be inappropriate in some cases. Selection of the benchmark [of 25%] or any other rate must be supported by

findings that take into account all of the circumstances of the case." *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1048 (9th Cir. 2002). *See also Alberto*, 252 F.R.D. at 667-69 (rejecting a request for an attorney fee award of 22% of the gross settlement amount on the basis that, although the record "shows no evidence of bribery or collusion in reference to the requested attorneys' fees, it is nonetheless devoid of any direct support for plaintiff's counsel's requested fee amount[,]" exercising its discretion to employ the lodestar method to calculate reasonable attorney fees instead, and requiring plaintiff's counsel to file "a thorough fee award petition prior to the fairness hearing" to aid in that calculation). Also raising some concern for the Court, Plaintiffs request a service award of $22,500 for named Plaintiff Jeffrey Pipich (who was the only named Plaintiff the case between the time it was first filed in 2021 and the filing of the 4AC in May 2024), which is higher than typical service awards granted to class representatives in similar class actions.

The Court recognizes that Plaintiffs' counsel in this case have provided detailed arguments in support of the requested fee award, including a discussion of the risks they took in bringing the case, the extensive time, effort, and expense dedicated to the case, the skill and determination shown by class counsel, the results achieved, and the other cases class counsel turned down to devote to this matter. ECF No. 89-1 at 62; Spivak Decl. ¶ 81. Plaintiffs have also cited to other cases in this Circuit and before the California Supreme Court where fee awards equal to or greater than 33% of the common fund were approved. ECF No. 89-1 at 62 (citing *Laffitte v. Robert Half Int'l, Inc.*, 1 Cal. 5th 480, 503 (Cal. 2016); *In re Pacific Enterprises*, 47 F.3d 373, 379 (9th Cir. 1995); and *In re Activision*, 723 F. Supp. 1373, 1375 (N.D. Cal. 1989)). Additionally, there is no "clear sailing" provision on attorney fees in the Settlement Agreement, and no reversion of unawarded funds to Defendants, which might reflect collusion or a fee-driven settlement. *See In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935, 947-48 (9th Cir. 2011).

Plaintiffs have also provided an explanation for why they believe the requested service awards to the named Plaintiffs are fair, including that they "have been exposed to significant risks, including the risk of an order to pay Defendants' attorneys' fees and costs

if this action had been unsuccessful[,]" and have each devoted many hours to active participation in the litigation. ECF No. 89-1 at 63-64. Plaintiffs point to many cases in California in which wage-and-hour plaintiffs and putative class representatives were ordered to pay substantial attorney fee awards for unsuccessful claims. Spivak Decl. ¶ 87. Finally, Plaintiffs' counsel makes the point that, without the service awards, the named Plaintiffs' individual shares of the settlement fund will in many cases be less than that of some absent class members, due to the way the *pro rata* distribution to class members is structured based on number of workweeks. *Id.* ¶ 88. Counsel argues it would be unfair to limit the class representatives' service payments to an amount not much greater than an absent class members' share of the recovery, in light of the work they have done to actively participate in the litigation, and that the Court should award something substantial to Plaintiffs "[t]o encourage employees like Plaintiffs to don the helm of class champions (and thereby advance the important public policies behind class actions)[.]" *Id.*

Nonetheless, counsel's request for a fee award representing a disproportionate distribution of the settlement fund compared to the 25% benchmark, in addition to the relatively high service award requested for one of the class representatives, require further scrutiny. "Prior to formal class certification, there is an even greater potential for a breach of fiduciary duty owed the class during settlement. Accordingly, such agreements must withstand an even higher level of scrutiny for evidence of collusion or other conflicts of interest than is ordinarily required under Rule 23(e) before securing the court's approval as fair." *Id.* at 946.

Accordingly, although the Court grants preliminary approval at this time, class counsel are cautioned that they will be required to submit detailed information to support the service payment request for Plaintiff Pipich and the attorney fee request in the anticipated Motion for Fees, Litigation Expenses and Service Award, including a detailed description of the hours Mr. Pipich has spent actively participating in the litigation, comprehensive billing records of Plaintiffs' counsel, and an explanation of counsel's hourly rate, so that the Court may carefully consider whether Mr. Pipich's service payment

should be reduced and/or the attorney fee award should be reduced. *See Laffitte*, 1 Cal. 5th at 506 (explaining that courts "have discretion to conduct a lodestar cross-check on a percentage fee").

Finally, the Court preliminarily finds that the requested Administration Expenses Payment of $40,000 to the Administrator is reasonable. The parties sought and reviewed bids from other reputable third-party administrators prior to agreeing to the $40,000 bid from Xpand Legal Consulting LLC, and all other administrators provided higher bids. ECF No. 89-1 at 64; Spivak Decl. ¶¶ 120-21; Exs. 16-19 to the Spivak Decl.

## VI. PROPOSED SETTLEMENT NOTICE

Rules 23(c)(2)(B) and (e)(1) generally require that a Rule 23(b)(3) settlement class should receive notice in a reasonable manner, and that the notice be "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B); *see also Amchem*, 521 U.S. at 617. Regular mail, electronic mail, and other appropriate means should all be considered. *See* Fed. R. Civ. P. 23(c)(2)(B). The Rule further states that the notice must clearly and concisely state in plain, easily understood language:

> (i) the nature of the action;
> (ii) the definition of the class certified;
> (iii) the class claims, issues, or defenses;
> (iv) that a class member may enter an appearance through an attorney if the member so desires;
> (v) that the court will exclude from the class any member who requests exclusion;
> (vi) the time and manner for requesting exclusion; and
> (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

Fed. R. Civ. P. 23(c)(2)(B)(i)-(vii).

Upon review of the proposed Class Notice (Exhibit A to the Settlement Agreement), the Court finds the notice complies with all requirements of Rule 23. The notice provides all of the information required by Rule 23(c)(2)(B) in plain, easily understood language, and fairly apprises class members of the terms of the settlement and the options open to

dissenting class members.

As for the manner of notice, the Settlement Agreement provides that Defendants will deliver all available class data to the Administrator after the Court grants preliminary approval of the settlement. Settlement Agreement ¶ 4.2. Within 14 calendar days of receiving the class data, the Administrator will send the Class Notice via first-class United States Postal Service mail to all class members identified in the class data, along with a Spanish translation of the Class Notice, if applicable. ECF No. 89-1 at 33. The first page of the Class Notice shall prominently state the estimated dollar amounts of any individual class payment and/or individual PAGA payment payable to the class member, and the number of workweeks and PAGA workweeks used to calculate these amounts. Before mailing the Class Notice, the Administrator shall update the class member addresses using the National Change of Address database. *Id.* If any Class Notice is returned as undelivered to the Administrator by the USPS, the Administrator shall re-mail the Class Notice using any forwarding address provided by the USPS within three business days after receipt of the undelivered notice. If the USPS does not provide a forwarding address, the Administrator shall conduct a Class Member Address Search and re-mail the Class Notice to the most current address obtained. *Id.* at 34. For any class members whose notice has to be re-mailed, the deadline for written objections, challenges to workweeks, and requests for exclusion will be extended an additional 14 days beyond the 60 days otherwise provided in the Class Notice, and the Administrator shall inform any such class member of the extended deadline with the re-mailed Class Notice. *Id.*

If the Administrator, Defendants, or class counsel are contacted by or otherwise discover any persons who believe they should have been included in the class and received the Class Notice, the parties will expeditiously and in good faith meet and confer to determine whether to include them as class members. If the parties agree, such persons will be class members entitled to the same rights as other class members, and the Administrator will send them a Class Notice via email or overnight delivery, requiring them to exercise their options under the Settlement Agreement not later than 14 calendar days after receipt

of the Class Notice, or the deadline dates in the Class Notice, whichever are later. *Id.*

The Court finds the parties' proposed notice and means of delivery of the notice to the class members constitutes "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). Therefore, the Court approves the  Class Notice. The Court appoints Xpand Legal Consulting LLC ("Xpand") as the third-party Settlement Administrator. Xpand must distribute the Class Notice Packet by regular mail to all class members for whom such addresses are known within 21 days of the entry of this preliminary approval order.

## VII. CONCLUSION AND ORDER

1.      The Court **GRANTS** preliminary approval of the Settlement and the Settlement Class based upon the terms set forth in the Settlement filed as an Exhibit to the Motion for Preliminary Approval. All terms herein shall have the same meaning as defined in the Settlement. The Court has determined only that there is sufficient evidence to support a preliminary finding that the proposed settlement is fair, adequate, and reasonable. The Court will make a definitive determination at the hearing on the motion for final approval of class action settlement (the "Final Approval Hearing") as to whether the Settlement is fair, adequate and reasonable to the Settlement Class.

2.      For purposes of this Preliminary Approval Order, the "Settlement Class" means all individuals employed by Defendants as non-exempt, hourly employees, either directly or indirectly through staffing agencies, at one of Defendant O'Reilly Auto Enterprises, LLC's distribution centers in California at any time between July 5, 2018 and May 22, 2024.

3.      Based on its records, Defendants estimate that, as of November 30, 2023, (1) there are 5,750 Class Members and 289,537 Total Workweeks during the Class period; and (2) there were 4,312 Aggrieved Employees who worked 78,609 Workweeks during the PAGA Period. "Effective Date" means the date when both of the following have occurred: (a) the Court enters a Judgment on its Order Granting Final Approval of the

Settlement; and (b) the Judgment is final.  The Judgment is final as of the latest of the following occurrences: (a) if no Participating Class Member objects to the Settlement, the day the Court enters Judgment; (b) if one or more Participating Class Members objects to the Settlement, the day after the deadline for filing a notice of appeal from the Judgment; or if a timely appeal from the Judgment is filed, the day after the appellate court affirms the Judgment and issues a remittitur.

4.     This action is provisionally certified pursuant to Rule 23 of the Federal Rules of Civil Procedure as a class action for purposes of settlement only with respect to the proposed Settlement Class.

5.     Not later than **June 17, 2024**,[3] Defendants will simultaneously deliver the Class Data to the Administrator, in the form of a Microsoft Excel spreadsheet.  To protect Class Members' privacy rights, the Administrator must maintain the Class Data in confidence, use the Class Data only for purposes of the Settlement and for no other purpose, and restrict access to the Class Data to Administrator employees who need access to the Class Data to effect and perform under the Settlement Agreement.  Defendants have a continuing duty to immediately notify Class Counsel if they discover that the Class Data omitted class member identifying information and to provide corrected or updated Class Data as soon as reasonably feasible.  Without any extension of the deadline by which Defendant must send the Class Data to the Administrator, the Parties and their counsel will expeditiously use best efforts, in good faith, to reconstruct or otherwise resolve any issues related to missing or omitted Class Data.

6.     No later than **June 20, 2024**, the Administrator shall notify Class Counsel that the list has been received and state the number of Class Members, PAGA Members, Workweeks in the Class Data.

7.     Using best efforts to perform as soon as possible, and in no event later than

---

[3] The parties should take note that the timeline set forth herein differs somewhat from the timeline proposed in the Motion for Preliminary Approval.

**July 1, 2024**, the Administrator will send to all Class Members identified in the Class Data, via first-class United States Postal Service ("USPS") mail, the Class Notice with Spanish translation, if applicable, substantially in the form attached to this Order as Exhibit A. The first page of the Class Notice shall prominently estimate the dollar amounts of any Individual Class Payment and/or Individual PAGA Payment payable to the Class Member, and the number of Workweeks and PAGA Workweeks (if applicable) used to calculate these amounts. Before mailing Class Notices, the Administrator shall update Class Member addresses using the National Change of Address database.

8.     Not later than three (3) business days after the Administrator's receipt of any Class Notice returned by the USPS as undelivered, the Administrator shall re-mail the Class Notice using any forwarding address provided by the USPS. If the USPS does not provide a forwarding address, the Administrator shall conduct a Class Member Address Search, and re-mail the Class Notice to the most current address obtained. The Administrator has no obligation to make further attempts to locate or send Class Notice to Class Members whose Class Notice is returned by the USPS a second time.

9.     Class Counsel's contact information is David Glenn Spivak, Esq., The Spivak Law Firm, 8605 Santa Monica Bl, PMB 42554, West Hollywood, CA 90069, and Alexandra K. Piazza, Esq., Berger Montague PC, 8241½ La Mesa Blvd. La Mesa, CA 91942. Defense Counsel's contact information is James M. Peterson and Derek W Paradis, Esq., Higgs Fletcher & Mack, 401 West A Street, Suite 2600, San Diego, CA, 92101.

10.     The deadlines for Class Members' written objections, challenges to workweeks (disputes), and requests for exclusion will be extended an additional fourteen (14) days beyond the sixty (60) days otherwise provided in the Class Notice for all Class Members whose notice is re-mailed. The Administrator will inform the Class Member of the extended deadline with the re-mailed Class Notice.

11.     If the Administrator, Defendants or Class Counsel is contacted by or otherwise discovers any persons who believe they should have been included in the Class Data and should have received Class Notice, the Parties will expeditiously meet and confer

in person or by telephone, and in good faith, in an effort to agree on whether to include them as Class Members. If the Parties agree, such persons will be Class Members entitled to the same rights as other Class Members, and the Administrator will send, via email or overnight delivery, a Class Notice requiring them to exercise options under the Settlement Agreement not later than fourteen (14) days after receipt of Class Notice, or the deadline dates in the Class Notice, whichever are later.

12. <u>Requests for Exclusion</u>. Class Members who wish to exclude themselves from the Class Settlement must send to the Administrator, by fax, email, or mail, a signed written Request for Exclusion not later than 60 days after the Administrator mails the Class Notice (plus an additional 14 days for Class Members whose Class Notice is re-mailed). A Request for Exclusion is a letter from a Class Member that reasonably communicates the Class Member's election to be excluded from the Settlement and includes the Class Member's name, address and email address or telephone number. To be valid, a Request for Exclusion must be timely faxed, emailed, or postmarked by the Response Deadline.

13. The Administrator may not reject a Request for Exclusion as invalid because it fails to contain all the information specified in the Class Notice. The Administrator shall accept any Request for Exclusion as valid if the Administrator can reasonably ascertain the identity of the person as a Class Member and the Class Member's desire to be excluded. The Administrator's determination shall be final and not appealable or otherwise susceptible to challenge. If the Administrator has reason to question the authenticity of a Request for Exclusion, the Administrator may demand additional proof of the Class Member's identity. The Administrator's determination of authenticity shall be final and not appealable or otherwise susceptible to challenge.

14. Every Class Member who does not submit a timely and valid Request for Exclusion is deemed to be a Participating Class Member under the Settlement Agreement, entitled to all benefits and bound by all terms and conditions of the Settlement, including the Participating Class Members' Releases under Paragraphs 6.2 and 6.3 of the Settlement, regardless of whether the Participating Class Member actually receives the Class Notice or

objects to the Settlement.

15. Every Class Member who submits a valid and timely Request for Exclusion is a Non-Participating Class Member and shall not receive an Individual Class Payment or have the right to object to the class action components of the Settlement. Aggrieved Employees cannot opt out of the PAGA portion of the Settlement. Plaintiffs, on behalf of themselves and the State of California, and the Aggrieved Employees, release all claims for civil penalties that could have been sought by the Labor Commissioner for the violations identified in Plaintiffs' pre-filing letter to the LWDA; Plaintiffs do not release any claim for wages or damages of any Aggrieved Employee unless such Aggrieved Employee is a Participating Class Member.

16. <u>Challenges to Calculation of Workweeks</u>. Each Class Member shall have sixty (60) days after the Administrator mails the Class Notice (plus an additional fourteen (14) days for Class Members whose Class Notice is re-mailed) to challenge the number of Class Workweeks and PAGA Workweeks (if any) allocated to the Class Member in the Class Notice. This is also known as a dispute. The Class Member may challenge the allocation by communicating with the Administrator via fax, email, or mail. The Administrator must encourage the challenging Class Member to submit supporting documentation. In the absence of any contrary documentation, the Administrator is entitled to presume that the Workweeks contained in the Class Notice are correct so long as they are consistent with the Class Data. The Administrator's determination of each Class Member's allocation of Workweeks shall be final and not appealable or otherwise susceptible to challenge. The Administrator shall promptly provide copies of all challenges to calculation of Workweeks along with the Administrator's determination of the challenges to Defense Counsel and Class Counsel.

17. <u>Objections to Settlement</u>. Only Participating Class Members may object to the Settlement, including contesting the fairness of the Settlement, and/or amounts requested for the Class Counsel Fees Payment, Class Counsel Litigation Expenses Payment and/or Class Representative Service Payments. Participating Class Members may send written

3:21-cv-01120-AHG

objections to the Administrator, by fax, email, or mail. To be valid, the written objection must state the factual and legal grounds for the objection to the Settlement. The written objection must be signed by the Class Member submitting it, and it must state the person's full name, address, telephone number, and email address (if applicable). A Participating Class Member who elects to send a written objection to the Administrator must do so not later than sixty (60) days after the Administrator's mailing of the Class Notice (plus an additional fourteen (14) days for Class Members whose Class Notice was re-mailed). The Participating Class Member who has submitted a timely objection may attend the Final Approval Hearing (or personally retain a lawyer to object and attend at their own cost).

18.    Non-Participating Class Members have no right to object to any of the class action components of the Settlement.

19.    Not later than seven (7) days before the date by which Plaintiffs are required to file the Motion for Final Approval of the Settlement, the Administrator will provide to Class Counsel and Defense Counsel, a signed declaration suitable for filing in Court attesting to its due diligence and compliance with all of its obligations under the Settlement Agreement, including, but not limited to, its mailing of the Class Notices, the Class Notices returned as undelivered, the re-mailing of Class Notices, attempts to locate Class Members, the total number of Requests for Exclusion it received (both valid or invalid), the number of written Objections, and attach the Exclusion List. The Administrator will supplement its declaration as needed or requested by the Parties and/or the Court prior to the Final Approval Hearing. Class Counsel is responsible for filing the Administrator's declaration(s) in Court.

20.    The Court approves, as to form and content, the Class Notice in substantially the form attached as Exhibit A to this Order.

21.    The Court approves, for settlement purposes only Berger Montague PC, The Spivak Law Firm, and United Employees Law Group as Class Counsel.

22.    The Court approves, for settlement purposes only, Jeffrey Pipich, Eve Storm, Gary Cull, Melissa Kolakowski, and Daniel Lopez as the Class Representatives.

23.     The Court approves Xpand Legal Consulting LLC as the Administrator.

24.     The Court preliminarily approves Class Counsel's request for attorneys' fees and costs subject to final review by the Court. Class Counsel shall file a Motion for Approval of Attorneys' Fees and Costs fourteen (14) days before the Response Deadline.

25.     The Court preliminarily approves the estimated Administrator costs payable to the Administrator subject to final review by the Court.

26.     The Court preliminarily approves Plaintiffs' Class Representative Service Payment subject to final review by the Court.

27.     A Final Approval Hearing shall be held on **September 23, 2024** at **9:30 a.m.** in **Courtroom 2B** of the United States District Court, Southern District of California, located at the Edward J. Schwartz United States Courthouse, 221 West Broadway, San Diego, CA 92101 to consider the fairness, adequacy and reasonableness of the proposed Settlement preliminarily approved by this Preliminary Approval Order, and to consider the application of Class Counsel for attorneys' fees and costs and the Class Representative Service Payments to the Class Representatives. The notice of motion and all briefs and materials in support of the motion for final approval of class action settlement and motion for attorneys' fees and litigation costs shall be served and filed with this Court on or before **September 16, 2024**.[4] Plaintiffs' counsel must give notice to any objecting party of any continuance of the hearing of the motion for final approval.

28.     If for any reason the Court does not execute and file a Final Approval Order and Judgment, or if the Effective Date, as defined in the Settlement, does not occur for any reason, the proposed Settlement that is the subject of this order, and all evidence and proceedings had in connection therewith, shall be without prejudice to the status quo ante rights of the Parties to the litigation, as more specifically set forth in the Settlement.

---

[4] The Court recognizes that the Administrator Declaration in support of the motion for final approval may need to be supplemented depending on whether some notices need to be re-mailed. If so, Plaintiffs may supplement their motion with any new information received after the initial Administrator Declaration on or before September 20, 2024.

33

3:21-cv-01120-AHG

29.     The Court expressly reserves the right to adjourn or continue the Final Approval Hearing from time to time without further notice to members of the Class.

**IT IS SO ORDERED.**

Dated: June 7, 2024

Honorable Allison H. Goddard
United States Magistrate Judge

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT A

3:21-cv-01120-AHG

**COURT APPROVED NOTICE OF CLASS ACTION SETTLEMENT AND HEARING DATE FOR FINAL COURT APPROVAL**

*Jeffrey Pipich, et al. v. O'Reilly Auto Enterprises, LLC, et. al.*
*3:21-CV-01120-L-JLB (S.D. Cal.)*

***The United States District Court for the Southern District of California authorized this Notice. Read it carefully!***
***It is not junk mail, spam, an advertisement, or solicitation by a lawyer.***
***You are not being sued.***

**You may be eligible to receive money** from an employee class action lawsuit ("Action") against O'Reilly Auto Enterprises, LLC ("O'Reilly") and Express Services, Inc. *dba* Express Employment Professionals (together, "Defendants") for alleged violations of California's labor laws. The Action was filed by five employees Jeffrey Pipich, Eve Storm, Gary Cull, Melissa Kolakowski, and Daniel Lopez (collectively "Plaintiffs") and seeks payment of (1) wages and other relief for a class of all individuals employed by either or both Defendants as non-exempt, hourly employees, either directly or indirectly through staffing agencies, and who worked at one of Defendant O'Reilly Auto Enterprises, LLC's distribution centers in California at any time between July 5, 2018 and May 22, 2024 ("Class Members"); and (2) penalties under the California Private Attorney General Act ("PAGA") for all individuals employed by either or both Defendants as non-exempt, hourly employees, either directly or indirectly through staffing agencies, and who worked at one of Defendant O'Reilly Auto Enterprises, LLC's distribution centers in California at any time between May 11, 2020 and May 22, 2024 ("Aggrieved Employees"). July 5, 2018 and May 22, 2024 is the "Class Period." May 11, 2020 and May 22, 2024 is the PAGA Period.

The proposed Settlement has two main parts: (1) a Class Settlement requiring Defendant O'Reilly to fund Individual Class Payments, and (2) a PAGA Settlement requiring Defendant O'Reilly to fund Individual PAGA Payments and pay penalties to the California Labor and Workforce Development Agency ("LWDA").

Based on Defendant's records, and the Parties' current assumptions, **your Individual Class Payment is estimated to be $<<IndividualClassPaymentAmount>> (less withholding) and your Individual PAGA Payment is estimated to be $<<IndividualPAGAPaymentAmount>>**. The actual amount you may receive likely will be different and will depend on a number of factors. (If no amount is stated for your Individual PAGA Payment, then according to Defendants' records you are not eligible for an Individual PAGA Payment under the Settlement because you didn't work during the PAGA Period.) The individual payments amounts will vary. However, the average Individual Class Payment to a Class Member is estimated to be <<$Average Individual Class Payment Amount>>. The average Individual PAGA Payment to a Class Member is estimated to be <<$Average Individual PAGA Payment Amount>>. The highest Individual

Class Payment to a Class Member is estimated to be <<$Highest Individual Class Payment Amount>> and the lowest is estimated to be <<$Lowest Individual Class Payment Amount>>. The highest Individual PAGA Payment to a Class Member is estimated to be <<$Highest Individual PAGA Payment Amount>> and the lowest is estimated to be <<$Lowest Individual PAGA Payment Amount>>.

The above estimates are based on Defendants' records showing that **you worked <<___>> Workweeks** during the Class Period and **you worked <<___>> Workweeks** during the PAGA Period. If you believe that you worked more Workweeks during either period, you can submit a challenge by the deadline date. See Section 4 of this Notice.

The Court has already preliminarily approved the proposed Settlement and approved this Notice. The Court has not yet decided whether to grant final approval. The Court has determined only that there is sufficient evidence to suggest that the proposed settlement might be fair, adequate, and reasonable, and that any final determination of those issues will be made at the Final Approval Hearing. Your legal rights are affected whether you act or not act. Read this Notice carefully. You will be deemed to have carefully read and understood it. At the Final Approval Hearing, the Court will decide whether to finally approve the Settlement and how much of the Settlement will be paid to Plaintiffs and Plaintiffs' attorneys ("Class Counsel"). The Court will also decide whether to enter a judgment that requires Defendant O'Reilly to make payments under the Settlement and requires Class Members and Aggrieved Employees to give up their rights to assert certain claims against Defendant.

### SUMMARY OF YOUR LEGAL RIGHTS AND OPTIONS IN THIS SETTLEMENT

| | |
|---|---|
| **You Don't Have to Do Anything to Participate in the Settlement** | If you do nothing, you will be a Participating Class Member, eligible for an Individual Class Payment and an Individual PAGA Payment (if any). In exchange, you will give up your right to assert the claims against Defendants that are covered by this Settlement (Released Claims). |
| **You Can Opt-out of the Class Settlement but not the PAGA Settlement** <br><br> **The Opt-out Deadline is <<RESPONSE** | If you don't want to fully participate in the proposed Settlement, you can opt-out of the Class Settlement by sending the Administrator a written Request for Exclusion. Once excluded, you will be a Non-Participating Class Member and no longer eligible for an Individual Class Payment. Non-Participating Class Members cannot object to any portion of the proposed Settlement. See Section 6 of this Notice. <br><br> You cannot opt-out of the PAGA portion of the proposed |

| DEADLINE>> | Settlement. Defendant O'Reilly must pay Individual PAGA Payments to all Aggrieved Employees and Plaintiffs release Defendants from civil penalties it may owe to the Aggrieved Employees. |
|---|---|
| **Participating Class Members Can Object to the Class Settlement but not the PAGA Settlement**<br><br>**Written Objections Must be Submitted by <<RESPONSE DEADLINE>>** | All Class Members who do not opt-out ("Participating Class Members") can object to any aspect of the proposed Settlement by submitting a signed, written statement to the Settlement Administrator stating the basis for your objection. |
| **You Can Participate in the September 23, 2024 Final Approval Hearing** | The Court's Final Approval Hearing is scheduled to take place on **September 23, 2024**. You don't have to attend but you do have the right to appear (or hire an attorney to appear on your behalf at your own cost), in person, by telephone or by using the Court's virtual appearance platform (if available and permitted by the Court). |
| **You Can Challenge the Calculation of Your Workweek / Workweeks**<br><br>**Written Challenges Must be Submitted by <<RESPONSE DEADLINE>>** | The amount of your Individual Class Payment and PAGA Payment (if any) depend on how many Workweeks you worked at least one day during the Class Period and how many Workweeks you worked at least one day during the PAGA Period, respectively. The number Class Period Workweeks and number of PAGA Period Workweeks you worked according to Defendants' records is stated on the first page of this Notice. If you disagree with either of these numbers, you must challenge it by **<<RESPONSE DEADLINE>>**. See Section **4** of this Notice. |

**Defendants will not retaliate against you for any actions you take with respect to the proposed Settlement.**

## 1.    WHAT IS THE ACTION ABOUT?

Plaintiffs are former employees of Defendant O'Reilly's California distribution centers. The Action accuses Defendants of violating California labor laws by failure to pay wages, unauthorized and unlawful wage deductions, failure to provide meal periods, failure to authorize and permit rest periods, failure to indemnify for business expenses, failure to

issue proper wage statements, failure to timely pay wages, failure to maintain required payroll records, and related violations of the Labor Code. Based on the same claims, Plaintiffs have also asserted a claim for civil penalties under the PAGA (Labor Code section 2698 and sections that follow) ("PAGA").

O'Reilly and Express  strongly deny violating any laws or failing to pay any wages and contends that at all times they treated workers fairly and in  compliance  with all applicable laws.

## 2.    WHAT DOES IT MEAN THAT THE ACTION HAS SETTLED?

So far, the Court has made no determination whether Defendants or Plaintiffs are correct on the merits. During the course of this litigation, which has spanned almost three years, the Parties have participated in several arm's length settlement conferences, including most recently, two virtual settlement conferences before a United States District Court Magistrate Judge in an effort to resolve the Action by negotiating an to end the case by agreement (settle the case) rather than continuing the expensive and time-consuming process of litigation. The negotiations were successful. By signing a lengthy written settlement agreement ("Agreement") and agreeing to jointly ask the Court to enter a judgment ending the Action and enforcing the Agreement, Plaintiffs and Defendants have negotiated a proposed Settlement that is subject to the Court's Final Approval. Both sides agree the proposed Settlement is a compromise of disputed claims. By agreeing to settle, Defendants do not admit any violations or concede the merit of any claims.

The Parties, Class Counsel and Defense Counsel are not aware of any other pending matter or action asserting claims that will be extinguished or affected by the Settlement other than the following:

> *Stephanie Perez v. O'Reilly Auto Enterprises, LLC*, Superior Court of the State of California for County of San Joaquin, case no. STK-CV-UOE-2023-7289, filed on July 14, 2023, and amended on September 23, 2023. This is a class and PAGA action for (1) Failure To Provide Duty-Free Meal Periods; (2) Failure To Provide Duty-Free Rest Periods; (3) Failure To Pay Minimum Wages; (4) Failure To Pay Overtime Wages; (5) Unfair, Competition; (6) Failure To Provide Accurate Wage Statements; (7) Failure To Pay All Wages Owed Upon Termination; and (8) Civil Penalties Under PAGA.

> *Sally Fonseca v. O'Reilly Auto Enterprises, LLC*, Superior Court of the State of California for County of San Joaquin, case no. STK-CV-UOE-2024-354, filed on January 11, 2024. This is a class and PAGA action for (1) Failure To Pay Minimum Wages; (2) Failure To Pay Overtime Wages; (3) Meal Period Liability; (4) Rest Break Liability; (5) Failure To Provide Accurate Itemized

Employee Wage Statements; (6) Violation Of Labor Code Section 1174; (7) Violation Of Labor Code Sections 2102 And 2103; (8) Failure To Pay Wages Timely And Upon Separation Of Employment; And (9) Violation Of Unfair Competition Law.

Plaintiffs and Class Counsel strongly believe the Settlement is a good deal for you because they believe that: (1) Defendant O'Reilly has agreed to pay a fair, reasonable, and adequate amount considering the strength of the claims and the risks and uncertainties of continued litigation; and (2) Settlement is in the best interests of the Class Members and Aggrieved Employees. The Court preliminarily approved the proposed Settlement as fair, reasonable, and adequate, authorized this Notice, and scheduled a hearing to determine Final Approval.

## 3. WHAT ARE THE IMPORTANT TERMS OF THE PROPOSED SETTLEMENT?

A. <u>Gross Settlement Amount</u>. Defendant O'Reilly Will Pay $4,100,000.00 as the Gross Settlement Amount ("Gross Settlement"). Defendant O'Reilly has agreed to deposit the Gross Settlement into an account controlled by the Administrator of the Settlement. The Administrator will use the Gross Settlement to pay the Individual Class Payments, Individual PAGA Payments, Class Representative Service Payments, Class Counsel's attorney's fees and expenses, the Administration Expenses Payment, and penalties to be paid to the California Labor and Workforce Development Agency ("LWDA"). Assuming the Court grants Final Approval, Defendant O'Reilly will fund the Gross Settlement not more than 14 days after the Judgment entered by the Court become final. The Judgment will be final on the date the Court enters Judgment, or a later date if Participating Class Members object to the proposed Settlement or the Judgment is appealed.

B. <u>Court Approved Deductions from Gross Settlement</u>. At the Final Approval Hearing, Plaintiffs and/or Class Counsel will ask the Court to approve the following deductions from the Gross Settlement, the amounts of which will be decided by the Court at the Final Approval Hearing:

1. <u>Attorney Fees and Costs</u>. Up to $1,366,666.67 (33 and 1/3% of the Gross Settlement to Class Counsel for attorneys' fees and up to $120,000.00 for their litigation expenses. To date, Class Counsel have worked and incurred expenses on the Action without payment.

2. <u>Class Representative Service Awards</u>. Up to $55,000.00 for Class Representative Service Awards for filing the Action, working with Class Counsel and representing the Class. The Class Representative Service Awards will be the only monies

Plaintiffs will receive other than Plaintiffs' Individual Class Payment and any Individual PAGA Payment. Plaintiffs seek to divide the $55,000 Class Representative Service Awards as follows: (1) $22,500.00 to Jeffrey Pipich; (2) $10,000.00 to Eve Storm; (3) $7,500 to Gary Cull; (4) $7,500 to Melissa Kolakowski; and (5) $7,500 to Daniel Lopez.

3.      <u>Administration Expenses Payment</u>. Up to $40,000.00 to the Administrator for services administering the Settlement.

4.      <u>PAGA Penalties</u>. Up to $410,000.00 for PAGA Penalties, allocated 75% to the LWDA PAGA Payment and 25% in Individual PAGA Payments to the Aggrieved Employees based on their PAGA Workweeks.

Participating Class Members have the right to object to any of these deductions. The Court will consider all objections.

Based on their records, Defendants estimated that, as of the date of the Settlement, (1) there are 5,750 Class Members and 289,537 total Workweeks during the Class period and (2) there were 4,312 Aggrieved Employees who worked 78,609 Workweeks during the PAGA Period. If the Workweeks and/or Class Members as of May 22, 2024 exceeds the referenced 289,537 Workweeks and/or 5,750 Class Members by more than 10.00%, the Gross Settlement Amount, including the Class Counsel Fees Payment, the Class Representative Service Payments, and the LWDA payment, will increase proportionally according to the number of additional Workweeks or Class Members, whichever results in a higher increase in the Gross Settlement Amount.

C.      <u>Net Settlement Distributed to Class Members</u>. After making the above deductions in amounts approved by the Court, the Administrator will distribute the rest of the Gross Settlement (the "Net Settlement") by making Individual Class Payments to Participating Class Members based on their Class Period Workweeks.

D.      <u>Taxes Owed on Payments to Class Members</u>. Plaintiffs and Defendants are asking the Court to approve an allocation of 10.00% of each Individual Class Payment to taxable wages ("Wage Portion") and 90.00% to interest and penalties ("Non-Wage Portion.). The Wage Portion is subject to withholdings and will be reported on IRS W-2 Forms. Defendant O'Reilly will separately pay employer payroll taxes it owes on the Wage Portion. The Individual PAGA Payments are counted as penalties rather than wages for tax purposes. The Administrator will report the Individual PAGA Payments and the Non-Wage Portions of the Individual Class Payments on IRS 1099 Forms.

Although Plaintiffs and Defendants have agreed to these allocations, neither side is giving you any advice on whether your Payments are taxable or how much you might owe in taxes. You are responsible for paying all taxes (including penalties and interest on back

41

taxes) on any Payments received from the proposed Settlement. You should consult a tax advisor if you have any questions about the tax consequences of the proposed Settlement.

E.      <u>Need to Promptly Cash Payment Checks</u>. The front of every check issued for Individual Class Payments and Individual PAGA Payments will show the date when the check expires (the void date). If you do not cash it by the void date, your check will be automatically cancelled, and the monies will irrevocably lost to you because they will be paid to a non-profit organization or foundation, the San Diego County Bar Foundation ("Cy Pres").

F.      <u>The Proposed Settlement Will be Void if the Court Denies Final Approval</u>. It is possible the Court will decline to grant Final Approval of the Settlement or decline to enter a Judgment. It is also possible the Court will enter a Judgment that is reversed on appeal. Plaintiffs and Defendants have agreed that, in either case, the Settlement will be void: Defendant O'Reilly will not pay any money and Class Members will not release any claims against Defendants.

G.      <u>Administrator</u>. The Court has appointed a neutral company, Xpand Legal Consulting LLC (the "Administrator") to send this Notice, calculate and make payments, and process Class Members' Requests for Exclusion and Objections. The Administrator will also decide Class Member challenges of Workweeks, mail and re-mail settlement checks and tax forms, and perform other tasks necessary to administer the Settlement. The Administrator's contact information is contained in Section 9 of this Notice.

H.      <u>Participating Class Members' Release</u>. After the Judgment is final and Defendant O'Reilly has fully funded the Gross Settlement (and separately paid all employer payroll taxes), Participating Class Members will be legally barred from asserting any of the claims released under the Settlement. This means that unless you opted out by validly excluding yourself from the Class Settlement, you cannot sue, continue to sue, or be part of any other lawsuit against Defendants or their parents, subsidiaries, affiliated entities, franchisors, franchisees, officers, employees, and agents for wages based on the Class Period facts and PAGA penalties based on PAGA Period facts, as alleged in the Action and resolved by this Settlement.

The Participating Class Members will be bound by the following release:

All Participating Class Members, on behalf of themselves and their respective former and present representatives, agents, attorneys, heirs, administrators, successors, and assigns, release Released Parties from all claims stated in the Operative Complaint and those based solely upon the facts alleged in the Operative Complaint. Upon entry of Judgment and funding of the Gross Settlement Amount, the Defendants and their parents, subsidiaries, affiliated entities, franchisors, franchisees, officers, employees, and agents

shall be entitled to a release from the Settlement Class members of all class claims, actions, demands, causes of action, suits, debts, obligations, damages, penalties, rights or liabilities, of any nature and description whatsoever, that are either asserted in the Action, or could have been asserted in the Action based on the facts, claims, and theories plead in the Operative Complaint on file at the time of final approval, including but not limited to, Labor Code sections 90.5(a), 201, 201.3, 202, 203, 204, 210, 218, 218.5, 218.6, 223, 226, 226.3, 226.7, 246, 510, 512, 1174, 1174.5, 1182.12, 1194, 1194.2, 1197, 1197.1, 1197.2, 1198, 1682, 2102, 2103, 2350, 2802, and 6404, and the applicable IWC Wage Orders which occurred during the Class Period. ("Released Class Claims") Except as set forth in Section 6.3 of this Agreement, Participating Class Members do not release any other claims, including claims for vested benefits, wrongful termination, violation of the Fair Employment and Housing Act, unemployment insurance, disability, social security, workers' compensation, or claims based on facts occurring outside the Class Period. Released Class Claims also includes all claims that were or that could have been alleged in the Action based on the facts stated in the Operative Complaint, including but not limited to any claims for violations of the California Labor Code, and the relevant Wage Orders. The term "Released Class Claims" also includes Plaintiffs' claim that Defendants are liable for the attorneys' fees incurred to prosecute this Action on behalf of Class Members, including fees incurred for the services of Class Counsel, and any claim that Defendants are liable for any other remedies, civil penalties, statutory penalties, or interest under California law based on the facts alleged in the Operative Complaint. The term "Released Class Claims" also includes all claims that the Class Members may have against the Released Parties relating to (i) the payment, taxation and allocation of attorneys' fees and costs to Class Counsel pursuant to this Agreement, and (ii) the payment, taxation, and allocation of the Class Representative Service Payments pursuant to this Settlement Agreement.  Class Members may discover facts in addition to or different from those they now know or believe to be true with respect to the subject matter of the Released Class Claims, but upon the Effective Date, shall be deemed to have, and by operation of the Final Approval Order shall have, fully, finally, and forever settled and released any and all of the Released Claims, whether known or unknown, suspected or unsuspected, contingent or non-contingent, which now exist or have existed, upon any theory of law or equity now existing.  It is the intent of the Parties that the Final Approval Order and Judgement entered by the Court shall have full res judicata and collateral estoppel effect and be final and binding upon Class Members regarding the Released Class Claims.

I.     The PAGA Release. After the Court's Judgment is final, and Defendant O'Reilly has paid the Gross Settlement (and separately paid the employer-side payroll taxes), Plaintiffs, on behalf of themselves and the State of California, and the Aggrieved Employees fully releases and discharges Defendants and their parents, subsidiaries, affiliated entities, officers, franchisors, franchisees, employees, and agents, from any and all claims for relief under the PAGA, based on the claims for penalties that could have been sought by the Labor Commissioner or Plaintiffs based on the facts and legal claims as

alleged in the Operative Complaint at the time of final approval  (with the inclusion of the facts and claims mentioned in paragraph 6 above) by Plaintiffs in the Action and Plaintiffs' notice letters to the LWDA including, but not limited to, Labor Code sections 90.5(a), 201, 201.3, 202, 203, 204, 210, 218, 218.5, 218.6, 223, 226, 226.3, 226.7, 246, 510, 512, 1174, 1174.5, 1182.12, 1194, 1194.2, 1197, 1197.1, 1197.2, 1198, 1682, 2102, 2103, 2350, 2802, and 6404, and the applicable IWC Wage Orders, and any resulting claim for attorneys' fees and costs under the PAGA, which occurred during the PAGA Period. Plaintiffs do not release the claim for wages or damages of any Aggrieved Employee unless such Aggrieved Employee is a Participating Class Member.

## 4.   HOW WILL THE ADMINISTRATOR CALCULATE MY PAYMENT?

A.   <u>Individual Class Payments</u>. The Administrator will calculate Individual Class Payments by (a) dividing the Net Settlement Amount by the total number of Workweeks worked by all Participating Class Members, and (b) multiplying the result by the number of Workweeks worked by each individual Participating Class Member.

B.   <u>Individual PAGA Payments</u>. The Administrator will calculate Individual PAGA Payments by (a) dividing $102,500.00 by the total number of PAGA Workweeks worked by all Aggrieved Employees and (b) multiplying the result by the number of PAGA Period Workweeks worked by each individual Aggrieved Employee.

C.   <u>Workweek Challenges</u>. The number of Class Workweeks you worked during the Class Period and the number of PAGA Workweeks you worked during the PAGA Period, as recorded in Defendants' records, are stated in the first page of this Notice. You have until <<RESPONSE DEADLINE>> to challenge the number of Workweeks credited to you. You can submit a workweek challenge by signing and sending a letter to the Administrator by email, fax or regular U.S. mail outlining the basis for your challenge.

You need to support your challenge by submitting copies of pay stubs or other records. The Administrator will accept Defendants' calculation of Workweeks based on Defendants' records as accurate unless you send copies of records containing contrary information to the Administrator. You should send copies rather than originals because the documents will not be returned to you. The Administrator will resolve Workweek challenges based on your submission. The Administrator's decision is final. You cannot appeal or otherwise challenge its final decision.

## 5.   HOW WILL I GET PAID?

A.   <u>Participating Class Members</u>. The Administrator will send, by U.S. mail, a single check to every Participating Class Member (i.e., every Class Member who does not opt-out) including those who also qualify as Aggrieved Employees. The single check will

44

combine the Individual Class Payment and the Individual PAGA Payment.

B.   <u>Non-Participating Class Members</u>. The Administrator will send, by U.S. mail, a single Individual PAGA Payment check to every Aggrieved Employee who opts out of the Class Settlement (i.e., every Non-Participating Class Member).

**Your check will be sent to the same address as this Notice. If you change your address, be sure to notify the Administrator as soon as possible. Section 9 of this Notice has the Administrator's contact information.**

## 6.   HOW DO I OPT-OUT OF THE CLASS SETTLEMENT?

Email, fax, or mail a written and signed letter with your name, present address, telephone number, and a simple statement that you do not want to participate in the Settlement. The Administrator will exclude you based on any writing communicating your request be excluded. Be sure to personally sign your request, identify the Action as Jeffrey Pipich et al. vs. O'Reilly Auto Enterprises, LLC, Case No. 3:21-cv-01120-L-JLB, and include your identifying information (full name, address, telephone number, approximate dates of employment, and social security number for verification purposes). You must make the request yourself. If someone else makes the request for you, it will not be valid. You should send your Request for Exclusion to the Administrator by email, fax, or regular U.S. mail. **You must send to the Administrator your request to be excluded by <<RESPONSE DEADLINE>>, or it will be invalid.** Section 9 of the Notice has the Administrator's contact information. If you are an Aggrieved Employee, you will still receive an Individual PAGA Payment.

## 7.   HOW DO I OBJECT TO THE SETTLEMENT?

Only Participating Class Members have the right to object to the Settlement. Before deciding whether to object, you may wish to see what Plaintiffs and Defendants are asking the Court to approve. At least fourteen (14) days prior to the Response Deadline, Plaintiffs will file in Court a Motion for Fees, Litigation Expenses and Service Award stating (i) the amount Class Counsel is requesting for attorneys' fees and litigation expenses; and (ii) the amount Plaintiffs are requesting as a Class Representative Service Award. At least seven (7) days before the Final Approval Hearing, Plaintiffs will file in Court a Motion for Final Approval that includes, among other things, the reasons why the proposed Settlement is fair. You may view these documents and the Settlement Agreement on the Administrator's Website <<ADMINISTRATOR WEBSITE>> or the Court's website <<COURT WEBSITE>>.

**The deadline for sending written objections to the Administrator is <<RESPONSE**

**DEADLINE>>.** Be sure to tell the Administrator what you object to, why you object, and any facts that support your objection. Make sure you identify the Action, Jeffrey Pipich et al. vs. O'Reilly Auto Enterprises, LLC, case no. 3:21-cv-01120-L-JLB, and include your name, current address, telephone number, and approximate dates of employment for Defendants and sign the objection. Section 9 of this Notice has the Administrator's contact information. You should send your objection to the Administrator by email, fax, or regular U.S. mail. A Participating Class Member who has submitted a timely objection may attend the Final Approval Hearing (or personally retain a lawyer to object and attend at your own cost). You (or your attorney) should be ready to tell the Court what you object to, why you object, and any facts that support your objection. See Section 8 of this Notice (immediately below) for specifics regarding the Final Approval Hearing.

## 8.    CAN I ATTEND THE FINAL APPROVAL HEARING?

You can, but don't have to, attend the Final Approval Hearing on <<FINAL APPROVAL HEARING DATE>> at <<FINAL APPROVAL HEARING TIME>> in Courtroom 5140 of the United States District Court, Southern District of California, located at Edward J. Schwartz United States Courthouse, 221 West Broadway, San Diego, CA 92101 (the Honorable Allison H. Goddard, United States Magistrate Judge). At the Hearing, the judge will decide whether to grant Final Approval of the Settlement and how much of the Gross Settlement will be paid to Class Counsel, Plaintiffs, and the Administrator. The Court will invite comment from objectors, Class Counsel and Defense Counsel before making a decision. You can attend (or hire a lawyer to attend). Check the Court's website for the most current information.

It's possible the Court will reschedule the Final Approval Hearing. You should check the Administrator's website <<ADMINISTRATOR WEBSITE>> beforehand or contact Class Counsel to verify the date and time of the Final Approval Hearing.

## 9.    HOW CAN I GET MORE INFORMATION?

The Agreement sets forth everything Defendants and Plaintiffs have promised to do under the proposed Settlement. The easiest way to read the Agreement, the Judgment, or any other Settlement documents is to go to the Administrator's website at <<ADMINISTRATOR'S WEBSITE>>. You can also telephone or send an email to the Administrator using the contact information listed below, or consult the Court website by going to (http://www.<< COURT'S WEBSITE>>.aspx) and entering the Case Number for the Action, Case No. 3:21-cv-01120-L-JLB. You can also make an appointment to personally review court documents in the Clerk's Office at the United States District Court, Southern District of California, located at Edward J. Schwartz United States Courthouse, 221 West Broadway, San Diego, CA 92101 by calling <<CLERK OF COURT'S PHONE NUMBER>>.

**DO NOT TELEPHONE THE COURT TO OBTAIN INFORMATION ABOUT THE SETTLEMENT.**

Class Counsel:

> David Glenn Spivak, Esq.
> The Spivak Law Firm
> 8605 Santa Monica Bl
> PMB 42554
> West Hollywood, CA 90069
> david@spivaklaw.com
> Telephone:  (213) 725-9094

> Alexandra K. Piazza, Esq.
> Berger Montague PC
> 8241 La Mesa Blvd, Suite A
> La Mesa, CA 91942
> apiazza@bm.net
> Telephone: (619) 489-0300

Administrator:

> Name of Company:       Xpand Legal Consulting LLC
> Email Address:          ___
> Mailing Address:        ___
> Telephone:              ___
> Fax Number:             ___

O'Reilly Counsel:

> James M. Peterson. Esq.
> Derek W. Paradis, Esq.
> HIGGS FLETCHER & MACK LLP
> 401 West "A" Street, Suite 2600
> San Diego, California 92101-7913
> peterson@higgslaw.com
> paradisd@higgslaw.com
> Telephone:  619.236.1551

Express Counsel:

>Morgan Forsey, Esq.
>ARENTFOX SCHIFF LLP
>555 West Fifth Street
>48th Floor
>Los Angeles CA 90013
>mforsey@sheppardmullin.com
>Telephone:   (213) 443-7538

## 10.   WHAT IF I LOSE MY SETTLEMENT CHECK?

If you lose or misplace your settlement check before cashing it, the Administrator will replace it as long as you request a replacement before the void date on the face of the original check. If you do not request a replacement by the void date, you will have no way to recover the money.

## 11.   WHAT IF I CHANGE MY ADDRESS?

To receive your check, you should immediately notify the Administrator if you move or otherwise change your mailing address.

3:21-cv-01120-AHG