UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JEFFREY PIPICH, as an "aggrieved employee" on behalf of all other similarly situated "aggrieved employees" under the Labor Code Private Attorney General Act of 2004,<br><br>Plaintiff,<br><br>v.<br><br>O'REILLY AUTO ENTERPRISES, LLC, a Delaware limited liability company; EXPRESS SERVICES, INC., a Colorado corporation d/b/a Express Employment Professionals; and DOES 2-50, inclusive,<br><br>Defendants. | Case No.: 3:21-cv-01120-AHG<br><br>**ORDER:**<br><br>**(1) GRANTING PLAINTIFFS' MOTION FOR AWARD OF ATTORNEY FEES, REIMBURSEMENT OF COSTS, ADMINISTRATION EXPENSES PAYMENT, AND CLASS REPRESENTATIVE SERVICE PAYMENTS; and**<br><br>**(2) GRANTING MOTION FOR FINAL APPROVAL OF CLASS ACTION AND PAGA SETTLEMENT**<br><br>**[ECF Nos. 99, 103]** |

Presently before the Court are Plaintiffs' Unopposed Motion for Final Approval of Class Action Settlement and Motion for Attorney Fees, Costs, Administration Expenses Payment, and Class Representative Service Payments. ECF No. 99, 103. A hearing on these motions was held on October 9, 2024.

Based on the reasons set forth below, the Court **GRANTS** Plaintiffs' Motion for Final Approval of Class Action Settlement and **GRANTS** Plaintiffs' Motion for Attorney

Fees and Costs, the Administration Expenses Payment, and Class Representative Service Payments.

## I.  BACKGROUND

On June 16, 2021, Plaintiff filed his initial complaint against Defendant O'Reilly Auto Enterprises, LLC ("O'Reilly") in this Court, styling his claims as a collective action under the Fair Labor Standards Act ("FLSA"), and alleging that O'Reilly had failed to provide proper payment of all wages to Plaintiff and other employees who were putative collective members by requiring them to undergo COVID-19 screenings and security inspections each day without pay, including during meal breaks, rest breaks, and off-the-clock pre-shift and post-shift time. ECF No. 1. After the Court found that Plaintiff failed to state a cognizable legal claim under the FLSA and dismissed the action without prejudice (ECF No. 15), Plaintiff filed a Second Amended Complaint against O'Reilly on April 7, 2022, bringing claims under the Private Attorneys General Act ("PAGA") of the California Labor Code based on the same underlying allegations. ECF No. 23. In September 2022, while discovery was underway, the parties requested and were granted a stay of the case for approximately six months pending private mediation in February 2023, which ultimately proved unsuccessful. ECF Nos. 32, 33, 38. The stay was lifted on March 7, 2023. ECF No. 39. On April 14, 2023, upon the order of the Court, Plaintiff amended the complaint once more to properly allege subject-matter jurisdiction. ECF No. 45.

On February 21, 2024, the parties settled the case during a Mandatory Settlement Conference conducted by the Honorable Jill L. Burkhardt. ECF No. 70. The settlement was a global settlement including this matter and three related matters involving Defendant O'Reilly: (1) *Eve Storm v. O'Reilly Auto Enterprises, et al.*, Riverside Superior Court, Case No. CVRI2104730; (2) *Eve Storm v. O'Reilly Auto Enterprises, et al.*, Case No. 5:23-cv-00597-FLA-MAR (C.D. Cal.); and (3) *Gary Cull, et al. v. O'Reilly Auto Enterprises, LLC*, Case No. 5:23-cv-01623-FLA-MAR (C.D. Cal.). *See* ECF No. 82 at 4. The parties agreed to settle these cases on a class-wide basis, and the federal matters in the United States

District Court for the Central District of California have since dismissed the Storm and Cull matters without prejudice. ECF No. 89-1 at 21.[1] Thereafter, the parties consented to the undersigned to preside over the case and review the proposed settlement for court approval. ECF No. 77.

Pursuant to the terms of the settlement and with leave of Court, Plaintiff filed the operative Fourth Amended Complaint ("4AC") on May 21, 2024. ECF No. 86. The 4AC added Plaintiffs Eve Storm, Gary Cull, Melissa Kolakowski, and Daniel Lopez to the case as class representatives, added Express (a named defendant in the *Storm* cases) as a Defendant, and added certain class allegations and causes of action. *See* ECF No. 82 at 5; ECF No. 86. Specifically, in the 4AC, Plaintiffs bring class-wide claims for (1) failure to provide meal periods under California Labor Code §§ 226.7, 512, and 1198; (2) failure to authorize and permit rest breaks under California Labor Code §§ 226.7 and 1198; (3) failure to pay all wages earned at the correct rates of pay under California Labor Code §§ 223, 510, 1194, 1197, 1198; (4) failure to indemnify under California Labor Code §§ 1198 and 2802; (5) failure to issue accurate and complete wage statements under California Labor Code § 226; (6) willful failure to timely pay final wages under California Labor Code §§ 201-203; and (7) unfair competition under California Business and Professional Code §§ 17200, *et seq. Id.* ¶¶ 65-137. In addition, Plaintiffs bring an eighth cause of action seeking civil penalties under PAGA on behalf of the "Aggrieved Employees," defined as all members of the Class employed by Defendants during the period beginning May 11, 2020, and ending on the date that final judgment is entered in this action. *Id.* ¶¶ 138-164.

On May 24, 2024, Plaintiffs filed a Motion to Grant Preliminary Approval of Class Action Settlement (ECF No. 89), which the Court granted on June 7, 2024. ECF No. 94. The preliminary approval order established a process for notice to the Class. *Id.* Notice was

---

[1] As part of the settlement agreement, Plaintiffs agree to dismiss Plaintiff Eve Storm's PAGA action in the Riverside County Superior Court without prejudice within 14 days after final approval of the settlement. ECF No. 89-2 at 72.

completed as ordered.

On September 30, 2024, the parties filed a Motion to Reserve Ruling on the Motion for Final Approval of Class Action Settlement (ECF No. 101), which the Court granted on October 1, 2024. ECF No. 102. On October 2, 2024, Plaintiffs filed an unopposed Motion for Final Approval of Class Action Settlement. ECF No. 103. The final approval hearing took place on October 9, 2024. No Class Members objected to the settlement, and one Class Member requested exclusion because they had reached an individual settlement separately with O'Reilly. ECF No. 103-1 at 9.

## II.  SETTLEMENT AGREEMENT

The parties have executed a Joint Stipulation of Class Action and PAGA Settlement ("Settlement Agreement" or "Settlement"). ECF No. 103-2 at 7. The primary terms of the Settlement are:

- The Settlement Class is defined as all individuals employed by one or both Defendants as non-exempt, hourly employees, either directly or indirectly through staffing agencies, and who worked at one of Defendant O'Reilly Auto Enterprises, LLC's distribution centers in California at any time during the Class Period of July 5, 2018 to May 22, 2024. The "Aggrieved Employees" are all class members who were employed by one or both Defendants in California and classified as non-exempt, hourly employees, either directly or indirectly through staffing agencies, at one of Defendant O'Reilly Auto Enterprises, LLC's distribution centers in California at any time during the PAGA Period of May 11, 2020 to May 22, 2024. The Settlement Class thus includes all Aggrieved Employees.

- Defendant O'Reilly will pay $4,100,000.00 (the "Gross Settlement Amount"), in addition to any and all employer payroll taxes owed on the Wage Portions[2] of the Individual Class Payments, to settle the claims of the Settlement Class. The Administrator will disburse the entire Gross Settlement Amount without asking or

---

[2] This term is defined below.

4

3:21-cv-01120-AHG

requiring Participating Class Members or Aggrieved Employees to submit any claim as a condition of payment. None of the Gross Settlement Amount will revert to Defendants.

- The Administrator will make and deduct the following payments from the Gross Settlement Amount:
  - Class Representative Service Payments to the Class Representatives totaling not more than $55,000 (in addition to any Individual Class Payment and any Individual PAGA Payment each Class Representative is entitled to receive as a Participating Class Member), divided among the Class Representatives as follows:
    - $22,500 to Jeffrey Pipich;
    - $10,000 to Eve Storm;
    - $7,500 to Gary Cull;
    - $7,500 to Melissa Kolakowski; and
    - $7,500 to Daniel Lopez.
  - Attorney fee payments to Class Counsel of up to one-third of the Gross Settlement Amount, which is estimated to be $1,366,666.67, and a Class Counsel Litigation Expenses Payment of up to $120,000.
  - An Administration Expenses Payment to the Administrator not to exceed $40,000.
  - An Individual Class Payment to each Participating Class Member, which will be calculated by: (a) dividing the Net Settlement Amount by the total number of workweeks worked by all Participating Class Members during the Class Period; and (b) multiplying the result by each Participating Class Member's workweeks.
    - Ten percent of each Participating Class Member's Individual Class Payment will be allocated to settlement of wage claims ("Wage Portion"), while the remaining ninety percent of each participating

   Class Member's Individual Class Payment will be allocated to settlement of claims for interest and penalties ("Non-Wage Portion").

  ▪ Non-Participating Class Members will not receive any Individual Class Payments. The Administrator will retain amounts equal to the Individual Class Payments in the Net Settlement Amount for a pro rata distribution to Participating Class Members.

- ○ PAGA Penalties in the amount of $410,000 to be paid from the Gross Settlement Amount, with 75% allocated to the LWDA PAGA Payment and 25% allocated to the Individual PAGA Payments.

  ▪ An Individual PAGA Payment is each Aggrieved Employee's pro rata share of 25% of the PAGA Penalties, calculated according to the number of PAGA workweeks worked during the PAGA Period. The Administrator will calculate each Individual PAGA Payment by (a) dividing the amount of the Aggrieved Employees' 25% share of PAGA Penalties ($102,500) by the total number of PAGA workweeks worked by all Aggrieved Employees during the PAGA Period and (b) multiplying the result by each Aggrieved Employee's PAGA workweeks.

- Defendant O'Reilly shall fully fund the Gross Settlement Amount, as well as the amounts necessary to pay Defendants' share of payroll taxes fully, by transmitting the funds to the Administrator no later than fourteen (14) calendar days after the Effective Date of settlement, which is defined as the date when the Court's Judgment on its Order Granting Final Approval of the Settlement becomes final. Within fourteen (14) calendar days after Defendant O'Reilly funds the Gross Settlement Amount, the Administrator will mail checks for all seven categories of payments outlined above.

- Effective on the date when Defendant O'Reilly fully funds the Gross Settlement Amount and funds all employer payroll taxes owed on the Wage Portion of the

1  Individual Class Payments, Plaintiffs, Class Members, and Class Counsel will
2  release all claims against the Released Parties, as defined in the Settlement
3  Agreement. *See* Settlement Agreement ¶ 6.

## III. LEGAL STANDARD

A class action may not be settled without court approval, "which may be granted only after a fairness hearing and a determination that the settlement taken as a whole is fair, reasonable, and adequate." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011) (citing Fed. R. Civ. P. 23(e)(2)). The Ninth Circuit Court of Appeals has a "strong judicial policy" in support of class action settlements. *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992). However, when presented with a motion to finally approve a class action settlement, "judges have the responsibility of ensuring fairness to all members of the class . . . ." *Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003).

## IV. MOTION FOR FINAL SETTLEMENT APPROVAL

### A. Class Certification

Before granting final approval of a class action settlement agreement, the Court must first determine whether the proposed class can be certified. *Amchem Prods. v. Windsor*, 521 U.S. 591, 620 (1997) (indicating that a district court must apply "undiluted, even heightened, attention [to class certification] in the settlement context" in order to protect absentee class members). In the present case, the Court previously granted Plaintiffs' motion for conditional class certification. ECF No. 94. Accordingly, the Court reaffirms and incorporates by reference its prior analysis under Rule 23 of the Federal Rules of Civil Procedure as set forth in its Order Granting Plaintiffs' motion to conditionally certify the settlement class. ECF No. 94. Accordingly, the settlement class is **CERTIFIED** for settlement purposes only.

### B. Adequacy of Notice

Next, the Court must determine whether the Class received adequate notice. Rules 23(c)(2)(B) and (e)(1) generally require that a Rule 23(b)(3) settlement class should

receive notice in a reasonable manner, and that the notice be "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B); *see also Amchem*, 521 U.S. at 617.

In its Preliminary Approval Order, the Court preliminarily approved notice of this class action and proposed settlement. ECF No. 94 at 25-27. As part of their Final Approval Motion, Plaintiffs filed the Declaration of Jonathan Paul, CEO of Xpand Legal, the Settlement Administrator retained by the parties in this action. *See generally*, ECF No. 99-5. The declaration details the actions taken by the Administrator, including mailing the class notice in both English and Spanish to Class Members, implementing a settlement administration website and toll-free hotline that provides Class Members with information about the proposed settlement, and securing a post office box to which Class Members can send communications. *Id.* The Settlement Administrator declares that Xpand mailed a class notice to the 5,053 Class Members. *Id.* As of the close of the notice period, 4,987 Class Members (98.6%) received the class notice. ECF No. 103-1 at 8. The Administrator reports that, as of September 6, 2024, the Settlement website had been visited fifty (50) times since it was established on July 22, 2024. ECF No. 99-5 at 6. Additionally, as of September 6, 2024, the toll-free number, which opened on July 22, 2024, had received twelve (12) calls. *Id.*

The Notice advised the classes of the terms of the Settlement and of their rights including: (1) how to participate and how to receive payment of their share of the Settlement; (2) how to object to the Settlement and to appear at the Final Approval Hearing; (3) how to request exclusion from the Settlement; (4) the manner and timing for doing any of these acts; and (5) the date and time set for the Final Approval Hearing. The Notice also displayed the Settlement's website: www.oreillysettlement.com and the toll-free number 1-888-557-2773.

As of the date of this order, no Class Members have objected to the Settlement, and one Class Member requested exclusion because they had reached an individual

settlement separately with O'Reilly. ECF No. 103-1 at 9.

Accordingly, the Court determines that the Notice was adequate and satisfied both the requirements of Rule 23 and due process, giving the settlement Class Members adequate notice of the Settlement.

Furthermore, as required by the Class Action Fairness Act ("CAFA"), the Defendant sent notice of the proposed settlement to the Attorneys General for each of the 33 states that Class Members reside in, as well as the Attorney General of the United States. *See* ECF No. 103-1 at 10; ECF No. 103-3 at 4. Defendants issued the required notice on September 30, 2024.

Accordingly, the Court determines that the appropriate CAFA notice has been given. *See* 28 U.S.C § 1715(b) (requiring settling defendants give notice of a proposed class settlement to appropriate state and federal officials).

**C. Fairness of the Settlement**

The Court must next determine whether the proposed settlement is "fair, reasonable, and adequate" pursuant to Federal Rule of Civil Procedure 23(e)(2). In its Preliminary Approval Order, the Court found that the applicable Rule 23(e)(2) factors weighed in favor of approving the Settlement. *See* ECF No. 94 at 19-25. These factors include the adequacy of class representatives and class counsel, the non-collusive nature of the settlement negotiations, the degree of recovery on behalf of the Class Members, the risks attendant in continued litigation, the experience of class counsel, and the effectiveness of the proposed method of distributing relief to the class.

In its Preliminary Approval Order, the Court expressed the need to further scrutinize the proposed attorney fees and the proposed service award for Plaintiff Pipich. ECF No. 94 at 24. The Court has reviewed the basis for the proposed attorney fees and the proposed service award for Plaintiff Pipich and finds the fees and service award are reasonable. These areas are discussed in detail below.

Further, it is established that the "absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed

class settlement are favorable to the class members." *Nat'l Rural Telecomm. Co-op. v. Directv, Inc.*, 221 F.R.D. 523, 529 (C.D. Cal. 2004). Here, after receiving notice of the Settlement, no Class Member objected and only one Class Member requested exclusion, (ECF No. 103-1 at 15-16), which weighs in favor of settlement.

Finally, no pertinent facts have changed since the Court reached its earlier conclusion in its Preliminary Approval Order. ECF No. 94. The Court at this juncture has found that the settlement negotiations were not collusive and that the parties approached their negotiations seriously and with the interests of the absent putative Class Members in mind. Thus, the Court reaffirms and incorporates by reference its analysis of the Rule 23(e) requirements as set forth in its Preliminary Approval Order. ECF No. 94. Accordingly, the Court finds the settlement to be "fair, reasonable, and adequate" pursuant to Federal Rule of Civil Procedure 23(e).

## V. ATTORNEY FEES AND COSTS

### A. Attorney Fees

"In a certified class action, the court may award reasonable attorney fees and nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). However, "courts have an independent obligation to ensure that the award, like the settlement itself, is reasonable, even if the parties have already agreed to an amount." *In re Bluetooth*, 654 F. 3d at 941. "Where a settlement produces a common fund for the benefit of the entire class, courts have discretion to employ either the lodestar method or the percentage-of-recovery method." *Id.* at 942; *see Laffitte v. Robert Half Int'l Inc.*, 1 Cal 5th 480, 504 (2016) ("The choice of a fee calculation method is generally one within the discretion of the trial court, the goal under either the percentage or lodestar approach being the award of a reasonable fee to compensate counsel for their efforts."). Irrespective of which methodology a court uses, the court cannot apply it mechanically or formulaically, but must ensure that the fee award is reasonable. *In re Mercury Interactive Sec. Litig.*, 618 F.3d 988, 992 (9th Cir. 2010); *Powers v. Eichen*, 229 F.3d 1249, 1256 (9th Cir. 2000).

Under the percentage-of-recovery method, the benchmark for a reasonable fee

award is 25% of the common fund. *Id.* However, a district court "may adjust the benchmark when special circumstances indicate a higher or lower percentage would be appropriate." *In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 379 (9th Cir. 1995) (citing *Six (6) Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1995). The court must consider all the circumstances of the case to determine an appropriate rate, including the results achieved, the risk counsel took in pursuing the case, incidental or non-monetary benefits of the litigation, and the time and money counsel expended on the case. *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1048-50 (9th Cir. 2002).

Here, Class Counsel request an award of attorney fees in the amount of $1,366,666,67 (33 and 1/3% of the Gross Settlement Amount). ECF No. 99-1 at 15. Class Counsel have a lodestar of approximately $1,038,704, which represents a multiplier of 1.32 when compared to their request for attorney fees. Lodestar multipliers can range from 2 to 4. *See, e.g., Wershba v. Apple Computer, Inc., 91* Cal. App. 4th 224, 255 (2001) (finding a 1.42 multiplier reasonable where plaintiffs' attorneys submitted declarations evidencing the reasonable hourly rate for their services and outlining the number of hours dedicated to the case). Here, too, Class Counsel provided declarations and an itemization of hours alongside the areas of efforts they managed, including researching and drafting complaints across the five separate actions that this action involves, opposing motions to dismiss, reviewing extensive data, driving difficult settlement negotiations, thoroughly investigating the underlying facts of the action including interviewing over 268 Class Members, and negotiating the terms and agreements supporting the underlying settlement. Declaration of David Spivak, ECF No. 99-2, ¶ 11.

Other factors also weigh in favor of granting Class Counsel's requested fee award. The Settlement confers substantial benefits upon the settlement class, particularly as compared to settlements in similar actions. *See*, *e.g.*, *Boone v. Amazon.com Servs., LLC*, No. 1:21-CV-00241-KES-BAM, 2024 WL 2327647, at *13 (E.D. Cal. May 22, 2024) (preliminarily approving $5,500,000 settlement in unpaid COVID-19 screening action involving 250,000 class members with average recovery of approximately $12.18 per class

member). Recovery to each Class Member in the present action greatly exceeds this rate. Further, Class Counsel took this case on a contingency fee basis and assumed the risk of non-payment, which weighs in favor of the award. The experience of Class Counsel in litigating class actions of this type—as discussed in this Court's Preliminary Approval Order—also supports Class Counsel's request. ECF No. 94 at 21-22. Further, Courts in this Circuit have routinely authorized similar awards. *See*, *e.g.*, *Ripee v. Bos. Mkt. Corp.*, No. 05cv1359 BTM (JMA), 2006 WL 8455400, at *4 (S.D. Cal. Oct. 10, 2006) (award of 40% of $3,750,000 wage and hour class action settlement); *Stuart v. RadioShack Corp.*, No. C-07-4499-EMC, 2010 WL 3155645, at *6 (N.D. Cal. Aug. 9, 2010) (finding 33% fee award "well within the range of percentages which courts have upheld as reasonable in other class action lawsuits").

As such, the Court approves a 33 and 1/3% Class Counsel fee award in the amount of $1,366,666,67.

### B. Litigation Expenses

Class Counsel is entitled to reimbursement of the out-of-pocket costs they reasonably incurred investigating and prosecuting this case. *See Staton*, 327 F.3d at 974. Through final accounting of the Settlement, Class Counsel will have incurred $58,918.01. ECF No. 104. No Class Member has objected to the request for reimbursement of litigation expenses. The Court finds that Class Counsel's out-of-pocket costs were reasonably incurred in connection with the prosecution of this litigation, were advanced by Class Counsel for the benefit of the Class and shall be reimbursed in full in the amount requested. The Court approves the request for litigation costs and expenses in the amount of $58,918.01.

### C. Administrative Costs

The Court preliminary approved the estimated Administrator costs of up to $40,000 to Xpand Legal Consulting, LLC, the appointed Settlement Administrator. ECF No. 89-1 at 64; Spivak Decl. ¶¶ 120-21; Exs. 16-19 to the Spivak Decl. In this settlement, Xpand Legal Consulting, LLC, took steps to implement notice of the settlement, including

establishing a Qualified Settlement Fund, mailing the *Notice of Proposed Class Action and PAGA Settlement*, and establishing and maintaining a settlement administration website. ECF No. 99-5 at 4. Courts regularly award administrative costs associated with providing notice to the class. *See Vasquez v. Kraft Heinz Foods Co.*, No. 3:16-cv-2749-WQH-BLM, 2020 WL 1550234, at *9 (S.D. Cal. Apr. 1, 2020) (awarding $50,000 for administrative costs). Plaintiffs request the Court award an Administration Expenses Payment in the amount of $38,900 to the Settlement Administrator for its services. The Court concludes Xpand Legal Consulting, LLC's costs were reasonably informed for the benefit of the Class. The Court approves Class Counsel's request for administrative costs in the amount of $38,900.

### D. Service Awards to Class Plaintiff

Finally, Plaintiffs seek to divide the $55,000 Class Representative Service Awards as follows: (1) $22,500.00 to Jeffrey Pipich; (2) $10,000.00 to Eve Storm; (3) $7,500 to Gary Cull; (4) $7,500 to Melissa Kolakowski; and (5) $7,500 to Daniel Lopez. ECF No. 99-1 at 31. Importantly, Pipich was the only named Plaintiff in the case between the time it was first filed in 2021 and the filing of the 4AC in May 2024.

"[I]ncentive awards that are intended to compensate class representatives for work undertaken on behalf of a class are fairly typical in class action cases" and "do not, by themselves, create an impermissible conflict between class members and their representatives." *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 943 (9th Cir. 2015) (internal citation and quotations omitted). Named plaintiffs in class action litigation are eligible for reasonable incentive payments. *Staton*, 327 F.3d at 977. The purpose of such awards is "to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 958-59 (9th Cir. 2009). These awards are "fairly typical in class action cases," but are ultimately "discretionary." *Id.* at 958.

In the settlement papers, Plaintiff Pipich asks for a service award of $22,500. Mr.

Spivak, on behalf of Class Counsel, declares that Plaintiff Pipich "made significant contributions to the prosecution of this case" that warrant the requested service award. (ECF No. 99-1 at ¶¶ 20(c)). Mr. Spivak attests that Plaintiff was the first employee to raise his concerns about O'Reilly's time and pay policies and take the first step in seeking legal recourse for not only himself but also for his fellow colleagues. *Id.* For more than three years, Mr. Pipich gave up his personal time and took time off work to further the litigation, including providing detailed information regarding O'Reilly's policies and procedures (including the COVID-19 screenings and security screenings at issue in this litigation), notifying the California Labor and Workforce Development Agency, spending multiple hours reviewing proposed legal filings (including the four iterations of complaints filed in this action), searching for and gathering documents related to the case, providing detailed responses to discovery requests, preparing for and participating in his deposition, preparing for and attending four settlement conferences and mediations, and requesting several PTO days with his current employer. *Id.*; ECF No. 99-6 at ¶¶14-50. While devoting considerable time to the litigation, Plaintiff Pipich attests that he has always "striven to represent the best interests of [his] fellow employees and class members." ECF No. 99-6 at ¶¶48-53. Plaintiff Pipich also attests that due to this action, he fears what negative implication would arise from others discovering he is participating in the litigation, but that he has accepted this risk; he also declared that the Class Representative Service Award is not equal to the harm to [his] future career prospects that this case may cause [him]." *Id.* at ¶¶52. Further, Mr. Spivak attested that Plaintiff Pipich has "always acted in the best interests of the Class," (ECF No. 99-2 ¶¶20(c)), and that when Pipich was asked in his deposition what actions he wanted O'Reilly to take, Pipich "focused his answer not on himself but instead on the interests of his fellow employees by stating that he would like Defendants to 'change some company policies, change the location of their time clocks, compensate[e] employees for lost time and maybe send[] out a letter of apology." *Id.*

Given Plaintiff's level of involvement in the case, the undertaking of the risk in bringing this action, and the fact that the amount of the request is consistent with those

typically awarded as service payments, the court determines Plaintiff Pipich's request is reasonable. *See, e.g., Singer v. Becton Dickinson & Co.*, No. 08-CV-821-IEG (BLM), 2010 WL 2196104, at *9 (S.D. Cal. June 1, 2010) (approving $25,000 service award for plaintiff in FLSA action); *Salazar v. Driver Provider Phoenix LLC*, No. CV-19-05760-PHX-SMB, 2024 WL 2923718, at *7 (D. Ariz. June 10, 2024) (preliminarily approving "service awards of $20,000 each" to four named plaintiffs in FLSA action out of $2.5 million settlement); *Johnson v. U.S. Bank Nat'l Ass'n.*, No. 19-CV-286 JLS (LL), 2020 WL 13652583, *3 (S.D. Cal. Aug. 20, 2020) (awarding $15,000 - $25,000 to class representatives in wage and hour action).

The Court also finds the proposed service awards for Plaintiffs Eve Storm, Gary Cull, Melissa Kolakowski, and Daniel Lopez reasonable given Plaintiffs provided Defendants with a full release, assumed a fiduciary role to Settlement Class Members requiring them to actively participate in the lawsuit, rendered their individual payment uncertain, delayed their payment by several months, and spent many hours on work related to the lawsuit. ECF No. 99-1 at 32-33; *see generally* Plaintiff's Declarations. That the total value of the approved class representative service payments is 1.34 percent of the total amount of the Settlement further supports the requested award. Finally, there are no circumstances indicating the award would create a conflict between Plaintiffs and Class Members.

Thus, the service awards for the Class Representatives are reasonable. Accordingly, this Court awards $55,000 in Class Representative Service Payments to be divided as follows: (1) $22,500 to Jeffrey Pipich; (2) $10,000 to Eve Storm; (3) $7,500 to Gary Cull; (4) $7,500 to Melissa Kolakowski; and (5) $7,500 to Daniel Lopez.

### VI. CONCLUSION AND ORDER

Based on the foregoing and the entire record, the Court **GRANTS** Plaintiff and Class Counsel's motion for final approval of the Settlement. The Court **ORDERS** as follows:

1. The Court **GRANTS** final approval of the proposed Settlement Agreement (ECF No. 89-2). All terms and provisions of the Settlement, including the

release of claims contained therein, should be and hereby are ordered to be consummated, and the Parties shall effectuate the Settlement according to its terms;

2. This order applies to all claims or causes of action settled under the Settlement Agreement and binds all Class Members who did not affirmatively opt out of the Settlement Agreement by submitting a timely and valid Request for Exclusion. This order does not bind persons who filed timely and valid a Request for Exclusion;

3. Plaintiffs and all Class Members who did not timely submit a valid request for exclusion are (1) deemed to have released and discharged Defendant from any and all Released Claims accruing during the Class Period, and (2) barred and permanently enjoined from prosecuting any and all Released Claims against the Released Parties. The full terms of the releases described in this paragraph are set forth in the Settlement Agreement and are incorporated here by reference;

4. The Settlement Administrator will issue individual settlement payments to participating Class Members according to the terms and timeline stated in the Settlement Agreement;

5. The Court **GRANTS** Plaintiffs' motion for attorney fees and costs, administration expenses, and class representative payments (ECF No. 99). The Court **GRANTS** Class Counsel attorney fees in the amount of $1,366,666.67 plus Class Counsel's actual litigation costs in the amount of $58,918.01;

6. The Court **GRANTS** class representative awards to Plaintiffs for their services as follows: (1) $22,500.00 to Jeffrey Pipich; (2) $10,000.00 to Eve Storm; (3) $7,500 to Gary Cull; (4) $7,500 to Melissa Kolakowski; and (5) $7,500 to Daniel Lopez;

7. The Court **APPROVES** settlement administrator costs of $38,900;

8. The Court **APPROVES** payment of $307,500.00 (75% of the PAGA penalty) to the LWDA; and

9. Without effecting the finality of this Final Approval Order, the Court **RETAINS JURISDICTION** over: (a) implementation and enforcement of the Agreement pursuant to further order of the Court until the final judgment contemplated hereby has become effective and each and every act agreed to be performed by the Parties shall have been performed pursuant to the Agreement; (b) any other action necessary to conclude this Settlement and to implement the terms of the Agreement; and (c) the construction and interpretation of this agreement.

**IT IS SO ORDERED.**

Dated: January 7, 2025

_____
Honorable Allison H. Goddard
United States Magistrate Judge